**Sound Justice Law Group, PLLC**
Albert H. Kirby
*Admitted Pro Hac Vice*
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 489-3210
Facsimile: (866) 845-6302
ahkirby@soundjustice.com

*Counsel for Plaintiff Jeremy Bauman*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JEREMY BAUMAN, individually and on behalf of all persons similarly situated, | Case No.: 2:14-cv-01125-RFB-PAL |
| Plaintiff, | **CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINTS** |
| vs. | |
| DAVID SAXE; SAXE MANAGEMENT, LLC; DAVID SAXE PRODUCTIONS, LLC; DAVID SAXE PRODUCTIONS, INC; V THEATER GROUP, LLC; SAXE THEATER, LLC; and TWILIO, INC, | |
| Defendants. | |
| BIJAN RAZILOU, individually and on behalf of all persons similarly situated, | In consolidation with Case No.: 2:14-cv-01160-RFB-PAL |
| Plaintiff, | |
| vs, | |
| DAVID SAXE; SAXE MANAGEMENT, LLC; DAVID SAXE PRODUCTIONS, LLC; DAVID SAXE PRODUCTIONS, INC; V THEATER GROUP, LLC; SAXE THEATER, LLC; and TWILIO, INC, | |
| Defendants. | |

Plaintiffs JEREMY BAUMAN and BIJAN RAZILOU bring consolidated class action complaints on behalf of themselves and all similarly situated persons (collectively "Plaintiffs"). This class action is filed against Defendants DAVID SAXE; SAXE MANAGEMENT, LLC;

DAVID SAXE PRODUCTIONS, LLC; DAVID SAXE PRODUCTIONS, INC; V THEATER GROUP, LLC; SAXE THEATER, LLC; TWILIO, INC; DOES I through X, inclusive; and ROE CORPORATIONS V through X, inclusive. All of these defendants are referenced in this complaint collectively as "Defendants". DAVID SAXE; SAXE MANAGEMENT, LLC; DAVID SAXE PRODUCTIONS, LLC; DAVID SAXE PRODUCTIONS, INC; V THEATER GROUP, LLC; and SAXE THEATER, LLC are referenced in this complaint collectively as "Saxe Defendants".

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 under the federal question doctrine. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

2. Plaintiff BAUMAN initially filed his complaint in the Eighth Judicial District Court, Clark County, Nevada. The Saxe Defendants then removed his case, alleging this Court has jurisdiction over this matter.

3. Plaintiff RAZILOU initially filed his complaint in the United States District Court, District of Nevada, and contends that this Court also possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because (i) the Class consists of 100 or more members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

4. Venue properly lies in this court under 28 U.S.C. § 1391(b)(2) because the District of Nevada-Las Vegas is the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action

## NATURE OF THE ACTION

5. This is a proposed class action brought on behalf of persons that were sent text message advertisements by Defendants.

6. Plaintiffs allege that Defendants used an automated telephone dialing system ("ATDS") to send text message advertisements to Plaintiffs in violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and that Defendants violated the

Nevada Deceptive Trade Practices Act, ("NVDTPA"), NRS Chapter 598. Moreover, a violation of the TCPA is a *per se* violation of the NVDTPA. NRS 598.023(3).

## THE PARTIES

7. Plaintiff BAUMAN is an individual person and consumer who resides in the state of Washington. Plaintiff BAUMAN brings his complaint on behalf of himself and all persons similarly situated.

8. Plaintiff RAZILOU is an individual and consumer who resides in the state of Florida. Plaintiff RAZILOU brings his complaint on behalf of himself and all persons similarly situated.

9. Defendant DAVID SAXE is and was at all relevant times an individual domiciled and doing business in Clark County, Nevada.

10. Defendant SAXE MANAGEMENT, LLC is and was at all relevant times a domestic entity domiciled and doing business in Clark County, Nevada.

