1

**Sound Justice Law Group, PLLC**
Albert H. Kirby
*Admitted Pro Hac Vice*
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 489-3210
Facsimile: (866) 845-6302
ahkirby@soundjustice.com

2

3

4

5

**Marquis Aurbach Coffing**
Phillip S. Aurbach
Nevada Bar No. 1501
Candice E. Renka
Nevada Bar No. 11447
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 856-8943
paurbach@maclaw.com
crenka@maclaw.com

6

7

8

9

10

11

Attorneys for Plaintiff Jeremy Bauman

12

[Additional counsel listed in signature block.]

13

**UNITED STATES DISTRICT COURT**

14

**DISTRICT OF NEVADA**

15

JEREMY BAUMAN, individually and on behalf
of all persons similarly situated,

16

Case No.:        2:14-cv-01125-RFB-PAL

17

                                      Plaintiffs,

18

        vs.

19

DAVID SAXE, et al.,

20

21

                                      Defendants.

22

BIJAN RAZILOU, et al.,

23

                                      Plaintiffs,

        vs.

24

25

V THEATER GROUP, LLC, et al.,

26

                                      Defendants.

**PLAINTIFFS' RESPONSE TO
DEFENDANT TWILIO, INC.'S MOTION
TO DISMISS PLAINTIFFS'
CONSOLIDATED SECOND AMENDED
COMPLAINTS**

In consolidation with
Case No.:        2:14-cv-01160-RFB-PAL

27

28

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................... 1

II.     BACKGROUND ............................................................................ 1

III.    LEGAL STANDARD ..................................................................... 3

IV.     AUTHORITY AND ARGUMENT ................................................ 5

        A.      PLAINTIFFS' TCPA CLAIMS SHOULD NOT BE DISMISSED .................... 5

                1.      The TCPA Is a Remedial Statute That Is Construed Broadly to Protect Consumers from Automated Text Messages Being Sent to Their Cellular Telephones ............... 5

                2.      There are Multiple Ways in which Defendants can be Liable under the TCPA for Sending Text Messages to Consumers ................................. 6

                3.      Plaintiffs Allege Plausible TCPA Claims against Twilio .......................... 8

        B.      PLAINTIFFS' NDTPA CLAIMS SHOULD NOT BE DISMISSED ................. 11

                1.      The Court Already Rejects Twilio's Dismissal Arguments .................... 11

                2.      The NDTPA Should Be Construed Liberally to Protect Consumers ........ 12

                3.      Defendants Perpetuated Consumer Fraud Under the NDTPA with Their Terms and Conditions ................ 14

                4.      Defendants Engaged in Consumer Fraud by Sending Telemarketing Text Messages in Violation of the TCPA .................... 15

                5.      Defendants Knowingly Engaged in Their Wrongful Acts ....................... 17

                6.      Plaintiffs Were Directly Harmed by the Uninvited Telemarketing Text Messages they Received .................... 18

        C.      PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS ................... 20

        D.      TWILIO'S ATTEMPT TO APPLY A SUMMARY JUDGMENT STANDARD SHOULD BE DISREGARDED ........................ 22

        E.      LEAVE TO AMEND SHOULD BE GRANTED IF PLAINTIFFS' CLAIMS ARE DISMISSED ........................ 23

V.      CONCLUSION ............................................................................ 23

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Baker v. G. C. Services Corp.*,
   677 F.2d 775 (9th Cir. 1982) ............................................................................ 14

*Balderas v. Countrywide Bank, N.A.*,
   664 F.3d 787 (9th Cir. 2011) .............................................................................. 5

*Baltimore & P. R. Co. v. Fifth Baptist Church*,
   108 U.S. 317 (1883) ........................................................................................... 19

*Bates v. Dollar Loan Ctr., LLC*,
   No. 2:13-CV-1731-KJD-CWH, 2014 WL 3516260 (D. Nev. July 15, 2014) ..................... 13, 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................... 4, 9, 12, 18

*Beneficial Corp. v. F.T.C.*,
   542 F.2d 611 (3d Cir. 1976), *cert. denied*, 430 U.S. 983 (1977) ....................... 14

*Block v. eBay, Inc.*,
   747 F.3d 1135 (9th Cir. 2014) ............................................................................. 4

*Booth v. Appstack, Inc.*,
   No. C13-1533JLR, 2016 WL 3030256 (W.D. Wash. May 25, 2016) ................... 21

*Calvert v. Alessi & Koenig, LLC*,
   No. 2:11-CV-00333-LRH, 2013 WL 592906 (D. Nev. Feb. 12, 2013) ................. 14

*Charvat v. Ryan*,
   879 N.E.2d 765 (Ohio 2007) ............................................................................... 17

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ........................................................................................ 20

*Colello v. Administrator, Real Est. Div.*,
   100 Nev. 344, 683 P.2d 15 (1984) ...................................................................... 13

*Commercial Cabinet Co. v. Mort Wallin of Lake Tahoe, Inc.*,
   103 Nev. 238, 737 P.2d 515 (1987) .................................................................... 19

*Costa v. National Action Financial Services*,
   634 F.Supp.2d 1069 (E.D.Cal.2007) .................................................................. 14

*Del Webb Communities, Inc. v. Partington*,
   652 F.3d 1145 (9th Cir. 2011) ....................................................................... 13, 17

*Edifecs, Inc. v. TIBCO Software, Inc.*,
   756 F.Supp.2d 1313 (W.D.Wash. 2010) ............................................................ 23

*Exposition Press, Inc. v. F.T.C.*,
   295 F.2d 869 (2d Cir. 1961) ............................................................................... 14

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

*F.T.C. v. Cyberspace.com LLC*,
  453 F.3d 1196, 1200 (9th Cir. 2006) ...................................................... 14

*F.T.C. v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ............................................................... 14

*Friends of Roeding Park v. City of Fresno*,
  848 F.Supp.2d 1152 (E.D. Cal. 2012) ...................................................... 4

*Gager v. Dell Fin. Servs., LLC*,
  727 F.3d 265 (3d Cir. 2013) ........................................................ 5, 6, 15

*Gilligan v. Jamco Dev. Corp.*,
  108 F.3d 246 (9th Cir. 1997) ............................................................... 4

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014) *cert. granted on other grounds*, 135 S.Ct. 2311 (2015) .......... 8, 21

*Hason v. Med. Bd. of California*,
  279 F.3d 1167 (9th Cir. 2002) ............................................................. 6

*Hewlett v. Consol. World Travel, Inc.*,
  No. CV 2:16-713 WBS AC, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016) ............................ 21

*Hickey v. Voxernet LLC*,
  887 F. Supp. 2d 1125 (W.D.Wash. 2012) ...................................................... 9

*Int'l Game Tech., Inc. v. Second Judicial Dist. Court ex rel. Cty. of Washoe*,
  124 Nev. 193, 179 P.3d 556 (2008) .............................................. 13, 14, 17

*Juarez v. Citibank, N.A.*,
  No. 16-CV-01984-WHO, 2016 WL 4547914 (N.D. Cal. Sept. 1, 2016) .............................. 21

*Keim v. ADF Midatlantic, LLC*,
  No. 12-80577-CIV, 2015 WL 11713593 (S.D. Fla. Nov. 10, 2015) ............................... 10

*Keithly v. Intelius Inc.*,
  764 F.Supp.2d 1257 (W.D. Wash. 2011) ...................................................... 14

*Knutson v. Reply!, Inc.*,
  No. 10CV1267 BEN, 2011 WL 1447756 (S.D.Cal. Apr. 13, 2011) .................................. 9

*Kristensen v. Credit Payment Servs. Inc.*,
  No. 2:12-CV-00528-KJD, 2013 WL 686492 (D. Nev. Feb. 22, 2013) ......................... 4, 5, 18

*Lacey v. Maricopa Cnty.*,
  693 F.3d 896 (9th Cir. 2012) ............................................................. 23

