JOEL D. HENRIOD (SBN 8492)
*jhenriod@lrrlaw.com*
**LEWIS ROCA ROTHGERBER LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone:  702.474.2681
Facsimile:  702.216.6190

Michael B. Hazzard (pro hac vice)
*mhazzard@jonesday.com*
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone: (202) 879-3829
Facsimile: (202) 626-1700

Attorneys for Defendant
TWILIO INC.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY BAUMAN, ET AL.,<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID SAXE, ET AL.,<br><br>*Defendant.* | Case No. 2:14-cv-01125-RFB-PAL<br><br>**DEFENDANT TWILIO INC.'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT TWILIO INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED SECOND AMENDED COMPLAINTS**<br><br>**Hearing Date:**<br>**Time:**<br>**Department:**<br>**Judge:**  The Honorable Richard F. Boulware, II<br>**Action Filed:** July 9, 2014 |
| BIJAN RAZILOU, ET AL.,<br><br>*Plaintiff,*<br><br>v.<br><br>V THEATER GROUP, LLC, ET AL.,<br><br>*Defendant.* | In consolidation with<br>Case No.: 2:14-cv-01160-RFB-PAL |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................ 1

I.      PLAINTIFF LACKS ARTICLE III STANDING, AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) ........................... 1

    A.      Plaintiff Applies The Wrong Standard to Twilio's Motion To Dismiss .......................... 1

    B.      Plaintiff Fails to Allege Injury ................................................................ 2

    C.      Plaintiff Fails To Plead Twilio Caused Any Alleged Injury ................................ 3

    D.      Plaintiff Fails To Allege Redressability .................................................. 3

II.     PLAINTIFF HAS FAILED TO PLEAD THAT TWILIO "INITIATED" THE TEXT MESSAGES HE ALLEGES HE RECEIVED ................................................................ 4

III.    PLAINTIFF HAS FAILED TO ALLEGE A VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT ................................................................ 8

CONCLUSION ................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................2, 7

*Duarte v. Wells Fargo Bank, N.A.*,
  No. 3:13-cv-00371-RCJ-VPC, 2014 WL 585802 (D. Nev. Feb. 14, 2014) ...................................10

*Foxhall Realty Law Offs., Inc. v. Telecomm. Premium Servs., Ltd.*,
  975 F. Supp. 329 (S.D.N.Y. 1997) ...................................................................................9

*Gennari v. Weichert Co. Realtors*,
  691 A.2d 350 (N.J. 1997) ............................................................................................10

*Goldberg v. Cent. Credit Mgmt., Inc.*,
  2012 WL 6042194 (D. Nev. Dec. 3, 2012) .........................................................................10

*Govereau v. Wellish*,
  No. 2:12-CV-00805-KJD, 2012 WL 5215098 (D. Nev. Oct. 19, 2012) ..........................................9

*Kauffman v. CallFire, Inc.*,
  141 F. Supp. 3d 1044 (S.D. Cal. 2015) ...........................................................................6, 7

*Mallory v. McCarthy & Holthus, LLP*,
  No. 2:14-CV-00396-KJD-VCF, 2015 WL 2185413 (D. Nev. May 11, 2015) ...................................10

*McKenna v. WhisperText*,
  No. 14-cv-424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ....................................................8

*Mendez v. C-Two Group, Inc.*, No. C-13-5914-HSG, Dkt. No. 36 (N.D. Cal. Apr. 21, 2014) .........................................................................................................8

*Morrison v. Quest Diagnostics Inc.*,
  139 F. Supp. 3d 1182 (D. Nev. 2015) ...............................................................................8

*Nevada v. United States*,
  221 F. Supp. 2d 1241 (D. Nev. 2002) ...............................................................................2

*Novak v. United States*,
  795 F.3d 1012 (9th Cir. 2015) .......................................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Payton v. Kale Realty, LLC*,
   164 F. Supp. 3d 1050 (N.D. Ill. 2016) ............................................................................7

*Picus v. Wal-Mart Stores, Inc.*,
   256 F.R.D. 651 (D. Nev. 2009)..................................................................................9, 10

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ..............................................................4

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)....................................................................................................3

*Wash. Envtl. Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .......................................................................................3

**STATUTES**

47 U.S.C. § 227(b)(1)(A) ........................................................................................................4

Fair Debt Collection Practices Act ........................................................................................10

Nev. Rev. Stat. § 41.600 ...................................................................................................9, 10

