EXHIBIT 4

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

DIRECT NUMBER:  (202) 879-5439
MHAZZARD@JONESDAY.COM

October 26, 2016

**BY ELECTRONIC AND US MAIL**

Albert H. Kirby
Sound Justice Law Group, PLLC
946 N 34th St., Ste. 300
Seattle, WA 98103

Re: *Bauman v. Saxe Management LLC, et al.*, Docket No. 2:14-cv-01125 (D. Nev.)

Dear Mr. Kirby:

As we stated in our September 16th telephone conversation, and our subsequent letter to you, dated September 22nd, the Second Amended Complaint filed by you, on behalf of your client, Jeremy Bauman, contains legal contentions and factual allegations that are not warranted by existing law and are directly contradicted by the discovery record in this case. And Plaintiff's Response to Twilio's Motion to Dismiss ("the Response"), which you also filed on behalf of your client, contains these same baseless allegations. Accordingly, your continued advocacy of Plaintiff's TCPA claim against Twilio violates Rule 11 of the Federal Rules of Civil Procedure, and Twilio hereby notifies you of its intent to file a motion for sanctions pursuant to Rule 11 if your client does not dismiss the instant action with prejudice.

Throughout the Second Amended Complaint and the Response, Plaintiff has contradicted the robust discovery record that you built in this case. For example, Plaintiff alleges that Twilio "collaborate[d] with the other defendants (the 'Saxe Defendants') 'to develop, implement, and maintain [a] telemarketing text message program.'" Dkt. #174, ¶ 52; Dkt. #181, at 2. But the deposition of Richard Schaaf, which you took on June 5, 2015—prior to Plaintiff's filing of the Second Amended Complaint—makes clear that Mr. Schaaf had ultimate control over the text message program. (Schaaf Dep. 52).

Plaintiff also alleges that "Twilio joined their software and hardware together [with that of the Saxe Defendants] to create, sort, and send hundreds of thousands of text message advertisements to cellular telephone numbers in an automated manner." Dkt. #174, ¶ 53; Dkt. #181, at 2. But again, Mr. Schaaf's deposition testimony shows that Mr. Schaaf determined what contents went into the script of the text message communications that he sent on behalf of the Saxe Defendants. (Schaaf Dep. 55). In fact, during Mr. Schaaf's deposition, you directly asked him: "Twilio helped you write the script?" and Mr. Schaaf responded: "No." (Schaaf Dep. 54). Critically, Mr. Schaaf

Albert H. Kirby
October 26, 2016
Page 2

noted that part of a script is "downloadable on [Twilio's] Website" but that he did not "recall if it was their website directly or not." (Schaaf Dep. 55). Mr. Schaaf, the user of the API services, took "affirmative steps" to design and send the messages. He testified that he used "Control C, control V" to copy and paste Twilio's portion of the script from a website sample into the script he used. (*Id.*). Moreover, significant portions of Mr. Schaaf's deposition reveal the large extent of his software coding, script design, personal integration, "stripping," "filling," etc. (*See generally* Schaaf Dep. 100-120). It is therefore inconceivable to suggest that there was any direct involvement on Twilio's part; Twilio took no affirmative action whatsoever to join its scripts together with the Saxe Defendants' software and hardware. *See, e.g., Kauffman v. Callfire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015) (holding that an internet-based communication platform cannot be an "initiator" when it "requires its users to take affirmative steps to determine whether, when, and to whom they should send text messages," and its customers have to "create their own telephone contact lists").

Plaintiff's other allegations are similarly baseless. Plaintiff alleges that "Twilio provided other material support to the text message telemarketing program." Dkt. #174, ¶ 57; Dkt. #181, at 2. But this allegation is false. Mr. Schaaf's deposition testimony reveals that Twilio was not at all involved in the selection of recipient phone numbers, assembly of the communication script, or timing of the messages' initiation. Indeed, Mr. Schaaf stated that he did not know much about Twilio or what the company even does. (Schaaf Dep. 53-60). Further, he stated that he had little interaction with Twilio and only spoke to a Twilio representative on one occasion during his time working to design the communications at issue. (Schaaf Dep. 66). Twilio was clearly not "highly involved" in the design or initiation of the messages.

