Joel D. Henriod (SBN 8492)
*jhenriod@lrrc.com*
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Telephone:  702.474.2681
Facsimile:  702.216.6190

Michael B. Hazzard (pro hac vice)
*mhazzard@jonesday.com*
**JONES DAY**
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone: (202) 879-3829
Facsimile: (202) 626-1700

*Attorneys for Defendant*
*TWILIO INC.*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY BAUMAN, ET AL.,<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID SAXE, ET AL.,<br><br>*Defendant.* | **Case No. 2:14-cv-01125-RFB-PAL**<br><br>**TWILIO INC.'S REPLY TO PLAINTIFF'S RESPONSE TO TWILIO'S MOTION FOR SANCTIONS**<br><br>In consolidation with<br>Case No.: 2:14-cv-01160-RFB-PAL |
| BIJAN RAZILOU, ET AL.,<br><br>*Plaintiff,*<br><br>v.<br><br>V THEATER GROUP, LLC, ET AL.,<br><br>*Defendant.* | |

100138111_3

1

**I.    INTRODUCTION**

2          In Plaintiff's Response in Opposition to Twilio Inc.'s Motion for Sanctions ("Plaintiff's

3   Response"), Plaintiff Jeremy Bauman ("Plaintiff") and his counsel continue to turn a blind eye to

4   the exculpatory evidence in the record that directly contradicts their baseless allegations.  Reams

5   of documents and the extensive deposition testimony of David Saxe Productions' data

6   programmer—who actually designed the text messages at issue in this case—provide clear

7   evidence that Defendant Twilio Inc. ("Twilio") did not "initiate" text messages and is thus not

8   liable under the TCPA.  Yet rather than confronting the facts, Plaintiff and his counsel merely

9   repeat their baseless pleadings, ignore evidence fatal to their case, and spin conjecture in complete

10  disregard of the truth of their allegations.

11         Plaintiff's Response provides yet another example of Plaintiff's and his counsel's failure

12  to satisfy Rule 11's requirement that they conduct a reasonable inquiry and determine that their

13  allegations are grounded in fact and legally tenable.  Rather than addressing Twilio's arguments,

14  Plaintiff instead pursues wild tangents that are wholly unresponsive.  Further, the exhibits

15  attached to Plaintiff's Response, even if viewed in the light most favorable to Plaintiff, are devoid

16  of any evidence of unlawful conduct by Twilio.

17         The Court should grant Twilio's Motion for Sanctions for three reasons: (1) Plaintiff

18  completely fails to address the exculpatory evidence in the record that absolves Twilio from

19  TCPA liability; (2) Plaintiff's allegations (no matter how often repeated) do not state a claim upon

20  which relief can be granted; and (3) Plaintiff wrongfully attempts to distract from the sanctionable

21  conduct at issue.  Twilio's Motion for Sanctions was appropriate and timely filed.  Twilio has had

22  to expend significant cost and resources to repeatedly defend against Plaintiff's filing of frivolous

23  charges, and Plaintiff's Response further emphasizes the fact that his allegations have been made

24  in bad faith.  Accordingly, Twilio respectfully asks the Court to grant its motion for Rule 11

25  sanctions against Plaintiff's counsel.

26

27

28

1

100138111_3

## II. PLAINTIFF FAILS TO ADDRESS THE EXCULPATORY FACTS THAT SHOW TWILIO WAS NOT INVOLVED IN THE INITIATION OF THE TEXT MESSAGES