11. Defendant DAVID SAXE PRODUCTIONS, LLC is and was at all relevant times a domestic entity domiciled and doing business in Clark County, Nevada.

12. Defendant DAVID SAXE PRODUCTIONS, INC is and was at all relevant times a domestic entity domiciled and doing business in Clark County, Nevada.

13. Defendant SAXE THEATER, LLC is and was at all relevant times a domestic entity domiciled and doing business in Clark County, Nevada.

14. Defendant V THEATER GROUP, LLC is and was at all relevant times a domestic entity domiciled and doing business in Clark County, Nevada.

15. At all times relevant to this complaint, Defendant TWILIO, INC was an entity regularly doing business in Clark County, Nevada.

16. The true names and capacities, whether individual, corporation, associate, or otherwise of the Defendants named herein as ROE Corporations V through X and DOES I through X, inclusive, are unknown to Plaintiff at this time. Plaintiff sues these Defendants by fictitious names and will ask leave of the court to amend this Complaint to show the true names and capacities of Defendants when they are identified.

17. At all times relevant herein this complaint, Defendants conducted business in the United States, including in the state of Nevada and within this judicial district.

18. All of the acts performed by agent defendants were performed within the course and scope of the actual or ostensible authority of the principal defendants.

19. Each of the Defendants ratified the acts of the other Defendants referenced in this complaint.

20. Each of the Defendants is legally responsible in some manner for the events and happenings referred to in this complaint and directly and proximately caused the damages and injuries to Plaintiff alleged in this complaint.

21. Each of the Defendants had the right and ability to control the illegal conduct alleged in this complaint. Without the participation, authorization, approval, or ratification by each of the Defendants, the illegal conduct that is the subject matter of this complaint would not have occurred.

**FACTUAL ALLEGATIONS**

22. Receiving a text message is a uniquely personal event. Each text message sent to a cellular telephone number delivers a message literally into the hands of the intended recipient. And telemarketers have found the potency of text messages to be irresistible. With the push of a single button, modern computers can deliver customized text messages directly to the cellular telephones of millions of consumers. To telemarketers, this is a powerful and efficient method of advertising, as most of the cost can be shifted to cellular telephone subscribers, all of whom must pay some form of fee to receive text messages. And the message can be assured of being seen by consumers because text messages generally remain on a cellular telephone until the consumer looks at the text message and takes affirmative steps to delete it. No other form of advertisement can duplicate the ability of text messages to deliver advertisements into the hands of consumers. This is a major reason why text message advertisements sent without prior express consent can be a violation of consumers' privacy. Thus, federal and state laws restrict the use of automated telephone dialing equipment to transmit uninvited text messages.

23. The Saxe Defendants acquired the cellular telephone numbers of Plaintiffs. In so doing, the Saxe Defendants failed to inform Plaintiffs or their agents that Defendants would be sending uninvited text message advertisements to the cellular telephone numbers. The Saxe Defendants also made representations that the cellular telephone numbers would not be used to send uninvited text message advertisements.

24. For example, on or about December 29, 2013, Plaintiff RAZILOU placed a telephone call from his residence in Florida to a box office operated by the Saxe Defendants in order to reserve seats for a January 3, 2014, Nathan Burton Comedy Magic show.

25. During Plaintiff RAZILOU's December 29, 2013, telephone conversation with the Saxe Defendants' representative, Plaintiff RAZILOU was asked by the representative to provide his name, address, telephone number, and email address. The representative advised Plaintiff that this information was necessary so that they could provide him with confirmation of his reservation.

26. Before providing his contact information, Plaintiff RAZILOU specifically informed the representative that he did not wish to receive any "spam" and did not want to receive any marketing materials. He was assured that such marketing efforts would not be made.