*Love v. United States*,
  915 F.2d 1242 (9th Cir. 1989) ............................................................. 4

*Maryland v. Universal Elections*,
  787 F.Supp.2d 408 (D.Md. 2011) ........................................................... 7

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL. (206) 489-3210  FAX: (866) 845-6302

*Meyer v. Bebe Stores, Inc.*,
  Civ. No. 14-267 YGR, 2015 WL 431148 (N.D. Cal. Feb. 2, 2015)............................................. 21

*Mims v. Arrow Fin. Servs., LLC*,
  132 S.Ct. 740 (2012).............................................................................................. 5, 15, 16

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010).............................................................................................................. 20

*Nationstar Mortg. LLC v. Shadow Hills Master Ass'n*,
  No. 215CV01320GMNPAL, 2015 WL 9592498 (D. Nev. Dec. 31, 2015) ............................... 4

*Nunes v. Twitter, Inc.*,
  --- F.Supp.3d ---, No. 14-CV-02843-VC, 2016 WL 3660526 (N.D. Cal. July 1, 2016) ............. 8

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007) ............................................................................................ 4, 22

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
  795 F.3d 956 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1509 (2016)....................................... 20

*Ott v. Mortgage Investors Corp. of Ohio*,
  65 F.Supp.3d 1046, 1060 (D.Or. 2014) .................................................................................. 7

*Pacleb v. Cops Monitoring*,
  No. 2:14-CV-01366-CAS, 2014 WL 3101426 (C.D.Cal. July 7, 2014) .................................. 10

*Panacci v. A1 Solar Power, Inc.*,
  No. 15-CV-00532-JCS, 2015 WL 3750112 (N.D.Cal. June 15, 2015) ...................................... 9

*Riley v. California*,
  134 S.Ct. 2473 (2014)....................................................................................................... 5, 18

*Robbins v. Coca–Cola–Co.*,
  No. 13–CV–132–IEG NLS, 2013 WL 2252646 (S.D.Cal. May 22, 2013) ................................ 9

*Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*,
  No. 3:12–CV–2257, 2014 WL 1333472 (N.D.Ohio Mar. 28, 2014)........................................ 7

*Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*,
  40 F.3d 247 (7th Cir. 1994) ............................................................................................. 5, 18

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946, 954 (9th Cir. 2009) ........................................................................................ 16

*Schreiber Distrib. Co. v. Serv–Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) .............................................................................................. 23

*So. Cal. Rapid Transit v. Superior Court*,
  30 Cal.App.4th 713, 36 Cal.Rptr.2d 665 (1994)................................................................... 13

*Sobel v. Hertz Corp.*,
  698 F. Supp. 2d 1218 (D. Nev. 2010)................................................................................... 12

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

*Stewart v. Regent Asset Mgmt. Sols.*,
  No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018 (N.D. Ga. May 4, 2011) ................................ 17

*Tcherepnin v. Knight*,
  389 U.S. 332 (1967) ................................................................................................ 6

*Texas v. Am. Blastfax, Inc.*,
  164 F.Supp.2d 892 (W.D.Tex. 2001) ........................................................................ 7

*Thomas v. Dun & Bradstreet Credibility Corp.*,
  No. CV1503194BROGJSX, 2015 WL 4698398 (C.D.Cal. Aug. 5, 2015) .......................... 11

*Thomas v. Taco Bell Corp.*,
  582 F.App'x 678 (9th Cir. 2014) ......................................................................... 6, 16

**STATUTES AND RULES**

47 U.S.C. § 227 ........................................................................................................ 1, 2

Fed.R.Civ.P. 8 .......................................................................................................... 3, 8

Fed.R.Civ.P. 12 .................................................................................................... 3, 4, 22

Fed.R.Civ.P. 56 .......................................................................................................... 22

NRS 41.600 ......................................................................................................... passim

NRS 598.0915 ................................................................................................ 13, 14, 17

NRS 598.0923 ..................................................................................................... passim

NRS Chapter 598 ........................................................................................................ 1

**REGULATIONS AND RULINGS**

47 C.F.R. § 64.1200 ................................................................................................... 16

*In re Joint Petition Filed by Dish Network, LLC* ("*2013 FCC Order*"),
  28 FCC Rcd. 6574 (May 9, 2013) ............................................................................. 8

*In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2012 FCC Order*"),
  27 FCC Rcd. 1830 (Feb. 15, 2012) ........................................................................... 5

*In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2015 FCC Order*"),
  30 FCC Rcd. 7961 (July 10, 2015) ..................................................................... passim

*In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2016 FCC Order*"),
  31 F.C.C. Rcd. 88 (Jan. 11, 2016) ........................................................................... 7

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants sent Plaintiff Jeremy Bauman, Plaintiff Bijan Razilou, and numerous other consumers telemarketing text messages in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Nevada Deceptive Trade Practices Act ("NDTPA"), NRS Chapter 598. Plaintiffs subsequently initiated separate lawsuits to obtain remedies on their own behalf and on behalf of the class of similarly affected consumers. Soon thereafter, the Court consolidated both of Plaintiffs' lawsuits into one proceeding because "identical issues of law and fact will dominate both of these cases." *See* Dkt. #17 at 2.

Plaintiffs recently filed their Consolidated Second Amended Class Actions Complaints. *See* Dkt. #174. Most of the defendants responded with an answer. *See* Dkt. #178. Defendant Twilio, Inc. ("Twilio") responded with a memorandum making arguments under Rule 12(b)(1) and Rule 12(b)(6) for dismissal of both complaints. *See* Dkt. #177. Ignoring the actual allegations of the complaints, Twilio contends that it cannot be legally liable for its role in sending the illegal telemarketing text messages to Plaintiffs. Similarly ignoring that Plaintiffs establish that they received such illegal telemarketing text messages, Twilio also argues that Plaintiffs cannot have suffered an injury that gives them standing to pursue their legal remedies in a federal court.  A plain reading of the consolidated complaints, however, shows Twilio is wrong. Both complaints succinctly and effectively allege that Twilio is liable for culpable conduct related to sending illegal text messages to Plaintiffs and numerous others. Moreover, the complaints confirm that Plaintiffs were injured by their receipt of the text messages. Twilio's motion to dismiss should be denied.

### II.    BACKGROUND

Plaintiffs each received on their cellular telephones several telemarketing text messages which Twilio sent. *See* Dkt. #174, ¶¶ 27-41. Receipt of these text messages advertisements was a consequential injury to Plaintiffs;

> Receiving a text message is a uniquely personal event. Each text message sent to a cellular telephone number delivers a message literally into the hands of the intended recipient. And telemarketers have found the potency of text messages to be irresistible. With the push of a single button, modern computers can deliver customized text messages directly to the cellular telephones of millions of consumers. To telemarketers, this is a powerful and

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

efficient method of advertising, as most of the cost can be shifted to cellular telephone subscribers, all of whom must pay some form of fee to receive text messages. And the message can be assured of being seen by consumers because text messages generally remain on a cellular telephone until the consumer looks at the text message and takes affirmative steps to delete it. No other form of advertisement can duplicate the ability of text messages to deliver advertisements into the hands of consumers. This is a major reason why text message advertisements sent without prior express consent can be a violation of consumers' privacy. Thus, federal and state laws restrict the use of automated telephone dialing equipment to transmit uninvited text messages.

*See id.*, ¶ 22; *also see*, *e.g.*, 47 U.S.C. § 227 (the TCPA). Thus, Twilio's "transmission of text message advertisements to [Plaintiffs'] cellular telephone violated [Plaintiffs'] privacy and injured Plaintiff[s] in [their] quiet use and enjoyment of [their] cellular telephone[s]." *See id.*, ¶ 69.