Nev. Rev. Stat. § 598.0923 ...............................................................................................9, 10

Nevada Deceptive Trade Practices Act (NDTPA)...................................................1, 8, 9, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b) .......................................................................................................1, 2, 7, 9

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,
   CG Docket No. 02-278, Declaratory Ruling, Order, 30 FCC Rcd. 7961 (Jul. 10, 2015)...............5, 6

2011430262_1

**INTRODUCTION**

Plaintiff's opposition to Twilio's Motion to Dismiss simply regurgitates the same failed legal theories Plaintiff advanced in his Second Amended Complaint.  But repetition cannot salvage his case.  This Court should dismiss Plaintiff's claims with prejudice for two independent reasons:  (1)  Plaintiff has failed to plead the injury and causation elements required for Article III standing; (2)  Plaintiff has failed to sufficiently plead that Twilio initiated the text messages at issue.  Either of these failures in Plaintiff's allegations is sufficient to dismiss Plaintiff's TCPA claim.  And Plaintiff has similarly failed to state a claim under the Nevada Deceptive Trade Practices Act because he has not—and indeed cannot—plead "consumer fraud" and economic injury, as is required under the statute.  The Second Amended Complaint must accordingly be dismissed in its entirety with prejudice.

**ARGUMENT**

I.     **PLAINTIFF LACKS ARTICLE III STANDING, AND HIS CLAIMS SHOULD BE DISMISSED UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

A.     **Plaintiff Applies The Wrong Standard to Twilio's Motion To Dismiss**

Rather than engage the substance of Twilio's Article III arguments, Plaintiff attempts to distract this Court by disingenuously asserting an entirely improper standard for assessing Twilio's Rule 12(b)(1) challenge.  Plaintiff's analysis is flawed for two reasons.  *First*, Plaintiff claims that this Court's ruling on the Saxe Defendants' Partial Motion for Summary Judgment forecloses Twiio's arguments regarding Article III standing.  Resp. at 20.  But this argument verges on the absurd.  Not only is this Court's ruling on that Motion inapplicable to Twilio, but also that Motion addressed the Nevada state law claims, not Article III standing.   This Court's summary judgment ruling on Plaintiff's state law claims against the Saxe Defendants is entirely irrelevant to the question whether Plaintiff has alleged facts sufficient to support Article III standing for its claims against Twilio.  Plaintiff's novel theory of estoppel should accordingly be rejected.

1

*Second*, Plaintiff attempts to persuade this Court to apply a summary judgment standard to Twilio's Motion to Dismiss, but doing so would be inappropriate.[1]  Plaintiff states that "there is sufficient evidence in the record to establish a factual dispute on the issue of Plaintiffs' receipt of text messages on their cellular phones constituting actual injuries."  *Id*.  But it would run contrary to years of Supreme Court precedent for this Court to consider record evidence at the motion to dismiss stage.  *See generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  As Plaintiff concedes, Resp. at 20, Twilio's (12)(b)(1) challenge is a *facial challenge* to the adequacy of the Second Amended Complaint; it is not a factual attack on the existence of jurisdiction.  Indeed, Twilio's Motion to Dismiss does not challenge the factual basis for Plaintiff's allegations.  Instead, Twilio plainly asserts that, even if all of the allegations in Plaintiff's Second Amended Complaint are taken as true, Plaintiff has still failed to state facts sufficient to support subject matter jurisdiction.  *See generally* Twilio's Motion to Dismiss the Second Amended Complaint, Dkt. No. 177 at 4–6.  As such, this Court need not—and indeed may not—consider evidence outside of  the four corners of the Second Amended Complaint when deciding the issue.  *Nevada v. United States*, 221 F. Supp. 2d 1241, 1248 (D. Nev. 2002) ("[I]f the challenge is that the complaint fails to state sufficient facts to support subject matter jurisdiction[,] the analysis is similar to a 12(b)(6) motion, whereby the facts in the complaint are assumed to be true.").  Plaintiff's mischaracterization of the standard for a 12(b)(1) facial attack should therefore be ignored.