Plaintiff also alleges that "Twilio provided [the Saxe Defendants] with software code tailored for [the Saxe Defendants'] devices to enable and facilitate the automated transmission of telemarketing text messages with the assistance of Twilio." Dkt. #174, ¶ 58; Dkt. #181, at 2. This, too, is directly contradicted by the discovery record in this case. As Mr. Schaaf testified, a "sample script" was available on the Twilio website, and Mr. Schaaf may have copied part of it to use in sending the messages at issue. (Schaaf Dep. 55). But the sample on Twilio's website was in no way tailored to or customized for the Saxe Defendants. (*Id.*). And to the extent that any of the sample script on Twilio's website was even copied by Mr. Schaaf, Mr. Schaaf was responsible for integrating it into the script he ultimately used to send the messages. (*Id.*).

Perhaps most egregiously, Plaintiff alleges that "Twilio controlled when and how each of the telemarketing text messages was delivered to the cellular telephone numbers of their intended recipients." Dkt. #174, ¶ 56; Dkt. #181, at 16. There is absolutely nothing in the factual record to support such a contention, and in fact, Mr. Schaaf's deposition testimony directly undermines this allegation. As Mr. Schaaf unequivocally stated, the Saxe Defendants—not Twilio—determined what phone numbers would be used and who would receive the messages at issue. (Schaaf Dep. 52).

Albert H. Kirby
October 26, 2016
Page 3

These are just a few of the many baseless allegations Plaintiff levies against Twilio in his pleadings. But the inconsistencies between Plaintiff's allegations and the record make clear that there is *no way* that Mr. Schaaf's deposition testimony can be squared with Plaintiff's allegations in the Second Amended Complaint or the Response. The facts available to you in the robust discovery record you have built in this case show without a doubt that Twilio is not liable for the messages at issue, and your continued pursuit of a TCPA claim against Twilio therefore cannot be made in good faith. Yet you have elected to ignore the results of your investigation. This is irresponsible and sanctionable.

Federal Rule of Civil Procedure 11(b)(3) requires an attorney or unrepresented party to certify "the factual contentions [contained in a pleading or motion] have evidentiary support," and Rule 11(c)(1) permits the imposition of sanctions on "any attorney, law firm, or party that violate[s] the rule or is responsible for the violation." The Ninth Circuit, and the District of Nevada, have imposed, and affirmed the imposition of, sanctions where a party, as here, provided knowingly false information in its pleadings. *See, e.g., Bus, Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991) (if a claim "provides false facts, or provides facts that the client should have known were false, then the client should be sanctioned"); *Seare v. St. Rose Dominican Health Found.*, No. 2:10-CV-02190-KJD, 2011 WL 5101972, at *2 (D. Nev. Oct. 25, 2011) (imposing Rule 11 sanctions because an attorney's filing of "an amended complaint based upon knowingly false information violates the provisions of Rule 11 and constitutes bad faith in instituting and conducting litigation").

Against the factual and legal backdrop in this litigation, Twilio plans to file a motion for sanctions pursuant to Rule 11 if your client does not dismiss the instant action with prejudice and correct your Rule 11 violations within the next 21 days. A draft of the motion is attached to this letter. We urge you to discuss these serious issues with your client. In the event that you and your client persist in pursuing Plaintiff's claim against Twilio, we advise you to be prepared to respond to a motion for sanctions and for the likely possibility of being liable to Twilio for its legal fees incurred during this case.