Plaintiff's pleadings against Twilio in his First and Second Amended Complaints assert allegations against Twilio that *directly contradict* record evidence from Plaintiff's counsel's investigation.   As Twilio stated in its Motion for Sanctions, the record—as *developed by Plaintiff's counsel* through document and deposition discovery—does not support the TCPA requirements that Plaintiff was required to allege: (1) that Twilio "initiated" the text messages that Plaintiff received; or (2) that Twilio was so involved in controlling the content, timing, and recipients of the messages that it is deemed to be an "initiator."   The TCPA is quite clear that *only* the initiation of text messages is actionable.   *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961 ¶ 29 (Jul. 10, 2015) ("*TCPA 2015 Declaratory Ruling*") ("Congress . . . put the responsibility for compliance with the [TCPA] *directly* on the party that 'makes' or 'initiates' automated and prerecorded message calls.").   Users of platform providers' applications are deemed to be the "initiator" where the platform provider (like Twilio) "exercises no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what [the message] says."   *Id.* at 7981, ¶ 32.   Plaintiff's counsel's insistence on filing a second baseless complaint against Twilio, and their persistence in ignoring the falsity of their pleadings, demonstrate disregard for Rule 11 and support the imposition of sanctions.

In Twilio's Motion for Sanctions, it demonstrated that the discovery record unequivocally shows that Twilio *did not* initiate the text message at issue in this case, a threshold requirement to bring a TCPA claim.   (*See* ECF #183).   Prior to filing a complaint against Twilio, Plaintiff took the deposition of Richard Schaaf ("Mr. Schaaf"), the Internet Marketing Manager for David Saxe Productions, LLC ("Saxe Defendants").   (*See* ECF #109-3, hereinafter "Schaaf Dep.").   The

2

deposition demonstrated that (1) Mr. Schaaf was the individual that was responsible for determining what went into the coding, script,[1] and content of the text message communications that he initiated on behalf of the Saxe Defendants—the same text communications that Plaintiff allegedly received (Schaaf Dep. 55); (2) Mr. Schaaf had the ultimate control to decide what would be included in the scripts (Schaaf Dep. 60); (3) Mr. Schaaf determined what phone numbers would receive the messages (Schaaf Dep. 52); (4) Twilio did not help Mr. Schaaf write the script (Schaaf Dep. 54); and (5) Twilio was not involved in the communications so as to be deemed an initiator.  In his deposition, Mr. Schaaf stated that Twilio provided nothing more than a "sample script" on its website (Schaaf Dep. 66), and that he had limited interaction with Twilio—he did not know much about Twilio nor what the company even does.  (Schaaf Dep. 59-60).

The testimony makes obvious that Twilio neither "initiated" the text messages, as is required for TCPA liability, nor did Twilio take any action that suggests it was so involved in the placing of the calls at issue that it could "be deemed to have initiated" any calls.  *FCC Declaratory Ruling* at ¶ 30.  "Congress . . . put the responsibility for compliance with the law directly on the party that 'makes' or 'initiates'" them, *id.* at ¶ 29, not software companies like Twilio.  Notably, Mr. Schaaf, being an employee of the defendant party that initiated the test messages at issue, would have had every incentive to point the finger at Twilio.  The Saxe Defendants' interests do not align with Twilio's.  Yet Mr. Schaaf's testimony is clear—Twilio was not involved in the initiation of the messages.

Twilio has repeatedly presented Mr. Schaaf's testimony—exculpatory evidence—to Plaintiff's attorneys in the hopes that Plaintiff would voluntarily dismiss his claims against Twilio

---

[1] A "script" is a generic term for a computer program that completes a task.  Relevant here, Mr. Schaaf testified that he designed multiple scripts to meet his needs.  One of the scripts he designed commanded the Saxe Defendants' text messages to be sent to specific telephone numbers gleaned from the Saxe Defendants' customer databases at specific times.  (*See* Schaaf Dep. at 52-54) (explaining how Mr. Schaaf coded the text message script and "manually executed" it by pushing a button).