27. In January 2014, Defendants sent multiple text messages to the cellular telephone number of Plaintiff RAZILOU.

28. Plaintiff RAZILOU received at least two of these text messages.

29. On January 3, 2014, Defendants sent a text message to Plaintiff RAZILOU's cellular telephone number that stated,

> You are seeing Nathan
> Burton Comedy Magic
> Tonight! Add VIP Seating or
> Dinner to your show by
> Calling 1-866-932-1818.

30. While in Nevada, Plaintiff RAZILOU received this text message on his cellular telephone on or about January 3, 2014.

31. On January 4, 2014, Defendants sent a text message to Plaintiff RAZILOU's cellular telephone number that stated,

> Exclusive Deal! See Vegas!
> The Show for only $40.
> Call 1-866-932-1818 ask
> For the inclusive Email/Text
> $40 Vegas Deal

32. While in Nevada, Plaintiff RAZILOU received this text message on his cellular telephone on or about January 4, 2014.

33. In April 2014, Defendants sent multiple text messages to the cellular telephone number of Plaintiff BAUMAN.

34. Plaintiff BAUMAN received at least three of these text messages.

35. On or about April 15, 2014, Defendants sent a text message to Plaintiff BAUMAN's cellular telephone number that stated,

> You are seeing Comedy
> Pet Theater tonight! Add
> VIP Seating or Dinner to
> your show by calling
> 1-866-932-1818.

36. While in Nevada, Plaintiff BAUMAN received this text message on his cellular telephone on or about April 15, 2014.

37. On or about April 15, 2014, Defendants sent a text message to Plaintiff BAUMAN's cellular telephone number that stated,

> We hope you enjoyed
> Comedy Pet Theater. See
> another show for 50% off,
> USE PROMOCODE –
> EMAILDEAL upon
> Checkout at
> www.vtheaterboxoffice.com

38. While in Nevada, Plaintiff BAUMAN received this text message on his cellular telephone on or about April 15, 2014.

39. On or about April 16, 2014, Defendants sent a text message to Plaintiff BAUMAN's cellular telephone number that stated,

> Exclusive Deal! See Vegas!
> The Show for only $40.
> Call 1-866-932-1818 ask
> for the inclusive Email/Text
> $40 Vegas Deal

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

40. While in Nevada, Plaintiff BAUMAN received this text message on his cellular telephone on or about April 16, 2014.

41. These text messages promoted the sale of goods or services of one or more Defendants to Plaintiffs.

42. These text messages were sent without the prior express consent of the intended recipients.

43. These text messages were advertisements that were transmitted directly from Defendants' transmission equipment to Plaintiffs' cellular telephones.

44. These text messages are representative of hundreds of thousands of text messages that Defendants sent *en masse* to many thousands of different cellular telephone numbers.

45. The text messages at issue promoted a show or other services of a Saxe Defendant. For example, some text messages promoted "Vegas! The Show" and "Nathan Burton Comedy Magic", which are shows hosted by Defendant Saxe Theater, LLC. Some text messages promoted extra perks and services at "Comedy Pet Theater", which is a show hosted by Defendant V Theater Group, LLC. One or more of these shows were produced or owned by Defendant David Saxe Productions, Inc.

46. Defendant David Saxe Productions, LLC ("DSP") came up with the idea to send all of these telemarketing text messages. DSP operated under the supervision and at the direction of Defendant David Saxe and Defendant Saxe Management, LLC (together "Saxe").

47. Saxe acted as the managing agent of DSP and the other Saxe Defendants, too.

48. Saxe was involved in the decision to begin the telemarketing text message program.

49. On behalf of themselves and the other Saxe Defendants, Saxe authorized, approved, and ratified the telemarketing text message program.

50. The telemarketing text message program could not have occurred without such authorization, approval, and ratification by Saxe and the other Saxe Defendants.