Twilio sent these text message advertisements to many thousands of different cellular telephone numbers using its transmission equipment. *See id.*, ¶¶ 43-44. Twilio sent all of these text message advertisements after it began to collaborate with the other defendants (the "Saxe Defendants") "to develop, implement, and maintain [a] telemarketing text message program." *See id.*, ¶ 52. To facilitate Twilio's transmission of so many text messages, "Twilio joined their software and hardware together [with that of the Saxe Defendants] to create, sort, and send hundreds of thousands of text message advertisements to cellular telephone numbers in an automated manner." *See id.*, ¶ 53. For each of the many text messages sent, "Twilio then caused its devices to store the telephone numbers and messages, prioritize in what sequence the text messages would be sent to the various cellular telephone carriers [of] each telephone number, and ensured that the text messages were not blocked by cellular telephone carriers as telemarketing spam." *See id.*, ¶ 55. "Twilio controlled when and how each of the telemarketing text messages was delivered to the cellular telephone numbers of their intended recipients." *Id.*, ¶ 56 (emphasis added).

"In addition to helping the Saxe Defendants to transmit all of [these] telemarketing text messages, Twilio provided other material support to the text message telemarketing program." *See* Dkt. #174, ¶ 57. "In direct communications between representatives of Twilio and [agents of the Saxe Defendants], Twilio provided [the Saxe Defendants] with software code tailored for [the Saxe Defendants'] devices to enable and facilitate the automated transmission of telemarketing text messages with the assistance of Twilio." *See id.*, ¶ 58. "Representatives of Twilio provided help

and advice to [the Saxe Defendants] on how to ensure their telemarketing program would not run afoul of spam filters of cellular telephone carriers that are intended to block such uninvited telemarketing." *See id.*, ¶59. "Representatives of Twilio helped [the Saxe Defendants] obtain a short code telephone number for the telemarketing program to aid in bypassing the spam filters of cellular telephone carriers." *See id.*, ¶ 60. "Representatives of Twilio helped [the Saxe Defendants] generate communications for customers of the Saxe Defendants about the telemarketing program." *Id.*, ¶ 61. "Twilio even assigned [the Saxe Defendants] a mobile marketing campaign specialist who was specifically authorized by Twilio to ensure that the telemarketing text message program was a success." *See id.*, ¶ 62.  Accordingly, "[t]he telemarketing text message program could not have worked without the knowledge, authorization, approval, ratification, participation, and/or active support of Twilio." *Id.*, ¶ 63. Twilio was not a mere, guileless conduit of the illegal text message advertisements. *See supra*.

Altogether, "Twilio and the Saxe Defendants acted as agents of each other in enabling, facilitating, initiating, creating, and otherwise making the text message transmissions to Plaintiffs. The cooperation, knowledge, approval, authorization, ratification, participation, and/or active support of the Saxe Defendants and Twilio was essential prerequisite to the text messages being sent to Plaintiffs." Dkt. #174, ¶ 64.

Twilio's conduct in connection with the transmission of telemarketing text messages violates the TCPA and the NDTPA. *See, e.g.*, Dkt. #174, ¶¶ 87, 92-93. Consequently, the TCPA and NDTPA together entitle Plaintiffs and numerous other consumers to recover, injunctive relief, no less than $500 in statutory damages, and other remedies to stop and rectify Twilio's illegal conduct. *See id.*, ¶¶ 88-90, 94-95, 97-110, 112.

## III.   LEGAL STANDARD

Rule 8 requires only a "a short and plain statement of the claims showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2). When considering a Rule 12(b)(6) motion to dismiss that alleges a failure to state a claim, courts "read the complaint in the light most favorable to the non-moving party. This means that allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp.*,

SOUND JUSTICE LAW GROUP, PLLC

936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

486 F.3d 541, 545 (9th Cir. 2007). "Consequently, there is a strong presumption against dismissing an action for failure to state a claim." *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-KJD, 2013 WL 686492, at *1 (D. Nev. Feb. 22, 2013), *citing Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Courts apply this same standard to a motion that seeks dismissal under Rule 12(b)(1) where, as here, defendants make a "facial attack" upon the sufficiency of the allegations of a complaint. *See Nationstar Mortg. LLC v. Shadow Hills Master Ass'n*, No. 215CV01320GMNPAL, 2015 WL 9592498, at *2 (D. Nev. Dec. 31, 2015) ("When, as here, a court considers a 'facial' attack made pursuant to Rule 12(b)(1), it must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff."), *citing Love v. United States,* 915 F.2d 1242, 1245 (9th Cir. 1989); *also see Friends of Roeding Park v. City of Fresno*, 848 F.Supp.2d 1152, 1159 (E.D. Cal. 2012).

In this context, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) (citations omitted). Two principles underlie this approach:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011). Applying these principles, the Ninth Circuit holds that courts must give strong deference to plaintiffs' explanations of their claims:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*. […] Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations.

*Starr*, 652 F.3d at 1216-17 (emphases in original), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 5562, 127 S.Ct. 1955 (2007). "[O]nce a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Twombly,*

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

550 U.S. at 563, *quoting Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994). Therefore, "so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 791 (9th Cir. 2011), *citing In re Gilead Sciences Securities Litigation,* 536 F.3d 1049, 1057 (9th Cir. 2008).

The allegations of the complaints or Plaintiffs' explanations of their meaning should not be ignored. *See*, *e.g.*, *Kristensen*, 2013 WL 686492, at *2 ("Defendant's argument requires the Court to make factual findings in opposition to the material allegations of the complaint. A motion to dismiss is the wrong vehicle in which to bring these arguments.").

## IV.   AUTHORITY AND ARGUMENT

### A.   PLAINTIFFS' TCPA CLAIMS SHOULD NOT BE DISMISSED

#### 1.   The TCPA Is a Remedial Statute That Is Construed Broadly to Protect Consumers from Automated Text Messages Being Sent to Their Cellular Telephones

Congress found that consumers "considered automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy[.]" *In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2012 FCC Order*"), 27 FCC Rcd. 1830, 1839 ¶ 24 (Feb. 15, 2012), *citing* 137 Cong. Rec. H11307 (Daily Ed. Nov. 26, 1991). Such calls to cellular telephones are even more annoying because consumers carry their cellular telephones with them everywhere. See *Riley v. California*, 134 S.Ct. 2473, 2490 (2014) ("According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower."). To prevent uninvited calls is why Congress enacted the TCPA. *See Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013) ("Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls."), *citing Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 745 (2012).

Among its provisions, the TCPA provides that "[i]t shall be unlawful for any person … to make any call … using any automatic telephone dialing system … to any telephone number

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

assigned to a … cellular telephone service … or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii); *cf. Thomas v. Taco Bell Corp.*, 582 F.App'x 678 (9th Cir. 2014). Importantly, "A text message is a call under the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

The provisions of the TCPA are construed broadly to benefit consumers because the TCPA is a remedial statute. *See Gager*, 727 F.3d at 271 ("Because the TCPA is a remedial statute, it should be construed to benefit consumers."); *cf. Hason v. Med. Bd. of California*, 279 F.3d 1167, 1172 (9th Cir. 2002) (affirming the "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes"), *citing Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967); *see also In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2015 FCC Order*"), 30 FCC Rcd. 7961, 7974 ¶ 15 (July 10, 2015) (construing a TCPA definition broadly because "Congress intended a broad definition"), *citing* Comment of Albert H. Kirby at 1, *citing Gager*, 727 F.3d at 271.

### 2. There are Multiple Ways in which Defendants can be Liable under the TCPA for Sending Text Messages to Consumers

The TCPA creates liability for those who "make" an uninvited call to consumers using automated telephone dialing systems. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA does not define the terms "make" or "initiate." *See id.*; *cf. 2015 FCC Order*, 30 FCC Rcd. at 7980 ¶ 29. However, the Federal Communications Commission (FCC) last year "noted that 'initiate' suggests some 'direct connection between a person or entity and the making of a call.'" *2015 FCC Order*, 30 FCC Rcd. at 7980 ¶ 29. This interpretation of "initiate" informed the FCC's guidance on what "make" means under the TCPA;

> Specifically, a "direct connection between a person or entity and the making of a call" can include "tak[ing] the steps necessary to physically place a telephone call." It also can include being "so involved in the placing of a specific telephone call" as to be deemed to have initiated it. Thus, we look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA.