## B.   Plaintiff Fails to Allege Injury

Plaintiff's Second Amended Complaint does not contain a single allegation of injury, and it should be dismissed for that reason alone. Sec. Am. Compl. ¶¶ 85–112.  Plaintiff suggests that the fact that he pleaded the receipt of a text message is sufficient to satisfy Article III's injury-in-fact requirement, Resp. at 21, but Plaintiff is plainly wrong.  "Article III standing requires a concrete injury

even in the context of a statutory violation," like the ones Plaintiff alleges here. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

Regardless of whether an allegedly unsolicited text message, in general, may have the potential to cause a concrete injury-in-fact, Plaintiff has wholly failed to allege that he actually suffered such an injury. *See id.* at 1548 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized."). In other words, because Plaintiff has not made a *single* allegation that he suffered an actual concrete harm, Plaintiff has not pleaded that he suffered a *particularized* injury, as required by Article III. This failure is fatal to his claim of Article III standing.

### C.   Plaintiff Fails To Plead Twilio Caused Any Alleged Injury

Plaintiff also has not sufficiently pleaded that Twilio caused his alleged injuries, and he thus fails to satisfy the second requirement of Article III. Plaintiff's fractured chain of causation is fatally flawed as it pertains to Twilio because he wholly fails to allege that Twilio sent the texts, clicked the send button, or gave approval to send them. Sec. Am. Compl. ¶¶ 52–69.

Even more fatal to Plaintiff's claims is his failure to plead that Twilio determined the content of the text messages at issue. *Id.* For these reasons, too, Plaintiff has failed to allege facts sufficient to support a causal connection between Twilio and the text messages he allegedly received. *Novak v. United States*, 795 F.3d 1012, 1018–19 (9th Cir. 2015).

### D.   Plaintiff Fails To Allege Redressability

Because Plaintiff has failed to plead both a concrete injury and a causal link between that alleged injury and Twilio's conduct, he necessarily has not satisfied Article III's redressability requirement. For a plaintiff to sufficiently plead redressability, he must show a "connection between the alleged injury and requested judicial relief." *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

Here, Plaintiff requests relief in the form of several declaratory judgments that Twilio violated

2011430262_1

the law, equitable relief enjoining Twilio's allegedly unlawful conduct, and monetary damages.  Sec. Am. Compl. pp. 15–16.  But because Plaintiff has failed to plead that Twilio caused him any cognizable injury, Plaintiff's requested relief cannot remedy his non-existent injuries.  His Second Amended Complaint should accordingly be dismissed for lack of Article III standing.

## II.      PLAINTIFF HAS FAILED TO PLEAD THAT TWILIO "INITIATED" THE TEXT MESSAGES HE ALLEGES HE RECEIVED

Plaintiff inexplicably argues that any party in the business of transmitting calls for others is liable for the actions taken by their subscribers or other third parties who actually initiate the calls.  He concedes that Twilio was involved in the communications at issue for mere "transmission purposes," *id.* ¶ 54, and that the text messages in question were sent "at the direction of Defendant David Saxe and Defendant Saxe Management," *id.* ¶ 46.  Nevertheless, Plaintiff seeks to hold Twilio liable under the TCPA for the Saxe Defendants' communications.  If adopted, Plaintiff's standard for liability would expose every phone carrier in the world to liability for the content of the text messages they transmit or process.  This standard is plainly overbroad and unworkable, and not surprisingly runs directly counter to the TCPA, the FCC's orders, and Ninth Circuit precedent, all of which require that TCPA plaintiffs sufficiently allege "initiation" to satisfy TCPA liability.  Here, Plaintiff has not—and cannot—sufficiently allege that Twilio initiated the texts at issue, and accordingly his Second Amended Complaint should be dismissed with prejudice.

The FCC makes abundantly clear that only the *initiators* of calls or text messages are liable under the TCPA, "not [the party] that transmits the call or messages and that is not the originator or controller of the content of the call of the message."  *See* 47 U.S.C. § 227(b)(1)(A); *Rinky Dink, Inc. v. Elec. Merch. Sys.*, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015).  Plaintiff, in his Response, disingenuously argues that the FCC views "mere involvement in the physical transmission" of communications to be grounds for liability under the TCPA, "even if it is that party's business to broadcast such calls for others."  Resp. at 7.  That assessment is *blatantly wrong.*  Plaintiff improperly

4

misquotes and misconstrues the FCC's 2015 order, which clearly states that a software platform provider "does not make or initiate a text when [its customer] merely uses [the software]" to initiate text messages that the customer or user controls. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, 7978 , ¶ 25 (Jul. 10, 2015) ("*TCPA Declaratory Ruling*").