Sincerely,

Michael B. Hazzard
James W. Uthmeier
Kaytlin L. Roholt
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
Mhazzard@jonesday.com

Albert H. Kirby
October 26, 2016
Page 4


cc:     Candice Renka
        *Marquis & Aurbach*
        10001 Park Run Drive
        Las Vegas, NV 89145
        crenka@maclaw.com

        Phillip S. Aurbach
        *Marquis & Aurbach*
        10001 Park Run Drive
        Las Vegas, NV 89145
        paurbach@maclaw.com

        Joel D. Henriod
        *Lewis Roca Rothgerber Christie LLP*
        3993 Howard Hughes Parkway
        Suite 600
        Las Vegas, NV 89169
        jhenriod@lrrc.com

1   Joel D. Henriod (SBN 8492)
     *jhenriod@lrrlaw.com*
2   **LEWIS ROCA ROTHGERBER LLP**
     3993 Howard Hughes Parkway, Suite 600
3   Las Vegas, Nevada 89169
     Telephone:  702.474.2681
4   Facsimile:  702.216.6190

5   Michael B. Hazzard (pro hac vice)
     *mhazzard@jonesday.com*
6   **JONES DAY**
     51 Louisiana Avenue, N.W.
7   Washington, DC  20001-2113
     Telephone: (202) 879-3829
8   Facsimile: (202) 626-1700

9   Attorneys for Defendant
     TWILIO INC.

10

11

12

13

14              **UNITED STATES DISTRICT COURT**
15                   **DISTRICT OF NEVADA**

16
     **JEREMY BAUMAN, ET AL.,**          | **Case No. 2:14-cv-01125-RFB-PAL**
17
                  *Plaintiff,*
18                                        **TWILIO INC.'S MOTION FOR**
          v.                              **SANCTIONS**
19
     **DAVID SAXE, ET AL.,**              **Hearing Date:**
20                                        **Time:**
                  *Defendant.*            **Department:**
21                                        **Judge:** The Honorable Richard F. Boulware, II
22                                        **Action Filed:** July 9, 2014

23   **BIJAN RAZILOU, ET AL.,**           In consolidation with
                                          Case No.: 2:14-cv-01160-RFB-PAL
24                *Plaintiff,*

25        v.

26   **V THEATER GROUP, LLC, ET AL.,**

27                *Defendant.*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<h2 style="text-align:center">I.     INTRODUCTION</h2>

The discovery record in this case contains clear evidence that Twilio is not liable under the Telephone Consumer Protection Act ("TCPA"), and Plaintiff's repeated filing of baseless allegations against Twilio should be sanctioned.  Plaintiff's and his counsel's disregard for the truth of Plaintiff's allegations demonstrate their disregard for Rule 11's requirement that they conduct a reasonable and competent inquiry into the evidentiary support for their factual allegations.

Twilio is a software company that offers its clients the ability to initiate texts and calls to cell phones anywhere in the world via a computer program.  Through its global cloud communications platform, Twilio is changing the way that some of the world's most reputable brands are communicating with third parties and their customers in real time.  Twilio's offerings enable over a million international companies—such as Coca-Cola, Netflix, Uber, Nordstrom, Twitter, The American Red Cross, and airbnb—to communicate with their customers anywhere in the world with a quality experience.  Twilio provides an application program interface ("API"): a set of protocols and tools for building software applications, that enable third-party software developers to create applications of their design to make and receive calls, videos, and text messages.  Twilio only provides its products to a pre-determined group of users—software developers—and not to the general public.  As Twilio's website makes clear, its API offers what are best described as programming "tools," which are not sold in a "ready for use" format.  Rather, Twilio's customers, and their software developers and programmers, must design and implement their individualized computer coding and data to tailor the basic API tools to their specific needs and preferences.  Twilio offers the building blocks for communications, but the third-party developers give their application life.

Despite Twilio's attenuated connection to the communications at issue in this litigation, Twilio has now been forced to defend itself against *two* of Plaintiff's complaints in this matter, both of which were entirely frivolous.  Twilio attempted to resolve this dispute amicably by communicating to

Plaintiff's counsel that the factual record in this case is devoid of any evidence of unlawful conduct by Twilio. Indeed, the discovery record demonstrates Twilio could have no liability to Plaintiff as a matter of law and fact. But Plaintiff's counsel wholly disregarded Rule 11's requirement that they ensure the veracity of Plaintiff's allegations before filing a complaint. Plaintiff was therefore on notice that pursuit of a TCPA claim against Twilio had no basis in law or fact before filing his Second Amended Complaint. Rule 11 sanctions are therefore not only warranted but necessary to deter any further baseless litigation against Twilio in this matter.