and focus on the proper party for litigation.  Twilio cited the evidence during its September 16, 2016 call to Plaintiff's counsel, in subsequent letters mailed on September 22 and October 26, 2016, during both of its motions to dismiss the second amended complaint, and again in its Motion for Sanctions.  But Plaintiff and his attorneys have responded in the same manner each time, by completely ignoring the evidence.  Indeed, Plaintiff's attorneys **do not once address nor mention the Schaaf deposition** in their response to Twilio's Motion for Sanctions.  Despite the clear testimony provided by Mr. Schaaf, Plaintiff and his counsel nevertheless repeat unsupported claims that Plaintiff "received several telemarketing text messages that were *sent by Twilio*," (*see* ECF #184 at 2-3) (emphasis added), that "Twilio sent these text message advertisements after it collaborated with other defendants," and that "Twilio joined their software and hardware together [with that of the Saxe Defendants] to create, sort, and send hundreds of thousands of text messages." *Id.*  Further, Plaintiff still claims that the "telemarketing text message program could not have worked without the knowledge, authorization, approval, ratification, participation, and/or active support of Twilio." *Id.*

No matter how many times Plaintiff states these allegations, they remain entirely at odds with the record.  Mr. Schaaf testified that at most he copied some sample computer programming language from Twilio's website, using "Control C, control V," so that he could "copy and paste" it into his program for modification to meet his specific needs.  (*See* Schaaf Dep. 56-57).  Indeed, he stated that any communications he had with Twilio customer support personnel about his use of Twilio's application software or any of his personalized coding, were very limited and attenuated from his composition and initiation of the messages.  Mr. Schaaf testified that he might have spoken with a female Twilio representative "once," but it was limited to a "meet and greet" to discuss where he would "get the sample stuff," and he did not even know her name.  (Schaaf Dep. 65) ("I believe her name started with a C and I'm not sure exactly what that name was").

This is *clearly* not depictive of a controlling relationship that Plaintiff describes, whereby Twilio dictates any or all aspects of the text message. (ECF #184 at 3). Instead, the pages upon pages of Schaaf testimony make evident that Schaaf controlled all aspects of coding—splicing, cutting, stripping, filling in text, among other actions—to create unique message scripts for the Saxe Defendants' advertisements and that he selected the recipients of the messages. (ECF #184 at 115-135).

The Schaaf testimony makes abundantly clear that there is no scenario in which Plaintiff's threadbare allegations could be true. Yet Plaintiff's counsel added Twilio to this lawsuit *after* taking Mr. Schaff's deposition. Accordingly, their failure to acknowledge the exculpatory evidence exemplifies the very behavior that Rule 11 aims to prevent—baseless filings that result from an inadequate investigation and unfairly burden a law-abiding company. Plaintiff's attorneys' disregard for Mr. Schaaf's testimony, and their persistence in pursuing baseless allegations in the face of actual evidence to the contrary, constitute a violation of Rule 11 and should be sanctioned.

## III.   EVEN IN THE LIGHT MOST FAVORABLE TO PLAINTIFF, HIS ALLEGATIONS DO NOT STATE A CLAIM

In addition to Plaintiff's refusal to acknowledge the deposition testimony of Mr. Schaaf, Plaintiff and his counsel have brought repeated claims that fail to state a claim upon which relief can be granted. Plaintiff has not provided a single factual allegation to support a theory that Twilio was so highly involved in the sending of the texts at issue that it could be deemed to be an initiator. In Plaintiff's Response, counsel proffers three documents that he claims will "illuminate the truth" of Plaintiff's claims. *See Declaration of Albert H. Kirby* (ECF #185, Exhs. 1-3). However, these exhibits, taken on their face in the light most favorable to Plaintiff, do not provide even a scintilla of evidence to support a TCPA claim. Exhibits 1 and 2 reveal emails from Twilio customer support personnel to Mr. Schaaf—the same Mr. Schaaf who testified that