51. Saxe promotes DSP as Las Vegas' most prolific and highly regarded show production company. Saxe touts DSP as being owned and operated by famed producer and Las

Vegas native David Saxe…. and that …DSP is responsible for the operations of two major theaters located on the Strip as well as over 30 productions across the world and has equipped itself with a 40,000 square foot facility in the Southwest part of the valley where it provides clients and resident shows with rehearsal space, sales & marketing operations as well as prop warehousing. Two major theaters for whom DSP handles marketing are the V Theater and the Saxe Theater. This is a reason why the telemarketing text message program conceived by DSP and approved by Saxe promoted shows and services at those two theaters.

52. DSP collaborated with Defendant Twilio, Inc. to develop, implement, and maintain the telemarketing text message program.

53. In this regard, DSP and Twilio joined their software and hardware together to create, sort, and send hundreds of thousands of text message advertisements to cellular telephone numbers in an automated manner.

54. DSP caused its devices to harvest the names, email addresses, and telephone numbers from the Saxe Defendants' customer database; combine each telephone number with a telemarketing message; and forwarded the telephone numbers and telemarketing messages to Twilio for transmission purposes.

55. Twilio then caused its devices to store the telephone numbers and messages, prioritize in what sequence the text messages would be sent to the various cellular telephone carriers to which each telephone number, and ensured that the text messages were not blocked by cellular telephone carriers as telemarketing spam.

56. Twilio controlled when and how each of the telemarketing text messages was delivered to the cellular telephone numbers of their intended recipients.

57. In addition to helping the Saxe Defendants to transmit all of their telemarketing text messages, Twilio provided other material support to the text message telemarketing program.

58. In direct communications between representatives of Twilio and DSP, Twilio provided DSP with software code tailored for DSP's devices to enable and facilitate the automated transmission of telemarketing text messages with the assistance of Twilio.

59. Representatives of Twilio provided help and advice to DSP on how to ensure their telemarketing program would not run afoul of spam filters of cellular telephone carriers that are intended to block such uninvited telemarketing.

60. Representatives of Twilio helped DSP obtain a short code telephone number for the telemarketing program to aid in bypassing the spam filters of cellular telephone carriers.

61. Representatives of Twilio helped DSP generate communications for customers of the Saxe Defendants about the telemarketing program.

62. Twilio even assigned DSP a mobile marketing campaign specialist who was specifically authorized by Twilio to ensure that the telemarketing text message program was a success.

63. The telemarketing text message program could not have worked without the knowledge, authorization, approval, ratification, participation, and/or active support of Twilio.

64. Twilio and the Saxe Defendants acted as agents of each other in enabling, facilitating, initiating, creating, and otherwise making the text message transmissions to Plaintiffs. The cooperation, knowledge, approval, authorization, ratification, participation, and/or active support of the Saxe Defendants and Twilio was essential prerequisite to the text messages being sent to Plaintiffs.

65. Altogether, the devices used by Defendants to send text messages to Plaintiffs had the capacity to store lists of telephone numbers and to dial telephone numbers from such lists in an automated manner. Such capacity was integral to the devices' actual ability to send numerous text messages *en masse*.

66. The text message advertisements sent by Defendants would not have been cost-effective for Defendants to send if Defendants had employed humans to draft each text message and to dial the telephone number of Plaintiffs to whom Defendants sent their promotional text messages.

67. Defendants did not have any prior consent from Plaintiffs to send them these telemarketing text messages.

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

68. Defendants did not obtain prior express consent from anyone to whom they sent text message advertisements.

69. Defendants' transmission of text message advertisements to Plaintiff's cellular telephone violated Plaintiff's privacy and injured Plaintiff in his quiet use and enjoyment of his cellular telephone.

## CLASS ALLEGATIONS

70. Plaintiffs BAUMAN and RAZILOU bring this class action on behalf of themselves and as representatives of the following class of persons (the "Class") entitled to injunctive relief or declaratory relief under federal or state law:

> All past, present, and future customers of a Saxe Defendant who reside in the United States or its territories and whose cellular telephone numbers are or will be in the possession, custody, or control of a Saxe Defendant.