*Id.*, at 7980 ¶ 30. Thus, identifying who is liable for "making" calls in violation of the TCPA rests upon consideration of "the goals and purposes of the TCPA." *See id.*

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

In a more recent declaratory ruling, the FCC made clear that a party's mere involvement in the physical transmission of automated text messages can indicate liability for making or initiating a call in violation of the TCPA.

> As a result, the Commission has concluded that the determination as to who is liable as the person who "makes" or "initiates" a particular robocall (including an autodialed text message) requires a fact-based determination governed by factors such as which party takes the "steps necessary to physically place" that call and the extent and nature of involvement by others, including the provider of the calling platform used to make that call.

*In re Rules & Regs. Impl'g the Tel. Consumer Prot. Act of 1991* ("*2016 FCC Order*"), 31 F.C.C. Rcd. 88 ¶ 8 (Jan. 11, 2016). Thus, the FCC concludes that a party involved in "tak[ing] the 'steps necessary to physically place' [a] call" can be liable under the TCPA even if it is that party's business to broadcast such calls for others. *See id.*

In accord with the FCC's guidance, parties can be personally liable for making calls in violation of the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *See Ott v. Mortgage Investors Corp. of Ohio*, 65 F.Supp.3d 1046, 1060 (D.Or. 2014), *citing Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.,* No. 3:12–CV–2257, 2014 WL 1333472, at *3 (N.D.Ohio Mar. 28, 2014), *citing Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 898 (W.D.Tex. 2001). "Similarly, whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes may also be a factor in determining whether the platform provider is so involved in placing the calls as to be deemed to have initiated them." *2015 FCC Order*, 30 FCC Rcd. at 7980-81 ¶ 30; *also see 2016 FCC Order*, 31 F.C.C. Rcd. 88 ¶¶ 5 & 9 (denying a request that a text message broadcaster be insulated from TCPA liability unless it "demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such transmissions."). Ultimately, to advance the goals and purposes of the TCPA, parties face liability even if they made calls solely on behalf or at the behest of third parties. *See*, *e.g.*, *Ott*, 65 F.Supp.3d at 1060 ("[I]f an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."), *citing Maryland v. Universal Elections,* 787 F.Supp.2d 408, 415-16 (D.Md. 2011).

Additionally, "the FCC has clarified that vicarious liability is imposed 'under federal

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.'" *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) *cert. granted on other grounds*, 135 S.Ct. 2311 (2015), *citing In re Joint Petition Filed by Dish Network, LLC* ("*2013 FCC Order*"), 28 FCC Rcd. 6574, 6574 (May 9, 2013). In this regard, a person "may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *See 2013 FCC Order*, 28 FCC Rcd. at 6584 ¶ 28. The Ninth Circuit defers to the FCC's declaratory ruling on vicarious liability. *See Gomez*, 768 F.3d at 878 ("Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded *Chevron* deference."). And, the FCC continues to affirm the applicability of its expansive approach to vicarious liability under the TCPA. *See 2015 FCC Order*, 30 FCC Rcd. at 7989 n. 96. Thus, keeping in mind the purposes of the TCPA, more than one person can be liable for the illegal transmission of telemarketing text messages. *E.g.*, *see id.*, at 7977 ¶ 23 ("We also find that parties cannot circumvent the TCPA by dividing ownership of dialing equipment.").

Altogether, in accord with FCC guidance on the matter, determining who faces TCPA liability for the transmission of illegal text messages involves an individualized analysis that looks to the totality of circumstances in each case. *See*, *e.g.*, *Nunes v. Twitter, Inc.*, --- F.Supp.3d ---, No. 14-CV-02843-VC, 2016 WL 3660526, at *4 (N.D. Cal. July 1, 2016) ("In short, Twitter's insistence on applying language used by the FCC to discuss TextMe and YouMail disregards the great emphasis the FCC places on the need to consider each case individually, based on the totality of the circumstances presented by that case."). Applying the facts alleged by Plaintiffs in this case here, there are multiple plausible ways in which Twilio can be directly or indirectly liable under the TCPA for its use of automated telephone dialing systems to send text messages to Plaintiffs and other consumers.

### 3.    Plaintiffs Allege Plausible TCPA Claims against Twilio

Rule 8 only requires a "short and plain statement". *See* Fed.R.Civ.P. 8(a)(2). In this regard, "Rule 8(a) 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal

evidence' to support the allegations." *Starr*, 652 F.3d at 1216-17, *citing Twombly*, 550 U.S. 544, 556 (2007). Applying these standards, courts generally find that short and plain descriptions of the text messages sent by a defendant are sufficient to plead a TCPA claim. *See Hickey v. Voxernet LLC*, 887 F.Supp.2d 1125, 1129 (W.D.Wash. 2012) ("The relationship between Defendant and Plaintiff's contact is currently unclear. That ambiguity is not fatal to Plaintiff's complaint, indeed it goes to the heart of the dispute. Plaintiff alleges that [Defendant] transmits automated text messages to lists of cell phone numbers that [Defendant] is given access to. [...] Plaintiff alleges sufficient details, such as the generic form of the message, which indicate that discovery will reveal evidence of Defendant's actual transmission or control of the message."); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *5 (N.D.Cal. June 15, 2015) ("The Complaint alleges that NREC called Plaintiff a total of at least nine times between July 2014 and the filing of the Complaint in February 2015, and that during the calls, NREC tried to sell him solar power-related services. [...] Thus, Plaintiff has alleged facts that support the elements of a telephone solicitation as defined by the TCPA."); *Robbins v. Coca–Cola–Co*., No. 13–CV–132–IEG NLS, 2013 WL 2252646, at *2 (S.D.Cal. May 22, 2013) ("To allege a call under the TCPA, Plaintiffs need only allege text messages to their cellular phones by Defendant.").

Rule 8 does not require Plaintiffs to allege facts about a TCPA claim that ordinarily would be possessed by Defendants. *See*, *e.g.*, *Knutson v. Reply!, Inc.*, No. 10CV1267 BEN, 2011 WL 1447756, at *1 (S.D.Cal. Apr. 13, 2011) ("In reviewing Plaintiff's FAC, the Court noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and indicated that Plaintiff could rely on allegations about the details of the call from which the Court could infer the use of an automatic dialing system."). This is why "allegations concerning the details of the calls are sufficient to 'raise a reasonable expectation that discovery will reveal evidence of the matter' complained of." *See id.*, *citing Twombly,* 550 U.S. at 556. Plaintiffs provide notice of their TCPA claims against Twilio with allegations that meet and exceed such pleading standards.

Plaintiffs allege that Twilio sent them the illegal text messages that are the subject matter of their lawsuits against Twilio. *See* Dkt. #174, ¶¶ 27-41. Twilio joined their software and hardware

SOUND JUSTICE LAW GROUP, PLLC

936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

with that of other defendants to transmit many thousands of telemarketing text messages to Plaintiffs and numerous other consumers. *See id.*, ¶ 53. This pairing of equipment and software sustains Plaintiffs' TCPA claims against Twilio, for the FCC holds that "parties cannot circumvent the TCPA by dividing ownership of dialing equipment." *See 2015 FCC Order*, 30 FCC Rcd. at 7977 ¶ 23. Therefore, allegations of Twilio using automated dialing equipment to send text messages to Plaintiffs and numerous other consumers are sufficient to sustain Plaintiffs' TCPA claims against Twilio. *See Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS, 2014 WL 3101426, at *4 (C.D.Cal. July 7, 2014) ("Plaintiff alleges that the defendant called him using an ATDS. […] Whether defendant actually did so is better adjudicated after the evidentiary record has been developed."). However, Plaintiffs allege more.