In the *TCPA Declaratory Ruling*, the FCC weighed the cases of *YouMail*, *TextMe*, and *Glide*, in order to provide clarity behind its rule that mere transmitters of message communications are not call initiators. Indeed, the FCC used that ruling to "clarify who makes a call under the TCPA and is thus liable for any TCPA violations." *Id.* The FCC could not have been more clear in the 2015 ruling when it stated that software applications that exercise "no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what such [message] says," are not subject to TCPA liability. *Id.* at 7981 ¶ 32. Twilio does none of the above and is thus not an "initiator" under the TCPA.

In that same order, the FCC also analyzed the services of YouMail, a platform application provider that was significantly more connected to the transmission of its users' text messages than Twilio is to its customers' communications. But the FCC held that YouMail was *not* an "initiator" of the communications. The Commission ruled that YouMail was not an initiator of messages, and is thus not subject to TCPA liability, even though *YouMail inserted some of its own content* into users' text messages. *Id.* at 7982, ¶ 33. The FCC concluded that even "[c]ontrolling [the] small portion of the content of the [message] was insufficient to change [its] determination that the app user, and not YouMail, [was] the maker of the call." *Id.*

Similarly, the FCC considered the services of TextMe, a platform provider that actually *authored* the text messages that were sent to its users' friends upon the users' download of the service, but only after *the users* took several affirmative steps to approve the transmission, including determining whether to invite all, some, or none of their contacts to receive the messages. *Id.* at 7983,

¶ 34.  Even though the software provider in the *TextMe* case composed the messages that were sent, the FCC nevertheless determined that the application's users were the parties who controlled whether to send the messages, and thus the users—not TextMe—were the "initiators" of the messages.  *Id.* at 7984, ¶ 37.  Like the users in *YouMail* and *TextMe*, users of Twilio's platform services must take numerous steps to determine what, when, and to whom messages are sent.  And unlike those providers, Twilio *does not control any aspect of the content or composition* of its users' texts or calls.  Twilio's role in the causal chain of transmission is even further removed from its user's communications than the software providers in *YouMail* and *TextMe*, which have both been ruled exempt from TCPA liability.

The FCC's 2015 ruling also provided the example of Glide, a service transmitter that the FCC deemed to be an "initiator" because it was "so involved in [the initiation of the messages] to be deemed to have made or initiated them."  *Id.* at 7983, ¶ 35.  However, as the FCC recognized, Glide's connection to the transmitted texts at issue was starkly different from Twilio's current role in message transmission.  Glide automatically sent texts to all of its users' contacts the moment the users downloaded the service, unless the users opted out.  *Id.* at 7982–83, ¶ 34.  In other words, the application's users had to act *to prevent* Glide from automatically sending the mass messages that it composed.  Unlike Glide, Twilio does not compose messages or transmit them without their users' affirmative consent.  Twilio therefore cannot be said to be "so involved" as to be deemed an "initiator."  *Id.* at 7980–84, ¶¶ 30–37; *see also Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. 2015) (evaluating the FCC's examples in holding that a platform service provider was not an initiator).

Plaintiff's Response to Twilio's Motion to Dismiss is like a broken record, as he repeatedly cites to his Complaint to support his broad allegations that Twilio is an "initiator."  For example, he again claims—with no facts sufficient to support his allegations—that Twilio "joined their software and hardware with that of other defendants" to transmit messages, and that Twilio "provided the other

2011430262_1

defendants with customized software code to enable and facilitate" the "text message transmission scheme." Resp. at 9–10. Plaintiff repeatedly contends that Twilio is an "initiator" because it "controlled" the text messages and engaged in "cooperation, knowledge, approval, authorization, ratification, participation, and active support," which were "prerequisites" to the messages being sent to Plaintiff. However, these broad allegations, with no particularized detail, constitute nothing more than "threadbare recitals of the elements of a [TCPA] cause of action," which plainly "do not suffice" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Further, Plaintiff's allegations in his Response contradict his actual pleadings in the Second Amended Complaint—pleadings that make evident that Twilio had no active control over the communications at issue and is thus not liable under the TCPA as a matter of law.