## II.    RULE 11(C)(1)(A) STATEMENT

Pursuant to Federal Rule of Civil Procedure 11(c)(1)(A), Twilio served a copy of this motion for Rule 11 sanctions upon counsel for Plaintiff on October 26, 2016. This motion will be filed with the Court if Plaintiff's Amended Complaint is not withdrawn within 21 days.

## III.    FACTUAL BACKGROUND

Plaintiff filed his initial complaint in this action on July 9, 2014. In that complaint, Plaintiff named only the Saxe Defendants[1]; he did not include Twilio as a Defendant. Plaintiff named Twilio as a defendant in his Amended Class Action Complaint ("Amended Complaint") on August 28, 2015, after almost a year of discovery had taken place. (ECF #63). Importantly, the Amended Complaint did not supplement or modify the allegations in Plaintiff's initial complaint to support Plaintiff's new claim of liability against Twilio. Rather, Plaintiff simply added Twilio's name to the list of already named defendants.

In the Amended Complaint, Plaintiff broadly alleged that "defendants sent . . . [an] unsolicited SMS or 'text' message to Plaintiff[.]" And Plaintiff claimed that "defendants made these calls . . . using an automatic telephone dialing system ('ATDS')." However, in light of the legal requirements

---

[1] David Saxe, Saxe Management, LLC, David Saxe Productions, LLC, David Saxe Productions, Inc., V Theater Group, LLC, and Saxe Theater, LLC.

for TCPA liability and the discovery record at Plaintiff's disposal, these allegations against Twilio were entirely unjustified and devoid of any factual basis. Accordingly, On September 6th, 2016, after oral argument on the matter, Judge Boulware, II granted Twilio's motion to dismiss Plaintiff's claims against Twilio, without prejudice. (ECF #171).

On September 16, 2016, counsel for Twilio arranged a call with counsel for Plaintiff to discuss whether Plaintiff planned to file another Amended Complaint against Twilio. Counsel for Twilio reiterated their position that there was no basis for including Twilio as a Defendant in this litigation and that, in light of the factual record, any additional claims against Twilio could only be brought in bad faith. Indeed, the discovery record demonstrated that Twilio could have no liability as a matter of law or fact. Counsel for Plaintiff, however, stated that they had additional "legal theories" under which they intended to pursue their claims against Twilio. They also stated that they had additional documents in their possession that would support their claims against Twilio. Twilio's counsel requested that Plaintiff's counsel share these documents, and Plaintiff's counsel agreed to send them. *See* September 16 Letter, attached as Exhibit A.

On September 20, 2016, Plaintiff filed his Consolidated Second Amended Class Action Complaint, again listing Twilio as a defendant. (ECF #174). On September 21, 2016, a full day *after* Plaintiff filed his Second Amended Complaint, Twilio received the documents from Plaintiff that allegedly supported Plaintiff's claims against Twilio. Twilio reviewed these documents, but found no evidence to support Plaintiff's claims against Twilio in the Second Amended Complaint. On September 22, 2016, Twilio sent Plaintiff a letter confirming its review of the documents, reiterating its position that there was no record evidence to support Plaintiff's claims against Twilio, and urging Plaintiff to seek dismissal of its claims against Twilio. *See* September 22 Letter, attached as Exhibit B. As of the date of this motion, Plaintiff has not withdrawn his baseless allegations against Twilio that

he alleged in the Second Amended Complaint, and in fact, he has doubled down on all of these false allegations in his recently filed Response to Twilio's Motion to Dismiss.

## IV.   LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, (1990).  The Rule is intended to deter baseless filings in district courts, and thus requires that any party making a representation to the court certifies that "the claims, defenses, and other legal contentions therein are warranted by existing law" and that "the allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b).  If a party violates this rule, the court may "impose an appropriate sanction upon the attorneys, law firms, or parties that . . . are responsible for the violation." Fed. R. Civ. P. 11(c)(1).  A sanction imposed for violation of this rule "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated," including "an order directing payment to the movant or part or all of the reasonable attorneys' fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4).