he designed the coding and designated the recipients of the message, testimony *that Plaintiff does not once address*.  These emails show only that Twilio has customer service representatives that are "excited to get to know [their customer's] business and how Twilio fits in," (ECF #185-2), and that Twilio's customers are able to use short codes to send their individually tailored text messages by way of several carriers (ECF #185-3).  Nothing in the emails shows that Twilio initiates or exerts control over the communications.  They could prove only that Twilio has a customer service department that wants to be helpful to subscribers.  (ECF #185-1).  For example, Twilio advises Mr. Schaaf that he should not send out more than 150 messages per number, per day, to respect carrier volume limits.  *Id.*  Naturally, Twilio would want to inform its customers on ways to ensure their messages are transmittable.  However, nothing in the exhibits, nor in any of Plaintiff's pleadings, suggests actionable TCPA claims.  Plaintiff does not—and cannot—plead that Twilio tells its customers what to code, when to do it, or to whom the messages should be sent.  As stated above, the FCC has made abundantly clear that only the initiators of calls or text messages are liable under the TCPA, not transmitters or cloud-based dialers that have "some role, however minor, in the causal chain that results in the making of a telephone call."  *Declaratory Ruling* at ¶ 33.

In Plaintiff's Response, he disingenuously makes the argument that Twilio uses an incorrect standard to determine "initiation" that applies only to "common carriers" and not to transmitters generally (*See* ECF #184 at 9).  This is blatantly false.  The TCPA and FCC do not differentiate between transmitters and common carriers.  In fact, neither the TCPA nor the FCC Declaratory Ruling even mention "common carriers."  Rather, the FCC is quite clear that transmitters of communications are *not liable* where an "app user controls the bulk of the message" and the transmitter "does not control the recipients, timing, or content" of the message. *Declaratory Ruling* at ¶ 33.  When the FCC considered the cases of transmitters *TextMe* and

*YouMail* in its 2015 order, it did not label either as "common carriers." And it recognized that these transmitters were not liable under the TCPA because their "app users" determined whether the messages were sent and to whom they were sent. *Declaratory Ruling* at ¶¶ 31-33, 36-37. Likewise, Twilio's "app user" in this case, the Saxe Defendants via Mr. Schaaf, control all aspects of the message. As Twilio stated in its Motion to Dismiss Plaintiff's Second Amended Complaint, the FCC found neither *TextMe* nor *YouMail* to be "initiators" despite the fact that both were much more closely connected to the making of the messages than is Twilio in the present case. (ECF #177).

Plaintiff's persistent attempts to spin conjecture to allege that Twilio "collaborated" with the Saxe Defendants, "transmitted messages," and provided code "for each of the scripts," (ECF #185), clearly amount to the insufficient, implausible claims that Federal Rule 12(b)(6) prohibits. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*; *see also Oaktree Cap. Mgmt., L.P. v.* KPMG, 963 F. Supp. 2d 1064, 1073–74 (D. Nev. 2013). Because Plaintiff and his counsel continue to file claims that they know to be contradicted by the factual record, sanctions should be imposed against them. *Seare v. St. Rose Dominican Health Found.*, No. 2:10-CV-02190-KJD, 2011 WL 5101972, at *2 (D. Nev. Oct. 25, 2011) (imposing Rule 11 sanctions where an attorney acted in "bad faith" and filed an amended complaint based upon knowingly false information).

## IV.   PLAINTIFF WRONGFULLY ATTEMPTS TO DISTRACT FROM THE SANCTIONABLE CONDUCT AT ISSUE

Finally, Plaintiff's and his counsels' conduct is only exacerbated by their attempt to distract from their sanctionable activity. First, Plaintiff devotes a large bulk of his brief to arguing incorrectly that Twilio failed to adequately serve a twenty-one day notice upon Plaintiff of Twilio's intention to file a motion for sanctions. (*Plaintiff's Response*, ECF #184 at 7-9). Plaintiff mistakenly reasons that Twilio did not provide adequate notice because the filed version