71. The Class includes numerous persons, *i.e.*, Class Members.

72. Plaintiffs BAUMAN and RAZILOU bring this class action on behalf of themselves and as representatives of the following class of persons (the "Subclass") entitled to injunctive relief, declaratory relief, and incidental statutory damages under federal and state law:

> All Class Members whose cellular telephone numbers were sent a text message by Defendant which promoted a product, good, or service of a Saxe Defendant.

73. The Subclass includes numerous persons, *i.e.*, Subclass Members.

74. Plaintiffs' claims satisfy the numerosity, commonality, typicality, adequacy of representation and superiority requirements for class action certification pursuant to NRCP 23 as referenced in this complaint and in accord with proof.

75. Defendants possess personal data, including names and contact information, for Class Members.

76. Defendants possess personal data, including names and contact information, for Subclass Members.

77. Joinder of the numerous Plaintiffs in to an action is impracticable. In fact, given the number of Plaintiffs, the only way to deliver substantial justice to all members of the Plaintiffs is by means of a single class action.

78. There are questions of fact and law common to Plaintiffs. These common questions predominate over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendants' conduct include, without limitation, the following:

    a. Does giving a cellular telephone number to a business constitute prior express consent for that business to send text message advertisements to that cellular telephone number?

    b. Did Defendants use an ATDS to send their text messages to Class Members or Subclass Members?

    c. Are the text messages sent by Defendants telemarketing?

    d. Do Defendants negligently, knowingly, and/or willfully cause violations of federal or state law by sending their text messages to Class Members or Subclass Members?

    e. What are the statutory damages that Defendants must pay for each of the uninvited text messages sent to the Class Members or Subclass Members?

    f. Are Class Members or Subclass Members entitled to collect pre-judgment interest on the incidental statutory damages which are now due from Defendants?

    g. Are any of the Defendants vicariously liable under any theory of vicarious liable for illegal actions of any other Defendant alleged in this complaint?

79. The questions referenced above, and other questions like them, predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of claims of all Class Members and Subclass Members.

80. The claims of the named Plaintiffs are typical of those of the other Plaintiffs in that Defendants have their cellular telephone numbers and that they were injured by the same sending of unsolicited text messages by Defendants' ATDS, which has injured or else will injure other Plaintiffs. The text messages which named Plaintiffs received are typical of the text messages that Defendants have sent and, without judicial intervention, will continue to send to other Plaintiffs.

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

81. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted in a general manner as part of a systemic process to the injury and damage of Plaintiffs. Without judicial intervention, Defendants will continue this same conduct which puts other Plaintiffs at undue risk of injury in the future. The presentation of separate actions by individual Plaintiffs could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants or substantially impair or impede the ability of Class Members and Subclass Members to protect their interests.

82. The named Plaintiffs are adequate representatives of Plaintiffs because they are members of the Class and Subclass and their interests do not conflict with the interests of Class Members or Subclass Members they seeks to represent. The interests of Plaintiffs will be fairly and adequately protected by the named Plaintiffs. Also, Plaintiffs are represented by counsel with significant experience representing clients in complex class action litigation.

83. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impractical and undesirable for each of the numerous persons who comprise the Class or Subclass to bring separate actions. The maintenance of such separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class Members and Subclass Members. Defendants have records which should help the Court determine the identity of all Class Members and Subclass Members and how much in incidental statutory damages each of them are entitled to recover from Defendants.

84. If this action is not certified as a class action, then given the number of Class Members and Subclass Members, the only way that the court system will not be overburdened by a multiplicity of suits over the subject matter of this complaint is if members of the Class or Subclass cannot or do not pursue an action against Defendants for reasons altogether unrelated to the merits of their claims (*e.g*., challenges in accessing legal counsel, the mundane realities of surviving in a challenging economy, *et cetera*). Most Class Members and Subclass Members can obtain legal representation for their claims only through a class action. The only practical way to ensure that all members of the class are afforded an opportunity to obtain substantial justice with

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

regard to the wrongs and injuries to which Defendants have inflicted or else will inflict upon them is to resolve the subject matter of this complaint through a class action.