In sending the telemarketing text messages to Plaintiffs, Twilio caused its automated dialing devices "to store the telephone numbers and messages, prioritize in what sequence the text messages would be sent to the various cellular telephone carriers [of] each telephone number, and ensured that the text messages were not blocked by cellular telephone carriers as telemarketing spam." Dkt. #174, ¶ 55. "Twilio controlled when and how each of the telemarketing text messages was delivered to the cellular telephone numbers of their intended recipients." *Id.*, ¶ 56. Such control <u>or</u> involvement in determining the timing <u>or</u> manner of sending the text messages to Plaintiffs provides additional reasons to deny Twilio's motion to dismiss. *See*, *e.g.*, *Keim v. ADF Midatlantic, LLC*, No. 12-80577-CIV, 2015 WL 11713593, at *6 n. 8 (S.D. Fla. Nov. 10, 2015) ("But to the extent their argument can be construed as an assertion that the people submitting their friends' cell phone numbers to Songwhale were the makers of the text messages Keim complains of, the Court rejects that argument because Keim pleads that those people had no control or involvement in the timing, manner, or content of the text messages.").

Moreover, Twilio provided additional material support that evinces its control and involvement in the transmission of illegal telemarketing text messages to Plaintiffs and numerous other consumers. *See* Dkt. #174, ¶ 57. Twilio provided the other defendants with customized software code to enable and facilitate the telemarketing text message transmission scheme. *See id.*, ¶ 58. Twilio actively helped the text message advertisements to avoid spam filters that would have

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

otherwise prevented consumers like Plaintiffs from receiving the unsolicited telemarketing. *See id.*, ¶¶ 59-60. Twilio generated communications for the intended recipients of the text messages about the text messaging scheme. *See id.*, ¶ 61. Twilio even designated at least one mobile marketing specialist to ensure that the telemarketing text message scheme was a success. *See id.*, ¶ 62. "The telemarketing text message program could not have worked without the knowledge, authorization, approval, ratification, participation, and/or active support of Twilio." *Id.*, ¶ 63. Thus, Twilio enabled, facilitated, initiated, and otherwise made the text message transmissions to Plaintiffs. *See id.*, ¶ 64. Twilio's cooperation, knowledge, approval, authorization, ratification, participation, and active support were essential prerequisites to the spam text messages being sent to Plaintiffs. *See id.* All of these are factual allegations in Plaintiffs' complaint. *See supra.* These allegations together make it plausible that discovery will substantiate that Twilio "was so involved in placing [each] call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." *See 2015 FCC Order*, at 7980 ¶ 30. Even so, a "Plaintiff need not prove as much at this stage of the proceedings." *See Thomas v. Dun & Bradstreet Credibility Corp.*, No. CV1503194BROGJSX, 2015 WL 4698398, at *6 (C.D.Cal. Aug. 5, 2015) (denying motion to dismiss a TCPA claim).

Plaintiffs' complaints present allegations which make it plausible that discovery on the merits, when it occurs, will establish that Twilio is liable for sending Plaintiffs multiple text messages in violation of the TCPA. Accordingly, Plaintiffs' complaints plainly state valid TCPA claims against Twilio. For these reasons, Plaintiffs respectfully ask the Court to deny Twilio's motion to dismiss.

**B.      PLAINTIFFS' NDTPA CLAIMS SHOULD NOT BE DISMISSED**

**1.      The Court Already Rejects Twilio's Dismissal Arguments**

Twilio argues that Plaintiffs' NDTPA claims should be dismissed under Rule 12 because the operative complaints may not allege that Plaintiffs were injured by consumer frauds. *See* Dkt. #177, pp. 12-14. However, in presenting its motion to dismiss Plaintiffs' NDTPA claims, Twilio fails to acknowledge that its co-defendants, the Saxe Defendants, previously brought a motion for summary judgment against the very same claims using the very same arguments. *See* Dkt. #104;

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

*cf.* Dkt. #177, pp. 12-14. Twilio also fails to address that the Court denied this motion for summary judgment. *See* Dkt. #171. The reasons which the Court gave for denying the Saxe Defendants' motion for summary judgment on Plaintiffs' NDTPA claims also dispose of Twilio's motion to dismiss them. *See* Dkt. #180 (transcript), pp. 28:10 – 29:7.

The Court denied the Saxe Defendants' motion for summary judgment in part because the Court found that merits discovery, which has not yet occurred, may help Plaintiffs substantiate their claims. *See* Dkt. #180, p. 28:10-19. Implicit in this finding is the plausibility of discovery substantiating Plaintiffs' NDTPA pled claims. *See id.*; *cf.* Dkt. #140, pp. 4-5 (Saxe Defendants' argument in reply that the Court should not consider claims that are not pled by Plaintiffs). Given this finding under the stricter summary judgment standard, dismissal under Rule 12 would be improper. *See*, *e.g.*, *Starr*, 652 F.3d at 1216-17 ("Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations.") (emphases in original), *citing Twombly*, 550 U.S. at 5562.

The Court also denied the Saxe Defendants' motion for summary judgment because it found that there is sufficient evidence in the record to establish a factual dispute on the issue of Plaintiffs' receipt of text messages on their cellular telephones constituting actual injuries. *See* Dkt. #180, pp. 28:25 – 29:5. This finding establishes the plausibility that Plaintiffs were in fact injured by Twilio's text messages. Accordingly, Plaintiffs' NDTPA cannot be dismissed under Rule 12 for lack of alleging a plausible injury. *See Starr*, 652 F.3d at 1216-17 ("Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*.") (emphasis in original).

Consistent with the denial of the Saxe Defendants' motion for summary judgment under Rule 56 of Plaintiffs' NDTPA claims, Plaintiffs respectfully request that the Court deny Twilio's Rule 12 motion to dismiss those same claims for the same reasons.

**2.    The NDTPA Should Be Construed Liberally to Protect Consumers**

The NDTPA is a remedial statute enacted to protect consumers. *See Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1224 (D. Nev. 2010) ("The Legislature enacted […] the Deceptive Trade

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

Practices Act primarily for the protection of consumers."). In this regard, "Nevada Revised Statutes 41.600(1)-(2) [of the NDTPA] permits an action to 'be brought by any person who is a victim of consumer fraud' as defined in various statutes." *Bates v. Dollar Loan Ctr., LLC*, No. 2:13-CV-1731-KJD-CWH, 2014 WL 3516260, at *2 (D. Nev. July 15, 2014). "[T]o be a victim under this statute, the plaintiff need only have been 'directly harmed' by the defendant." *Id.*, at *3, *citing Del Webb Communities, Inc. v. Partington,* 652 F.3d 1145, 1153 (9th Cir. 2011). "If the claimant prevails, the court awards (a) any damages sustained by the claimant, (b) any appropriate equitable relief, and (c) the claimant's costs in the action and reasonable attorney's fees." *Id.*, at *2; *see also* NRS 41.600(3).

Because the NDTPA is statute with a protective purpose, the scope and meaning of the NDTPA's protections and remedies should be liberally and broadly construed. *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court ex rel. Cty. of Washoe*, 124 Nev. 193, 201 n. 20, 179 P.3d 556, 561 (2008) ("[s]tatutes with a protective purpose should be liberally construed in order to effectuate the benefits intended to be obtained"), *citing Colello v. Administrator, Real Est. Div.,* 100 Nev. 344, 347, 683 P.2d 15, 17 (1984); *also see id.* ("given its public purpose, [a statute] should be broadly construed so as to give 'the widest possible coverage and effect to the prohibitions and remedies provided"), *citing So. Cal. Rapid Transit v. Superior Court,* 30 Cal.App.4th 713, 36 Cal.Rptr.2d 665, 672 (1994).