Critically, Plaintiff pleads no factual allegations to suggest that Twilio had any involvement in "selecting the content, timing, and recipients" of the messages, as is required by law to support TCPA liability. *Kauffman*, 141 F. Supp. 3d at 1050. On the contrary, Plaintiff's pleadings admit the reality that Twilio's users control the content, timing, and recipients of the texts they send. Plaintiff admits that it was *the Saxe Defendants* who "authorized, approved, and ratified the telemarketing text message program," and the messages **"could not have occurred without such authorization, approval, and ratification[.]"** Sec. Am. Compl. ¶¶ 49–50 (emphasis added). Indeed, Plaintiff does not deny that Saxe Productions "caused **its devices** to harvest the names, email addresses, and telephone numbers," *Id.* ¶ 54 (emphasis added), and Twilio was only involved "for transmission purposes." *Id.* Clearly it was the Saxe Defendants—the users of Twilio's application tools—who made or initiated the messages at issue. Twilio is therefore not an "initiator" under the TCPA. *Payton v. Kale Realty, LLC*, 164 F. Supp. 3d 1050, 1059–60 (N.D. Ill. 2016) (holding that a TCPA defendant was not liable when it "did not have any role in creating the content of the text message allegedly received by [p]laintiff[]," and required its customers to "specify the telephone numbers to which the message will be

2011430262_1

transmitted"); *see also Mendez v.C-Two Group, Inc.*, No. C-13-5914-HSG, Dkt. No. 36 (N.D. Cal. Apr. 21, 2014) (granting a motion to dismiss where software provider failed to adequately allege initiation); *McKenna v. WhisperText*, No. 14-cv-424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015). Plaintiff attempts to salvage his failed pleadings by throwing a laundry list of accusatory allegations at Twilio. For example, he contends that Twilio is liable because it employed a marketing specialist, offered client support, and "collaborate[d]" with and "provided other material support" to the Saxe Defendants. Resp. at 2. But even if true, these dramatic allegations—stripped of the negative adjectives with which Plaintiff frames them—are not actionable under the TCPA. What Plaintiff attempts to paint as incriminating factual assertions are entirely benign.

Finally, Plaintiff's Response suggests that Twilio had knowledge of the use of its servers for illegal activity, rendering it liable under the TCPA, Resp. at 7, but Plaintiff alleges nothing in his Second Amended Complaint to support this claim. Critically, Plaintiff pleads no facts to connect Twilio to the Saxe Defendants' actions or to show any direct communications between Twilio and the Saxe Defendants at all. For all of these reasons, Plaintiff has not sufficiently alleged that Twilio is an "initiator" within the meaning of the TCPA, and accordingly his TCPA claim should be dismissed in their entirety with prejudice.[2]

## III. PLAINTIFF HAS FAILED TO ALLEGE A VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

Plaintiff's state law claim should be dismissed for two independent reasons: (1) Plaintiff fails to allege "consumer fraud" as required under the statute; and (2) Plaintiff fails to allege that he suffered any injury. In his Response, Plaintiff suggests that the Court's denial of the Saxe Defendants'

---

[2] Plaintiff requests leave to amend his pleadings a *second* time in the event that Twilio's Motion to Dismiss is granted, Resp. at 23, but such leave would be futile and should accordingly be denied. After two failed attempts at pleading facts sufficient to support a theory of liability against Twilio, it is clear that no such facts exist. Plaintiff should therefore be denied a third bite at the apple. *See, e.g.*, *Morrison v. Quest Diagnostics Inc.*, 139 F. Supp. 3d 1182, 1185 (D. Nev. 2015) (dismissing the plaintiff's claims "with prejudice because they could not possibly be cured by amendment").

Partial Motion for Summary Judgment forecloses Twilio's state law arguments, Resp. at 11–12, but the Court's judgment on the Saxe Defendants' Motion is inapplicable to Twilio.  Indeed, regardless of whether Plaintiff's allegations are sufficient to state a claim against the Saxe Defendants under the Nevada Deceptive Trade Practices Act (NDTPA), Plaintiff's allegations with respect to Twilio are plainly insufficient to pass muster under Rule 12(b)(6).

To state a claim under the NDTPA, a plaintiff must prove that he was a victim of an act of consumer fraud by the defendant, and that he suffered actual damage as a result. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).  Here, Plaintiff has not pleaded either of these two elements of an NDTPA claim, and his state law claim should accordingly be dismissed.  *First*, Plaintiff has failed to plead a predicate violation of a statute relating to the sale or lease of goods or services.  The NDTPA provides several definitions of "consumer fraud," but Plaintiff specifically alleges that Defendants violated NRS § 41.600(2)(e) and § 598.0923(3), which define consumer fraud as "violation of a statute or regulation relating to the sale or lease of goods or services."  The TCPA, however, is plainly not a statute relating to the sale or lease of goods or services.  "The TCPA was enacted to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ([f]ax) machines and automatic dialers." *Foxhall Realty Law Offs., Inc. v. Telecomm. Premium Servs., Ltd.*, 975 F. Supp. 329, 330 (S.D.N.Y. 1997).  The TCPA is entirely agnostic on the issue of consumer fraud, and nothing in the plain text of the statute, or subsequent FCC and federal court decisions applying it, have construed it as a mechanism for protecting against fraud in the marketplace.