In the context of Rule 11 sanctions, the Ninth Circuit has held that an "attorney has a duty prior to filing a complaint not only to conduct a reasonable factual investigation, but also to perform adequate legal research that confirms whether the theoretical underpinnings of the complaint are warranted by existing law or a good faith argument for an extension, modification or reversal of existing law." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).  When a complaint is at issue in a Rule 11 motion "a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent' inquiry before signing and filing it." *Id.*   Therefore,

"[s]anctions under Rule 11 must be imposed upon litigants and counsel who file baseless papers without first conducting a reasonable and competent inquiry." *See Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1560 (D. Nev. 1997). Plaintiff's and his counsel's behavior violates both prongs of Rule 11, and the Court should grant this motion.

## V.   ARGUMENT

Plaintiff's allegations against Twilio in his Second Amended Complaint are entirely unjustified. Plaintiff's insistence on filing a second baseless complaint against Twilio demonstrates disregard for Rule 11 and supports the imposition of sanctions. Like his First Amended Complaint, Plaintiff's Second Amended Complaint contains allegations against Twilio that directly contradict Plaintiff's counsel's investigation. As Plaintiff is well aware, to state a TCPA claim against Twilio, Plaintiff was required to allege: (1) that Twilio initiated the text messages that Plaintiff received, or had a high degree of involvement in the making of the text; and (2) that Twilio used an Automatic Dialing System ("ATDS"). The record in this case does not support *any* of these requirements of a TCPA claim against Twilio.

*First*, any allegation that Twilio initiated the text messages at issue in this case is entirely unjustified, given the discovery record Plaintiff had at its disposal. The FCC has made abundantly clear that only the initiators of calls or text messages are liable under the TCPA, "not [the party] that transmits the call or messages and that is not the originator or controller of the content of the call of the message." 47 U.S.C. § 227 (b)(1)(A). On June 5, 2015—prior to Plaintiff's filing of the First Amended Complaint—Plaintiff took the deposition of Richard Schaaf, the Internet Marketing Manager for David Saxe Productions, LLC. (*See* ECF #109-3, hereinafter "Schaaf Dep."). This

deposition could have left no doubt in a reasonable person's mind that Twilio is not an initiator as defined by the FCC.[2]

In his deposition, Mr. Schaaf testified that he was responsible for determining what content went into the script of the text message communications that he sent on behalf of Defendant Saxe Productions, LLC—the same text communication that Plaintiff allegedly received. (Schaaf Dep. 55). Mr. Schaaf made clear that Twilio did not help him to draft or design the content of the communications; instead, he stated that the extent of Twilio's involvement was the "sample script" Mr. Schaaf found on the Twilio website. (Schaaf Dep. 66). Mr. Schaaf stated that he had the ultimate control to decide what would be included in the scripts (Schaaf Dep. 60), and he determined what phone numbers would receive the text messages (Schaaf Dep. 52). Indeed, Mr. Schaaf's testimony served only to confirm that Twilio did not "initiate" the text messages. Although Twilio's API gives third party users the instrument through which they can smoothly coordinate communications, Twilio is certainly not controlling, designing, or initiating the texts or calls made by users like Uber, airbnb, or its other customers.

Moreover, even if Plaintiff were to pursue a "transmitter" theory of initiation against Twilio, Mr. Schaaf's deposition also demonstrated that Twilio did not exhibit "a high degree of involvement" in the making of the calls, as is required to support TCPA liability where the defendant is merely a transmitter of communications. *Rinky Dink v. Elec. Merch. Sys.*, Civ. No. 13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015). On the contrary, the deposition testimony revealed evidence that Twilio was *not at all* involved in the selection of recipient phone numbers, assembly of the communication script, or timing of the messages' initiation. Indeed, Mr. Schaaf stated that he did not know much about Twilio nor what the company even does. (Schaaf Dep. 53-60). Further, he stated that he had limited interaction with Twilio and only spoke to a Twilio representative *on one occasion*

---

[2] Relevant excerpts of Mr. Schaaf's deposition are attached to this motion as Exhibit C.