of the brief included a citation to an order in a case that was made subsequent to Twilio's service of notice. However, the cases Plaintiff cites do not support the notion that notice must include a "word-for-word version" of the motion to be filed. They state only that a movant must serve a "filing-ready" motion no fewer than 21 days before filing so that the charged party may have an opportunity to withdraw its complaint. *Truesdell v. S. California Permanente Med. Grp.*, 293 F.3d 1146, 1151 (9th Cir. 2002). Further, Plaintiff cites *MetLife Bank, N.A. v. Riley*, No. 3:10-CV-00122-ECR, 2010 WL 4024898, at *3 (D. Nev. Oct. 13, 2010) to support his contention that the noticed motion must be word-for-word identical to the filed version. However, *MetLife* involved a case where a party "filed a Rule 11 sanctions motion that include[ed] a memorandum of points and authorities, supporting declarations and exhibits that defendants did not serve at the outset of the safe harbor period"—in other words, the challenged party was not provided an opportunity to learn what conduct was being challenged. *Id.* at 3. The court concluded that notice must "define precisely the conduct claimed to violate the rule." *Id.* This is universally different from Plaintiff's current arguments.

Nowhere does Rule 11 or Ninth Circuit case law state that a filing-ready motion must be exactly identical to the version later filed. Indeed, such a rule would be unworkable, as motions filed with the court must be dated, and parties are not required to notify opponents of the exact date they intend to file their motion for sanctions. On the contrary, Rule 11 provides only that such a motion for sanctions must not be filed before a challenging party has had 21 days to "withdraw or correct" the challenged "paper, claim, defense, contention, or denial." Fed. R. Civ. P. 11 (c)(2). Twilio needed only to have "define[d] precisely the conduct claimed to violate [Rule 11]" – which it did. *Metlife Bank*, at *3. Here, unlike *Metlife Bank*, Twilio provided adequate service on Plaintiff. Twilio's filed version of its Motion for Sanctions included no new charges, arguments, declarations, or exhibits from that served on Plaintiff's counsel more than twenty-one

days prior.  Twilio merely added a citation to a newly-decided case in order to support *non-changed* arguments that had already been noticed on Plaintiff.

Furthermore, Plaintiff does not in any way argue how this miniscule addition prejudiced him, nor does he claim that notice of the new case cite would have altered his decision not to withdraw the complaint.  Additionally, he sought no additional time to mull over the motion in light of the new citation.  Plaintiff's contention that service was not adequate, presented at the outset of his brief, serves only to distract the court from the actual substance of the motion for sanctions and the disappointing conduct displayed by Plaintiff and his counsel.  They disregarded the record—and the reality that they cannot sufficiently allege a TCPA claim—in the hopes of dragging Twilio through extensive and costly discovery.  Their behavior violates rule 11 and should be sanctioned.

## IV.   CONCLUSION

For the reasons set forth above, Defendant Twilio Inc. respectfully requests that this Court grant Twilio's motion for Rule 11 sanctions against Plaintiff's counsel (Albert H. Kirby, Candice Renka, and Phillip S. Aurbach), dismiss Plaintiff's claims against Twilio with prejudice, award Twilio reasonable attorneys' fees and costs incurred in responding to Plaintiff's Second Amended Complaint, and issue whatever additional sanctions this Court deems appropriate.

Dated:  December 15, 2016                    Respectfully submitted,

Michael B. Hazzard (pro hac vice)            */s/ Joel D. Henriod*
*mhazzard@jonesday.com*                      Joel D. Henriod (SBN 8492)
**JONES DAY**                                *jhenriod@lrrc.com*
51 Louisiana Avenue, N.W.                    **LEWIS ROCA ROTHGERBER CHRISTIE**
Washington, DC  20001-2113                   **LLP**
Telephone: (202) 879-3829                    3993 Howard Hughes Parkway, Suite 600
                                             Las Vegas, Nevada 89169
                                             Telephone:  702.474.2681

*Counsel for Defendant TWILIO INC.*

1

2

## **CERTIFICATE OF SERVICE**

3           I hereby certify that on this 15th day of December, 2016, I caused the foregoing to be

4   electronically filed with the Clerk of Court using the CM/ECF system, causing it to be served on

5   all registered users.

6                                                 */s/ Malani Dale Kotchka-Alanes*

7                                                 An employee of Lewis Roca Rothgerber Christie
                                                  LLP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100138111_3