### FIRST CLAIM FOR RELIEF

**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227)**

85. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained above, inclusive, as if fully set forth herein.

86. At all times material herein, Plaintiffs have been entitled to the rights, protections, and benefits provided under the TCPA, 47 U.S.C. § 227.

87. Negligently, knowingly, and/or willfully, Defendants engaged in acts, omissions, or other conduct as referenced herein this complaint that violates the TCPA. Defendants used an ATDS to initiate thousands of unsolicited telephone calls to Plaintiffs' cellular telephone numbers. These telephone calls delivered unsolicited commercial text messages to the cellular telephones of Representative Plaintiff and the other Plaintiffs as referenced in this complaint.

88. Plaintiffs are entitled to recover $500 in damages from Defendant for each violation of the TCPA and treble damages for each knowing or willful violation of the TCPA.

89. Additionally, Plaintiffs are entitled to all damages referenced herein and in accord with proof, attorneys' fees, costs, treble damages, and other remedies allowed by statute.

90. Defendants will continue their unlawful conduct in the future absent (a) a judicial declaration which clearly states the illegality of their conduct and (b) an injunction barring Defendants from engaging in such illegal conduct in the future.

### SECOND CLAIM FOR RELIEF

**(Violations of the Nevada Deceptive Trade Practices Act, NRS Chapter 598)**

91. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained above, inclusive, as if fully set forth herein.

92. Defendants, during the course of their business or occupation, knowingly violated the TCPA, which is a statute relating to the sale or lease of goods or services.  NRS 41.600; NRS 598.0923(3).

93. Defendants engaged in a deceptive and otherwise unlawful trade practice in connection with obtaining Plaintiffs' telephone numbers and sending Plaintiffs text message advertisements without Plaintiffs' prior express consent.

94. As a direct and proximate result of Defendants' deceptive and illegal trade practice, Plaintiffs have suffered damages in an amount to be proven at trial.

95. Plaintiffs are victims of consumer fraud and are therefore entitled to damages as well as attorney fees and costs. NRS 41.600.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief)

96. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained above, inclusive, as if fully set forth herein.

97. A justiciable controversy exists between Plaintiffs and Defendants regarding the Defendants' practice of using Plaintiffs' cellular telephone numbers for the illegal transmission of text messages to Plaintiffs.

98. The interests of the parties are adverse.

99. Plaintiffs have a legally protectable interest in the controversy in defending their rights under the TCPA and the NVDTPA.

100. The issues are ripe for judicial determination.

101. This Court should declare that Defendants failed to obtain prior express consent to send text messages to Plaintiffs.

102. This Court should declare that the subject text messages were telemarketing sent by Defendants to Plaintiffs.

103. This Court should declare that the equipment used by Defendants to send text messages to Plaintiffs was an automated telephone dialing system as defined by the TCPA.

104. This Court should declare that Defendants violated the privacy of Plaintiffs by sending the subject text messages.

105. This Court should declare that Defendants' transmission of the subject text messages impaired the quiet use and enjoyment by Plaintiffs of their cellular telephones.

*SOUND JUSTICE LAW GROUP, PLLC*
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

106. This Court should declare that Defendants committed an unlawful trade practice under NRS Chapter 598 by sending the subject text messages to Plaintiffs.

107. This Court should declare that each of the Defendants is liable for the unlawful acts alleged in this complaint.

108. This Court should declare that the Defendants willfully of violated federal and state law by sending the subject text messages to Plaintiffs.

109. This Court should declare that, based upon the Defendants' violation of federal and Nevada law, Plaintiffs are entitled to $500 damages per text message sent, treble damages for each text message sent, injunctive relief, attorney fees, and costs.