In this context, the NDTPA broadly defines "consumer fraud" to include a wide variety of conduct such as (1) "[k]nowingly making any [...] false representation in a transaction" [*see* NRS 598.0915(15)] (2) "knowingly [...] [f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or service" [*see* NRS 598.0923(2)], or (3) "knowingly [...] [v]iolat[ing] a state or federal statute or regulation relating to the sale or lease of goods or services" [*see* NRS 598.0923(3)]. *See, e.g.*, *Bates*, 2014 WL 3516260, at *2. "Knowingly" also is liberally applied to mean simply knowledge of the conduct at issue. *See, e.g.*, *Del Webb Communities, Inc. v. Partington*, No. 208-CV-00571-RCJ-GWF, 2009 WL 3053709, at *9 (D. Nev. Sept. 18, 2009) ("Defendants engaged in a deceptive trade practice and consumer fraud as defined under NRS 41.600 and NRS 598.0923(1) by knowingly conducting their home inspections business without

the required license."). Knowledge of an act's illegality is irrelevant for purposes of an NDTPA. *See id*.

Here, Twilio for the first time challenges whether the operative complaints allege that Plaintiffs were injured by a consumer fraud prohibited by the NDTPA. Ample allegations provide notice to Twilio about the consumers frauds at issue and the injuries caused by them.

### 3.   Defendants Perpetuated Consumer Fraud Under the NDTPA with Their Terms and Conditions

Under the NDTPA, companies like Twilio commit consumer fraud by engaging in "deceptive trade practice[s]" such as "knowingly […] [f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or service". *See* NRS 598.0923(2); *cf.* NRS 41.600(1)-(2). Additionally, companies commit consumer fraud by "[k]nowingly making any […] false representation in a transaction". *See* NRS 598.0915(15); *cf.* NRS 41.600(1)-(2). What constitutes a false representation or failure to disclosue should be liberally construed. *See*, *e.g.*, *Int'l Game Tech., Inc*, 124 Nev. at 201 n. 20. A "liberal construction" of a consumer protection statute like the NDTPA serves "to protect the least sophisticated consumer." *See Calvert v. Alessi & Koenig, LLC*, No. 2:11-CV-00333-LRH, 2013 WL 592906, at *5 (D. Nev. Feb. 12, 2013) (discussing liberal construction of a federal consumer protection statute), *citing Costa v. National Action Financial Services,* 634 F.Supp.2d 1069, 1076 (E.D.Cal.2007). Therefore, "[i]n evaluating the tendency of [language] to deceive, the Court 'should not look to the most sophisticated readers but rather to the least.'" *See Keithly v. Intelius Inc.*, 764 F.Supp.2d 1257, 1266 (W.D. Wash. 2011), *citing Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 50, 204 P.3d 885 (2009); *also see Baker v. G. C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982), *citing Exposition Press, Inc. v. F.T.C.*, 295 F.2d 869, 873 (2d Cir. 1961). "Deception may be found based on the 'net impression' created by a representation." *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009); *also see F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) ("'The tendency of the advertising to deceive must be judged by viewing it as a whole'.... The impression created by the advertising, not its literal truth or falsity, is the desideratum."), *quoting Beneficial Corp. v. F.T.C.,* 542 F.2d 611, 617 (3d Cir. 1976), *cert. denied*, 430 U.S. 983 (1977).

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210   FAX: (866) 845-6302

Here, Plaintiffs' complaints establish that the Saxe Defendants failed to disclose to consumers like Plaintiffs the true nature of the telemarketing text message that Twilio would send them or else falsely represented that Twilio would not be sending them such text messages.  *See* Dkt. #174, ¶ 23. Twilio was involved in generating these communications. *See id.*, ¶ 61.  Twilio even assigned a mobile marketing campaign specialist to ensure that the telemarketing text message scheme would be a success. *See id.*, ¶ 62. This entire scheme, including its component deceptions, could not have been a success unless Twilio knew, authorized, approved, ratified, participated in, or actively supported these deceptions. *See id.*, ¶¶ 63-64. Given these factual allegations, it is plausible that discovery on the merits, which has yet to occur, will establish Twilio is in fact liable for these consumer frauds. That Twilio argues otherwise cannot justify dismissal. *See*, *e.g.*, *Starr*, 652 F.3d at 1216-17. Therefore, Plaintiffs respectfully ask that the Court deny Twilio's motion to dismiss.

**4.   Defendants Engaged in Consumer Fraud by Sending Telemarketing Text Messages in Violation of the TCPA**

Under the NDTPA, Defendants commit consumer fraud by engaging in "deceptive trade practice[s]" such as "knowingly […] [v]iolat[ing] a state or federal statute or regulation relating to the sale or lease of goods or services". *See* NRS 598.0923(3); *cf.* NRS 41.600(1)-(2). Defendants do not seek summary judgment on Plaintiffs' TCPA claims. Defendants instead argue that a knowing violation of the TCPA or its regulations might not constitute an NDTPA claim because some excerpts of authorities speak to purposes that do not relate to the sale or lease of goods or services. Defendants err. The TCPA and its regulations squarely relate to the sale or lease of goods or services.

"'Unrestricted telemarketing,' Congress determined [in enacting the TCPA], 'can be an intrusive invasion of privacy.'" *Mims*, 132 S. Ct. at 745, *citing* TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227. "Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because 'telemarketers could evade 'state-law' prohibitions through interstate operations.'" *Id.* (brackets omitted). Congress enacted the TCPA to prevent such uninvited calls. *See Gager*, 727 F.3d at 268 ("Congress passed the TCPA

1   to protect individual consumers from receiving intrusive and unwanted calls."), *citing Mims*, 132

2   S. Ct. at 745.

3         Therefore, among its provisions, the TCPA provides that "[i]t shall be unlawful for any

4   person … to make any call … using any automatic telephone dialing system … to any telephone

5   number assigned to a … cellular telephone service … or any service for which the called party is

6   charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii); *cf. Thomas v. Taco Bell Corp.*, 582 F.App'x

7   678 (9th Cir. 2014). Of note, "a text message is a call under the TCPA." *Satterfield v. Simon &*

8   *Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

9         Making clear the relationship of this provision of the TCPA to telemarketing, the FCC gave

10  additional effect to the purposes of the TCPA by implementing the following regulation: "No

11  person or entity may […] [i]nitiate, or cause to be initiated, any telephone call that includes or

12  introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing

13  system or an artificial or prerecorded voice, to any [telephone number assigned to a cellular

14  telephone service], other than a call made with the prior express written consent of the called party

15  […]." *See* 47 C.F.R. § 64.1200(a)(2).

16        Notably, an "advertisement" as referenced in the TCPA and its regulations is "any material

17  advertising the commercial availability or quality of any property, goods, or services."  47 CFR §

18  64.1200(f)(1). Telemarketing is likewise defined as "initiation of a telephone call or message for

19  the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services

20  . . . ." 47 CFR 64.1200(f)(12). Therefore, because a primary purpose and effect of the TCPA and

21  its regulations is to limit such advertisement and telemarketing telephone calls, the TCPA and its

22  regulations are statutory and regulatory prohibitions "relating to the sale or lease of goods or

23  services" for purposes of the NDTPA. *See* NRS 598.0923(3). Indeed, a Nevada District Court

24  (Hon. Kent J. Dawson) has recently held that violations of the TCPA may serve as a predicate to

25  the NDTPA.

26        In *Bates v. Dollar Loan Center, LLC*, 2014 WL 3516260, No. 2:13-CV-1731-KJD-CWH (D. Nev.

27  July 15, 2015), plaintiffs alleged that defendants violated the TCPA and NDTPA.  *Id.* at *1.  As part of its

28  NDTPA claim, plaintiffs alleged, under NRS 598.0923(3), that defendants violated a federal statute (the

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

TCPA) relating to the sale or lease of goods or services. *Id.* at *2. Defendants filed a motion for summary judgment, arguing, among other things, that plaintiffs' NDTPA claim failed because their TCPA claim failed as a matter of law. *Id.* The court held that because the TCPA claim did not fail as a matter of law, plaintiffs' NDTPA claim also did not fail. *Id.* There was no genuine dispute that the TCPA and its regulations relate to the sale or lease of goods or services. *Id.* Nor could there be, for the United States Supreme Court confirms that a focal purpose of the TCPA is to regulate telemarketing. *See Mims*, 132 S. Ct. at 745.