And Plaintiff's belated argument that the NDTPA should be broadly construed, Resp. at 12–13, has already been foreclosed by this Court's precedent.  Indeed, this Court has made clear that, to avoid "expand[ing] the NDTPA far beyond its intended scope," *Govereau v. Wellish*, No. 2:12-CV-00805-

KJD, 2012 WL 5215098, at *2 (D. Nev. Oct. 19, 2012), Nevada courts apply a narrow construction to the NDTPA to ensure that it does not become a mechanism for litigation that has only a tangential relationship to the sale or lease of goods or services. *See, e.g.*, *Duarte v. Wells Fargo Bank, N.A.*, No. 3:13-cv-00371-RCJ-VPC, 2014 WL 585802, at *4 (D. Nev. Feb. 14, 2014) ("Although the servicing of Plaintiffs' loan is indeed a service itself, [NRS § 598.0923] do[es] not on [its] face apply to acts taken during the provision of goods and services already purchased or leased, but only during the sale of services, i.e., fraud-in-the-inducement-type claims."); *Mallory v. McCarthy & Holthus, LLP*, No. 2:14-CV-00396-KJD-VCF, 2015 WL 2185413, at *3 (D. Nev. May 11, 2015) (holding that the NDTPA does not incorporate the Fair Debt Collection Practices Act through NRS § 598.0923(3) because "debt collection efforts . . . are not a 'sale or lease of goods or services'" but instead constitute an "attempt[] to recover on Plaintiffs' pre-existing debts"). As the case law makes clear, the TCPA is wholly unsuited to serve as a predicate violation for Plaintiff's NDTPA claim, and this Court should dismiss his state law claim on that basis alone.

*Second*, Plaintiff has failed to put forth a single allegation of economic injury to support his NDTPA claim. The plain text of the NDTPA limits Plaintiff's recovery to "damages that [he] has sustained." Nev. Rev. Stat. § 41.600(3)(a) (2016). And this Court has held that a plaintiff must show that the alleged violation of the NDTPA has caused him *actual damages*. *See Picus*, 256 F.R.D. at 658 (listing injury as a required element of an NDTPA claim). Indeed, this court specifically requires allegations of *economic* injury to state a claim under the NDTPA. *See, e.g.*, *Goldberg v. Cent. Credit Mgmt., Inc.*, 2012 WL 6042194, at *4 (D. Nev. Dec. 3, 2012) (holding that the plaintiff did not adequately plead damages under the NDTPA because his "Complaint contain[ed] no factual averments" and instead provided only "legal conclusions" regarding the damages claimed). And other courts have interpreted virtually identical state consumer protection laws to require a showing of *economic* injury before a plaintiff may pursue a cause of action under the statute. *See, e.g.*, *Gennari v. Weichert Co.*

10

*Realtors*, 691 A.2d 350, 369 (N.J. 1997) ("No defendant is liable under the [Consumer Fraud Act] for the purchasers' noneconomic loss or for their emotional distress.").  Here, it is undisputed that Plaintiff has failed to plead a single economic injury, such as service charges or per-message fees related to the text messages he allegedly received.  *See* Section I.B., *supra*.  For this reason, too, Plaintiff's Nevada state law claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Twilio Inc. respectfully request that the Court grant its Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint in its entirety.

Dated:  November 3, 2016                    Respectfully submitted,

                                        /s/  Joel Henriod
                                        **JOEL D. HENRIOD** (SBN 8492)
                                        jhenriod@lrrlaw.com
                                        LEWIS ROCA ROTHGERBER LLP
                                        3993 Howard Hughes Parkway, Suite 600
                                        Las Vegas, Nevada 89169
                                        Telephone:  702.474.2681
                                        Facsimile:  702.216.6190

                                        **Michael B. Hazzard** (pro hac vice)
                                        JONES DAY
                                        51 Louisiana Avenue, N.W.
                                        Washington, DC  20001-2113
                                        Telephone: (202) 879-3829
                                        Facsimile: (202) 626-1700

                                        Counsel for Defendant,
                                        TWILIO INC.

11

2011430262_1

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2016, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on all registered users.

Respectfully submitted,

*/s/      Gabriela Mercado*