during his time working to design the communications at issue. (Schaaf Dep. 66). Twilio was clearly not "highly involved" in the design or initiation of the messages. Crucially, the Twilio platform must be programmed and enlivened by clients to reach their desired recipients in the preferred time and method. As Twilio made clear to Plaintiff, no construction of the discovery record could plausibly show that Twilio has TCPA liability. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, (rel. Jul. 10, 2015) (hereinafter "*TCPA Declaratory Ruling*"); *Kauffman v. Callfire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. Oct. 7, 2015) (an internet-based communication platform cannot be an "initiator" when it "requires its users to take affirmative steps to determine whether, when, and to whom they should send text messages," and its customers have to "create their own telephone contact lists"); *See* September 22 Letter, attached as Exhibit B.

Plaintiff also has not provided a single factual allegation to support a theory that Twilio was so highly involved in the sending of the texts at issue here that it could be deemed to be an initiator. The FCC has made clear that a software application provider, like Twilio, is not an "initiator" where "the app user determines whether to send the . . . text messages," and the platform provider "*does not control* the recipients, timing, or content" of the messages. *TCPA Declaratory Ruling* at 7978 ¶ 25. In other words, when a provider like Twilio "exercises no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what [the message] says," there is no TCPA liability. *Id.* at 7891 ¶ 32. Here, the only relevant allegation Plaintiff made regarding Twilio in *any* of his pleadings is that Twilio "transmitted nearly 300,000 text messages" and that Twilio "helped by providing some of the code for each of the scripts." Plaintiff's Resp. to Mot. for Partial Summary Judgment, at 4. But during Mr. Schaaf's deposition, counsel for Plaintiff directly asked Mr. Schaaf: "Twilio helped you write the script?" and Mr. Schaaf responded: "No." (Schaaf Dep., 54). In fact, Mr. Schaaf noted that part of a script could be found on Twilio's website but that he did not "recall if it was their website

directly or not." (Schaaf Dep., 55).   Regardless, Mr. Schaaf, the user of the API services, took "affirmative steps" to design and send the messages.  He stated that he used "Control C, control V" to cut and paste Twilio's portion of the script into the script he used.  (*Id.*).  Moreover, significant portions of Mr. Schaaf's deposition reveal the large extent of his software coding, script design, and personal integration. (*See generally* Schaaf Dep., 100-120).  Plaintiff therefore has no basis in law or fact for alleging that Twilio initiated the messages at issue here.

*Second*, Plaintiff did not—and cannot—sufficiently allege that Twilio used an ATDS.  Plainly pleading that an ATDS was used, without more, is insufficient to state a TCPA claim upon which relief can be granted. *See Weisberg v. Stripe, Inc.*, No. 3:16-cv-00584 (N.D. Cal. July 25, 2016), Order Granting Motion to Dismiss (dismissing a complaint that "plainly alleges that the text messages were sent using an ATDS that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator" because plaintiff "has not plausibly alleged that the text messages were sent randomly to him by an ATDS").  Further, courts have noted that factual evidence suggesting that messages have not been sent "en masse to randomly or sequentially generated numbers" defeats insufficiently plain allegations of ATDS use. *Duguid v. Facebook, Inc.*, No. 15-cv-00985-JST, 2016 WL 1169365, *5 (N.D. Cal. Mar. 24, 2016).  Here, not only has Plaintiff failed to sufficiently allege Twilio used an ATDS, but the record makes clear that, to the extent an ATDS was used, it was not used by Twilio.  In Mr. Schaaf's deposition, he testified that, after designing each script for each individual message, he sent them for transmission "one by one by one to Twilio." (Schaaf Dep., 140).  Schaaf's individualized submission of messages for transmission therefore plainly does not constitute the "en masse" or "bulk" communications associated with ATDS.

Plaintiff and his counsel were both well aware of the factual deficiencies in Plaintiff's claims against Twilio before filing the First Amended Complaint, and Twilio's counsel reiterated to Plaintiff's counsel on two occasions that filing a Second Amended Complaint against Twilio could

only be done in bad faith. *See, e.g.*, September 22 Letter, attached as Exhibit B. Further, the most recent documents counsel for Plaintiff sent to Twilio served only to confirm the complete absence of evidentiary support for Plaintiff's claims against Twilio. In fact, these documents directly undermined Plaintiff's counsel's statements during the September 16, 2016 phone call that the documents would support new "legal theories" against Twilio. Plaintiff's and his counsel's knowing disregard for the veracity of the claims alleged against Twilio in the Second Amended Complaint warrant the imposition of Rule 11 Sanctions against both Plaintiff and his attorneys.