110. It has become necessary for Plaintiffs to engage the services of an attorney to prosecute this action; therefore, Plaintiffs are entitled to costs and attorney fees as special damages.

## FOURTH CLAIM FOR RELIEF

### (Attorney Fees as Special Damages)

111. Plaintiffs repeat, re-allege and incorporate by reference each and every allegation contained above, inclusive, as if fully set forth herein.

112. It has been necessary for Plaintiffs to retain the services of attorneys in order to prosecute this action and, therefore, Plaintiffs are entitled to an award of reasonable attorney fees and costs incurred herein as special damages.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that the Court enter orders and final judgment in favor of Plaintiffs and against Defendant as follows:

1. Certify the Class and Subclass as permitted by Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs' counsel as counsel for the Class and Subclass, and appoint Plaintiffs as representatives of the Class and Subclass;

2. Granting extraordinary, equitable, and injunctive relief with sufficient particularity to ensure that Defendants will stop their unlawful practices;

3. Judgment in the amount of $500 in damages that Plaintiffs are entitled to recover incidental to each of Defendants' violations of the TCPA;

4.   Judgment for treble damages for Plaintiffs as provided by law;

5.   A Declaration that Defendants failed to obtain prior express consent to send text messages to Plaintiffs;

6.   A Declaration that the subject text messages were telemarketing sent by Defendants to Plaintiffs;

7.   A Declaration that that the system of programs and devices used by Defendants to send text messages to Plaintiffs was an automated telephone dialing system as defined by the TCPA;

8.   A Declaration that Defendants violated the privacy of Plaintiffs by sending the subject text messages;

9.   A Declaration that Defendants' transmission of the subject text messages impaired the quiet use and enjoyment by Plaintiffs of their cellular telephones;

10.  A Declaration that Defendants committed unlawful trade practices under NRS Chapter 598 by sending the subject text messages to Plaintiffs;

11.  A Declaration that each of the Defendants is liable for the unlawful acts alleged in this complaint;

12.  A Declaration that the Defendants knowingly and willfully violated federal and state law by sending the subject text messages to Plaintiffs;

13.  A reasonable incentive award for Plaintiffs in accord with the Court's assessment of Plaintiffs' contributions in advancing the interests of the Class Members;

14.  Judgment for fees and costs incurred in connection with this action, including reasonable attorney fees, expert witness fees, and other costs, as provided by law; and

15.  Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

On behalf of themselves and all other persons similarly situated, Plaintiff BAUMAN and Plaintiff RAZILOU demand a jury on all matters so triable.

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

| | | |
|---|---|---|
| 1 | Dated this 20th day of September 2016. | */s/    Albert H. Kirby*<br>Albert H. Kirby |
| 2 | | Admitted Pro Hac Vice<br>**SOUND JUSTICE LAW GROUP, PLLC** |
| 3 | | 936 North 34th Street, Suite 300<br>Seattle, Washington 98103 |

*Counsel for Plaintiff Jeremy Bauman*

Phillip S. Aurbach
Nevada Bar No. 1501
Candice E. Renka
Nevada Bar No. 11447
**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145

*Counsel for Plaintiff Jeremy Bauman*

*/s/    Matthew R. Mendelsohn*
Matthew R. Mendelsohn
Admitted Pro Hac Vice
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

*Counsel for Plaintiff Bijan Razilou*

Dennis L. Kennedy
Nevada Bar No. 1462
Paul C. Williams
Nevada Bar No. 12524
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302

*Counsel for Plaintiff Bijan Razilou*

Payam Shahian
Admitted Pro Hac Vice
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Ste 700
Los Angeles, California 90067

*Counsel for Plaintiff Bijan Razilou*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document is filed or will be filed through the Court's ECF system and thereby will be sent electronically to the registered participants identified on the Notice of Electronic Filing on today's date.

DATED: September 20, 2016   */s/ Albert H. Kirby*
Albert H. Kirby

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302