By definition, the TCPA's statutory and regulatory proscriptions and limits on telemarketing (and advertisements) relate to the sale or lease of goods or services. *See, e.g.*, 47 CFR 64.1200(f)(12). Defendants' knowing violations of the TCPA and its regulations constitute deceptive practices that are consumer fraud prohibited by the NDTPA. *See* NRS 598.0923(3); *cf.* NRS 41.600(1)-(2).

### 5. Defendants Knowingly Engaged in Their Wrongful Acts

Defendants do not dispute that they knowingly engaged in deceptive practices or consumer fraud. Any argument otherwise would be futile, for "knowingly" under the NDTPA is liberally applied to mean simply knowledge of the conduct at issue. *See Del Webb Communities, Inc.*, 2009 WL 3053709, at *9 ("Defendants engaged in a deceptive trade practice and consumer fraud as defined under NRS 41.600 and NRS 598.0923(1) by knowingly conducting their home inspections business without the required license."). Moreover, as to Twilio's TCPA violations that constitute consumer fraud under the NDTPA, generally under the TCPA, "to establish a *knowing* violation of the TCPA […], a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law." *See Stewart v. Regent Asset Mgmt. Sols.*, No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018, at *7 (N.D. Ga. May 4, 2011), *citing Charvat v. Ryan*, 879 N.E.2d 765, 770 (Ohio 2007). This approach is consistent with how courts in Nevada apply the NDTPA. *See, e.g.*, *Del Webb Communities, Inc.*, 2009 WL 3053709, at *9. To hold otherwise would wrongly deny consumers the broad protections that remedial statutes such as the NDTPA and TCPA are intended to provide. *See, e.g.*, *Int'l Game Tech., Inc.*, 124 Nev. at 201 n. 20.

Plaintiffs' complaints plainly provide notice under Rule 8 that Twilio knew about, authorized, approved, ratified, participated in, and otherwise actively supported the illegal text

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

message transmission and deceptive practices that are put at issue. *See*, *e.g.*, Dkt. #174, ¶¶ 63-64. At this early stage of the case, Twilio cannot gainsay the plainly stated facts alleged in Plaintiffs' complaint. *See*, *e.g.*, *Kristensen*, 2013 WL 686492, at *2 ("Defendant's argument requires the Court to make factual findings in opposition to the material allegations of the complaint. A motion to dismiss is the wrong vehicle in which to bring these arguments."). Plaintiffs are entitled to conduct discovery on the merits to confirm the truth of these allegations with the evidence possessed by Twilio, the other defendants, and third-parties, for "once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *See Twombly,* 550 U.S. at 563, *citing Sanjuan,* 40 F.3d at 251. Therefore, Plaintiffs respectfully asks the Court to deny Twilio's motion to dismiss.

### 6.   Plaintiffs Were Directly Harmed by the Uninvited Telemarketing Text Messages they Received

Defendants also seek an early dismissal of Plaintiffs' claims by arguing that the NDTPA is confined to claims for actual economic injuries.  This argument is contrary to the plain language of the NDTPA, which expressly provides that consumers can recover "[a]ny damages that the claimant has sustained." *See* NRS 41.600(3). Moreover, Defendants' argument wholly ignores the nature of the injuries inherent to Plaintiffs' receipt of Defendants' spam telemarketing text messages on their cellular telephones. *See*, *e.g.*, Dkt. #174, ¶¶ 22 & 69.

Plaintiffs' complaints confirm that the unwanted telemarketing text messages violated their privacy. *See*, *e.g.*, Dkt. #174, ¶¶ 22 & 69. In this regard, Plaintiffs are like most consumers who typically carry their cellular telephones everywhere. *See*, *e.g. Riley*, 134 S. Ct. at 2490 ("According to one poll, nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower."). Thus, after being alerted to the receipt of a text messages, Plaintiffs had to stop what they were doing and take time to review the text, resulting in aggravation and annoyance once the they saw that the texts were telemarketing texts rather than desired communications from friends or family. *See*, *e.g.*, Dkt. #174, ¶¶ 22 & 69. At a minimum, these violations of privacy inflicted a pecuniary loss of time.

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

Plaintiffs' testimony also confirms that Defendants' spam telemarketing text messages injured Plaintiffs' quiet use and enjoyment of their cellular telephones. *See, e.g.*, Dkt. #174, ¶¶ 22 & 69. Deeply rooted legal traditions of the United States have long held that disturbing and annoying "the quiet use and enjoyment" of a thing is an "invasion of others' property" which can justify a remedy. *See Baltimore & P. R. Co. v. Fifth Baptist Church*, 108 U.S. 317, 332 (1883). In this regard, unwanted texts reduce cellular telephone phone memory and battery charge; "The limited memory of these devices can be exhausted by unwanted text messages resulting in the inability to receive necessary and expected messages." *See, e.g.*, 2003 Wn. Legis. Serv. Ch. 137 § 1 (S.H.B. 2007) (West), explaining enactment of a Washington statute specifically prohibiting the transmission of telemarketing text messages, RCWA 19.190.060. Thus, there is a pecuniary loss caused by Defendants' trespass of Plaintiffs' cellular telephones with Defendants' uninvited telemarketing text messages.

Defendants might argue that the Plaintiffs will not be able to quantify these injuries as certain damages. Such an argument would be immaterial. Even if Plaintiffs at trial are unable to quantify their damages, Nevada law entitles Plaintiffs to recover nominal damages. *See Commercial Cabinet Co. v. Mort Wallin of Lake Tahoe, Inc.*, 103 Nev. 238, 240, 737 P.2d 515, 517 (1987) ("A plaintiff who proves a right to damages without proving the amount as well is only entitled to nominal damages."); *cf.* NRS 41.600(3) (permitting recovery of "any" damages). However, an award of nominal damages will be unnecessary. The TCPA provides a clear, certain means by which to calculate the damages due to Plaintiffs and the class they seek to represent.

The TCPA provides Plaintiffs with a right to claim $1,500 from Defendants for each text message sent to them in knowing violation of the TCPA or regulations enacted under its provisions. *See* 47 U.S.C. § 227(b)(3). Plaintiffs seek payments of these statutory damages from Defendants. *See, e.g.*, Dkt. #174, ¶¶ 88 Defendants harm Plaintiffs by refusing to pay these sums due to Plaintiffs and consumers like them. These sums may be statutory damages, but the NDTPA expressly provides a means to collect "any" damages due a claimant like Plaintiffs. *See* NRS 41.600(3).

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

Whether Plaintiffs recover statutory damages or nominal damages at trial, the NDTPA also ensures that Plaintiffs can recover "any equitable relief that the court deems appropriate" together with an award for Plaintiffs' reasonable attorney's fees. *See* NRS 41.600(3). These are valuable remedies that are not expressly provided as relief in the TCPA. *See* 47 U.S.C. § 227(b)(3). Accordingly, the NDTPA provides the most comprehensive means by which Plaintiffs can be made whole for the undisputed harms they incurred because of Defendants' consumer frauds and deceptive business practices. For this reason, Plaintiffs respectfully asks the Court to reject Defendants' attempt to dismiss Plaintiffs' NDTPA claims.

## C.     PLAINTIFFS HAVE STANDING TO ASSERT THEIR CLAIMS

Twilio argues that Plaintiffs' claims should be dismissed because the face of Plaintiffs' complaints might not establish standing sufficient for federal courts to adjudicate the matter pursuant to Article III of the United States Constitution. In this regard, Twilio essentially contends that Twilio did not cause a judiciable injury to Plaintiffs. "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013), *citing Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Whether there is an "injury in fact […] is the 'first and foremost' requirement of [Article III] standing[.]" *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 972 (9th Cir. 2015) (citation omitted), *cert. denied*, 136 S. Ct. 1509 (2016). However, Twilio conspicuously ignores that this Court already denied a motion for summary judgment in part upon its finding that there is sufficient evidence in the record to establish a factual dispute on the issue of Plaintiffs' receipt of text messages on their cellular telephones constituting actual injuries. *See* Dkt. #180, pp. 28:25 – 29:5. Given that this controversy is concrete and substantial enough to survive a motion for summary judgment, Twilio offers no justification for a dismissal here to resolve a mere facial attack of the pleadings in a motion to dismiss. Any belated proffer in reply would be futile.