Indeed, the Ninth Circuit—and the District of Nevada—have imposed, and affirmed the imposition of, Rule 11 sanctions where a party, as here, filed claims that the party knew to be unsupported by the factual record. *See, e.g., Bus, Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.*, 892 F.2d 802, 811 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991) (if a claim "provides false facts, or provides facts that the client should have known were false, then the client should be sanctioned"); *Seare v. St. Rose Dominican Health Found.*, No. 2:10-CV-02190-KJD, 2011 WL 5101972, at *2 (D. Nev. Oct. 25, 2011) (imposing Rule 11 sanctions because an attorney's filing of "an amended complaint based upon knowingly false information violates the provisions of Rule 11 and constitutes bad faith in instituting and conducting litigation"). Plaintiff's allegations against Twilio are patently unsupportable as a matter of law and are contradicted by the discovery record. As counsel for Twilio warned counsel for Plaintiff, such allegations could only have been presented for an improper purpose. By filing a meritless Second Amended Complaint against Twilio, Plaintiff and his counsel directly undermined Rule 11's requirement that a party ensure his claims are supported by existing law and that his factual contentions have evidentiary support. This Court should accordingly impose appropriate sanctions on Plaintiff and his counsel to remedy their blatant violation of Rule 11.

## VI.    REQUESTED RELIEF

Rule 11 provides that the Court may order "payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" if "warranted for effective deterrence." Fed. R. Civ. P. 11(C)(2). Because Plaintiff's Second Amended Complaint, on its face, itself violates Rule 11, all fees and costs incurred by Twilio in responding to that Second Amended Complaint are a direct result of that violation. This Court may accordingly impose sanctions covering the full cost of Twilio's attorneys' fees and costs incurred in drafting Twilio's Motion to Dismiss the Second Amended Complaint and this motion for sanctions *See Schutts,* 966 F. Supp. at 1560 ("Moreover, under Rule 11, a violation may warrant imposition of fees covering the entire course of the litigation if the complaint was filed in violation of the Rule.")

## VII.    CONCLUSION

For the reasons set forth above, Defendant Twilio Inc. respectfully requests that this Court grant Twilio's motion for Rule 11 sanctions against Plaintiff Jeremy Bauman and his counsel (Albert H. Kirby, Candice Renka, and Phillip S. Aurbach), dismiss Plaintiff's claims against Twilio with prejudice, award Twilio reasonable attorneys' fees and costs incurred in responding to Plaintiff's Second Amended Complaint, and issue whatever additional sanctions this Court deems appropriate.

Dated: October 26, 2016

Respectfully submitted,

*/s/* _____
Joel D. Henriod (SBN 8492)
*jhenriod@lrrlaw.com*
**LEWIS ROCA ROTHGERBER LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone:  702.474.2681
Facsimile:  702.216.6190

Michael B. Hazzard (pro hac vice)
*mhazzard@jonesday.com*
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone: (202) 879-3829

Facsimile: (202) 626-1700

Counsel for Defendant
TWILIO INC.

1

### CERTIFICATE OF SERVICE

2

3      I hereby certify that on this 26th day of October, 2016, I caused the foregoing to be served upon

4  Plaintiff's counsel, Albert H. Kirby, Candice Renka, and Phillip S. Aurbach.

5

6                                     Respectfully submitted,

7

8                                     /s/ _____
                                      Joel D. Henriod (SBN 8492)
9                                     *jhenriod@lrrlaw.com*
                                      **LEWIS ROCA ROTHGERBER** LLP
10                                    3993 Howard Hughes Parkway, Suite 600
                                      Las Vegas, Nevada 89169
11                                    Telephone:  702.474.2681
                                      Facsimile:  702.216.6190

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1