Plaintiffs provide ample, factual allegations about how spam telemarketing text messages sent by Twilio were received by Plaintiffs on their cellular telephone, invading their privacy, trespassing on their property, and wasting their time. *See*, *e.g.*, Dkt. #174, ¶¶ 22, 27-41, 69. Given

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

the remedial purposes of the TCPA to stop such telemarketing spam from being sent to consumers, other federal courts have denied motions to dismiss claims with similar allegations. *See*, *e.g.*, *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016) ("In contrast, the TCPA and WADAD violations alleged here, if proven, required Plaintiffs to waste time answering or otherwise addressing widespread robocalls. […] The use of the autodialer, which allegedly enabled Defendants to make massive amounts of calls at low cost and in a short period of time, amplifies the severity of this injury. As Congress and Washington State's legislature agreed, such an injury is sufficiently concrete to confer standing."); *Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *3 (N.D. Cal. Sept. 1, 2016) ("Juarez's allegation that he received repeated unwanted calls that caused him aggravation, nuisance, and an invasion of privacy, is sufficient to allege a 'concrete' and 'particularized' injury that establishes standing under *Spokeo*."); *Meyer v. Bebe Stores, Inc.*, Civ. No. 14-267 YGR, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) (holding that the allegation that a single unsolicited text message from defendant was an invasion of privacy satisfied Article III standing requirements even though plaintiff did "not allege she incurred any carrier charges for the specific text message at issue"). Twilio offers no analysis specific to receipt of text messages which would gainsay the weight of persuasive authority presented by these district court.

Moreover, current Ninth Circuit precedent recently affirmed by the United States Supreme Court establishes that a single TCPA violation can confer Article III standing;

> The Supreme Court, however, recently confirmed that allegations of a single TCPA violation can be sufficient to confer Article III standing. In *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), the plaintiff received a single unsolicited text message from the defendant's agent and filed suit against the defendant "seeking compensation for the alleged violation of the TCPA." *Id*. at 873-74. Plaintiff "also sought to represent a putative class of other unconsenting recipients of the [defendant's] text messages." *Id*. at 874. The Ninth Circuit held that "Congress has expressly created a federal cause of action affording individuals like Gomez standing to seek compensation for violations of the TCPA." *Id*. at 880. The Supreme Court affirmed, holding that "the District Court retained jurisdiction to adjudicate Gomez's complaint." *Gomez*, 136 S. Ct. at 672.

*Hewlett v. Consol. World Travel, Inc.*, No. CV 2:16-713 WBS AC, 2016 WL 4466536, at *3 (E.D. Cal. Aug. 23, 2016). Thus, precedent confirms that Plaintiffs have standing to vindicate their TCPA rights in federal courts even if they receive just one illegal text message for which

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210 FAX: (866) 845-6302

Twilio may be liable. *See id.* Here, Plaintiffs received several such illegal text messages from Twilio. *See supra*. Therefore, Plaintiffs respectfully requests that the Court deny Twilio's motion to dismiss.

**D.    TWILIO'S ATTEMPT TO APPLY A SUMMARY JUDGMENT STANDARD SHOULD BE DISREGARDED**

Twilio seeks dismissal under Rule 12 of the operative complaints solely based on the face of Plaintiffs' allegations. *See* Dkt. #177. With their brief, Twilio did not offer Plaintiffs the time to respond that they would have for a motion for summary judgment. *Cf.* LR 7-2(e). However, many of the cases upon which Twilio relies are evaluating evidence pursuant to a summary judgment standard rather than evaluating the sufficiency of pleadings under the notice pleading standard relevant to Twilio's Rule 12 motion to dismiss. *See*, *e.g.*, Dkt. #177, p. 10. None of these summary judgment orders considered that all of a plaintiffs' factual allegations must be deemed true and all inferences construed in favor of the claims. *Cf. Odom*, 486 F.3d at 545. Accordingly, as cited by Twilio, such summary judgment orders are immaterial to the current motion.

Moreover, even if the Court could apply a summary judgment standard to Twilio's motion to dismiss, it would be appropriate to defer or deny the motion because Plaintiffs have not had sufficient time to engage in discovery concerning the merits of the case. *See* Fed.R.Civ.P. 56(d) (allowing a motion for summary judgment to be denied or deferred when facts are unavailable to the nonmoving party). The Court previously ordered, "The discovery in this case shall be bifurcated into two phases: Class Discovery Phase and the Merits Discovery Phase." Dkt. #35 at 6. "The Merits Discovery Phase is contingent upon the Court's decision regarding the Motion for Class Certification[.]" *Id.* However, the Court has not yet ruled on Plaintiffs' Motion for Class Certification. *See* Docket. Accordingly, applying a summary judgment standard would be unjust and inappropriate because Plaintiffs have not even begun the phase of discovery which will allow them to root out the evidence which supports Plaintiffs' claims against Twilio. *See supra*.

Accordingly, Plaintiffs respectfully request that the Court disregard the many authorities cited by Twilio in support of its motion which apply a summary judgment standard of review.

**E.     LEAVE TO AMEND SHOULD BE GRANTED IF PLAINTIFFS' CLAIMS ARE DISMISSED**

"Where a complaint is dismissed for failure to state a claim, 'leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *Edifecs, Inc. v. TIBCO Software, Inc.*, 756 F.Supp.2d 1313, 1322 (W.D.Wash. 2010), *citing Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986); *also see Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) ("We have adopted a generous standard for granting leave to amend from a dismissal for failure to state a claim, such that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'") (citations omitted).  If any aspect of the motion to dismiss is granted, Plaintiffs respectfully request that the dismissal be without prejudice and leave to amend their operative complaints be granted.

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully ask the Court to deny Twilio's motion to dismiss.  To the extent the Court dismisses any of Plaintiffs' claims, for the reasons stated herein, Plaintiffs respectfully request the dismissal be without prejudice and permit Plaintiffs leave to amend their operative complaints to cure any deficiency.

RESPECTFULLY SUBMITTED: October 24, 2016

*/s/   Albert H. Kirby*
Albert H. Kirby
Admitted Pro Hac Vice
**Sound Justice Law Group, pllc**
936 North 34th Street, Suite 300
Seattle, Washington 98103

Phillip S. Aurbach
Nevada Bar No. 1501
Candice E. Renka
Nevada Bar No. 11447
**MARQUIS AURBACH COFFING**
10001 Park Run Drive
Las Vegas, Nevada 89145

*Counsel for Plaintiff Jeremy Bauman*

SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/   Matthew R. Mendelsohn*
Matthew R. Mendelsohn
Admitted Pro Hac Vice
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068

Dennis L. Kennedy
Nevada Bar No. 1462
Paul C. Williams
Nevada Bar No. 12524
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
Las Vegas, Nevada 89148-1302

Payam Shahian
Admitted Pro Hac Vice
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Ste 700
Los Angeles, California 90067

*Counsel for Plaintiff Bijan Razilou*

**SOUND JUSTICE LAW GROUP, PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302

1

## **CERTIFICATE OF SERVICE**

2

      I certify that the foregoing document is filed or will be filed through the Court's ECF

3

system and thereby will be sent electronically to the registered participants identified on the Notice

4

of Electronic Filing on today's date.

5

      DATED: October 24, 2016          */s/ Albert H. Kirby*

6

                                     Albert H. Kirby

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SOUND JUSTICE LAW GROUP, PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103
TEL: (206) 489-3210  FAX: (866) 845-6302