# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JEREMY BAUMAN, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID SAXE, *et al.*,<br><br>Defendants. | Case No.: 14-cv-01125-RFB-PAL<br><br>**OPINION & ORDER**<br><br>Plaintiffs' Motion to Certify Class (ECF No. 175) and Defendant Twilio's Motion for Sanctions (ECF No. 183) |

## I. INTRODUCTION

Before the Court is a Motion to Certify Class (ECF No. 175) filed by Plaintiffs and a Motion for Sanctions (ECF No. 183) filed by Defendant Twilio. For the reasons discussed below, the Motion to Certify Class is granted in part and denied in part. The Motion for Sanctions is denied.[1]

## II. BACKGROUND

This is a proposed Telephone Consumer Protection Act ("TCPA") class action filed on behalf of individuals who received automated text message advertisements from the Defendants.

---

[1] The Court notes that it had issued a minute order granting in part and denying in part these motions and indicated that written order would issue. (ECF No. 190) The issuance of this written order was delayed as the Court had incorrectly believed that this case had been settled and closed.

Plaintiffs allege that the Saxe Defendants[2] obtained the cellular telephone numbers of Plaintiffs when Plaintiffs reserved seats to shows produced by the Saxe Defendants. The Saxe Defendants then collaborated with Defendant Twilio to "develop, implement, and maintain the telemarketing text message program," which sent hundreds of thousands of unsolicited text messages promoting shows produced by the Saxe Defendants. Plaintiffs allege that the Saxe Defendants harvested names, email addresses, and phone numbers from their customer database and forwarded telephone numbers and telemarketing messages to Defendant Twilio to transmit. Defendant Twilio then stored these numbers and messages, prioritized the sequence of sending text messages, ensured that text messages were not blocked by cellular telephone carriers as telephone marketing spam, and controlled when the telemarketing text messages were delivered.

The named Plaintiffs are two individuals who received unsolicited text message advertisements from the Defendants after making reservations for shows produced by the Saxe Defendants. Plaintiff Razilou alleges that he made a reservation over the phone on December 29, 2013. During that phone call he was asked for his name, address, telephone number, and email address. Upon providing this information, he alleges that he specifically informed the Saxe representative that he did not want to receive "spam" or telemarketing materials. He never picked up his tickets to the Saxe show and never signed any Terms and Conditions or provided written authorization for the Defendants to send him promotional messages. Plaintiff Bauman's wife ordered tickets to a Saxe show over the phone on April 14, 2014. Plaintiff Bauman picked up the tickets at the box office and electronically signed the Saxe Defendants' Terms and Conditions, which include an authorization to send him promotional text messages. Both named Plaintiffs

---

[2] The Saxe Defendants are: David Saxe; David Saxe Productions, Inc.; David Saxe Productions, LLC; Saxe Management, LLC; V Theater Group, LLC; and Saxe Theater, LLC.

allege that they then received multiple telemarketing text messages while they were in Las Vegas in 2014.

Plaintiffs filed their Complaint against the Saxe Defendants in state court on June 12, 2014. (ECF No. 1). The Saxe Defendants removed the case to federal court on July 9, 2014. Id. The Saxe Defendants filed an Answer on August 5, 2014. (ECF No. 11). Judge Leen issued a discovery order bifurcating discovery into class discovery and merits discovery, with class discovery to end upon the filing of a Motion to Certify Class. (ECF No. 34). Plaintiffs filed an Amended Complaint with Jury Demand that included Defendant Twilio on September 1, 2015. (ECF No. 64). On November 30, 2015, Plaintiffs filed a Motion to Certify Class. (ECF No. 108). On September 6, 2016, the Court held a hearing and, among other things, granted Defendant Twilio's Motion to Dismiss without prejudice and took Plaintiffs' Motion to Certify Class under submission. (ECF No. 171). On September 19, 2016, the Court denied Plaintiff's Motion to Certify Class without prejudice, with leave to refile within 7 days after the deadline for filing an Amended Complaint, to allow for possible amendment of the motion based on the Amended Complaint. (ECF No. 173). On September 27, 2016, Plaintiffs refiled their Motion to Certify Class, with no change from the original. (ECF No. 175). Defendant Saxe refiled their original Response on October 4, 2016. (ECF No. 176). Plaintiffs replied on October 11, 2016. (ECF No. 179). Defendant Twilio filed their Motion for Sanctions on November 16, 2016. (ECF No. 183).

**III.  LEGAL STANDARD**

In order to qualify for class certification, the proposed class must meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(a), (b). The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met. See Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th

Cir. 2012), cert. denied, 133 S.Ct. 2361, 707 F.3d 1036 (2013). Although a court should not engage in a trial on the merits at the class certification stage, "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (internal quotation marks and citation omitted). The four threshold requirements under Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The Supreme Court refers to these elements as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997).

Plaintiffs move for class certification as both an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3). Certification is appropriate under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification is appropriate under Rule 23(b)(3) if the court finds that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## IV. DISCUSSION

### A. Class Definition

Plaintiffs propose a class and a subclass. The proposed class definition is: "All past, present, and future customers of a Saxe Defendant who reside in the United States or its territories and whose cellular telephone numbers are or will be in the possession, custody, or control of a Saxe Defendant." The proposed subclass definition is: "All Class Members whose cellular telephone numbers were sent a text message by Defendant which promoted a product, good, or service of a Saxe Defendant." Defendants argue that the proposed class is overly broad because not all class members who fall under the class definition would be able to recover under the TCPA. The Court agrees with the Defendants. In order to prove a violation of the TCPA, Plaintiffs must prove that Defendants called a cellular telephone number, Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). The proposed class definition would include some individuals who never received phone calls or text messages from the Defendants, however. The Court finds that it would be inappropriate to certify a class that includes members who are ineligible to recover under the statute. Therefore, the Court will only certify the class under the definition of the proposed subclass. The class definition will be: "All past, present, and future customers of a Saxe Defendant who reside in the United States or its territories and whose cellular telephone numbers were sent a text message by Defendant which promoted a product, good, or service of a Saxe Defendant."

### B. Subclasses

Rule 23(c)(5) provides that a class may be divided into subclasses "when appropriate." Fed. R. Civ. P. 23(c)(5). Each subclass is treated as a separate class under the rule and therefore

must meet all of the class requirements. Id. Defendants argue that it is inappropriate to certify this class because differing issues of consent weigh against commonality, typicality, and adequacy. Without ruling on the merits of the consent argument or the likelihood that any of these arguments will prevail in this case, the Court finds that dividing the proposed class into subclasses is an appropriate way to resolve the consent issue.

The Court will first divide the class chronologically based on changes that took place in the interpretation of the TCPA during the period in which the Defendants were engaged in the promotional campaign at issue in this case. As the parties note, the FCC issued an order that went into effect on October 16, 2013. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278 (Feb. 15, 2012) ("2012 Report and Order"). For the first time, this order explicitly required prior consent under the TCPA to be given *in writing*. 2012 Report and Order at 9. The statute itself only states that calls will be exempt from the TCPA that were "made with the prior *express* consent of the called party." 47 U.S.C. § 227(b)(1)(A) (emphasis added). Prior to the 2012 FCC order, the Ninth Circuit interpreted the express consent provision to require "[c]onsent that is clearly and unmistakably stated." Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009) (internal citations and quotations omitted). These two standards differ significantly, and it is possible that certain non-written forms of consent may have been upheld before the 2012 FCC order that would not have been valid afterwards. Defendants concede that there were promotional text messages sent between April 2013 and May 2014. This means that there were over six months in which the Defendants were sending promotional text messages before the writing requirement went into effect. Based on the volume of text messages that were sent throughout this campaign, there is potentially a significant subclass of Plaintiffs who received text messages from the

Defendants before October 16, 2013. In order to avoid inconsistencies in the adjudication of this case, the Court will divide the class into subclasses for Plaintiffs who received promotional text messages from the Defendants before and after October 16, 2013.

Defendants also argue that there could be inconsistencies within the class because some class members signed written or electronic releases and some did not. The Court agrees that these divisions within the class pose an issue. Although Plaintiffs argue that none of the class members validly consented to receive promotional text messages from the Defendants, the Court finds that the presence or absence of written consent could be an important factor in deciding whether to grant relief. For example, a class member who received a telemarketing text message from the Defendants after the written consent requirement went into effect and did not sign any form of written or electronic release may be more likely to recover than a class member who did sign a release. Furthermore, the written consent analysis could potentially differ before and after the October 16, 2013 rule went into effect. For example, the 2012 Report and Order requires that written consent must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." 2012 Report and Order at 15. This requirement is not necessarily intuitive from the previous standard that consent must be "clearly and unmistakably stated." It is possible that consent that was authorized as part of a purchase agreement would be valid before October 16, 2013, but not valid afterwards. The Court is not ruling on these issues at this time, but cites them as evidence of potential inconsistencies that should be avoided within the class. Therefore, without ruling on any of the written consent arguments, the Court finds it prudent to further divide the chronological subclasses into subclasses made up of class members who signed some form of physical or electronic release form and class members who did not sign any form of release.

To summarize, the certified class will be divided into four subclasses: (1) class members who received telemarketing text messages from the Defendants before October 16, 2013 and did not sign any form of written or electronic release, (2) class members who received telemarketing text messages from the Defendants before October 16, 2013 and signed some form of written or electronic release, (3) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did not sign any form of written or electronic release, and (4) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did sign some form of written or electronic release. The Court notes that the Plaintiffs currently only have class representatives for the latter two subclasses. Both Plaintiff Bauman and Plaintiff Razilou received text messages after October 16, 2013. Plaintiff Bauman alleges that he signed an electronic release, but Plaintiff Razilou alleges that he did not. Therefore, Plaintiff Bauman can adequately represent the fourth subclass and Plaintiff Razilou can adequately represent the third subclass. Because it is likely that there are class members in existence who could adequately represent the first two subclasses, the Court will grant the Plaintiffs leave to amend to add named Plaintiffs to represent the first two subclasses. See Sueoka v. United States, 101 Fed. Appx. 649, 654 (9th Cir. 2004) ("Because the record demonstrates the existence of numerous persons holding claims typical of subclasses… leave to amend should be granted to add named plaintiffs who are both typical and can adequately represent each of those subclasses").

As there was delay in the issuance of this order due to the Court's misunderstanding that the case had settled and been closed, the Court will set a status conference and expedite further scheduling in this case.

**C. Rule 23(a) Requirements**

   *1. Numerosity*

The numerosity requirement is satisfied when a class is so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Plaintiffs include declarations indicating that based on the discovery they have received up to this point, Defendants sent 292,302 text messages to 120,363 different telephone numbers. They also cite to billing records that demonstrate that "most of these text messages were sent to cellular telephone numbers provided by cellular telephone carriers." Besides arguing that the proposed class is overly broad, which the Court has already addressed, Defendants argue that the inquiry into which text messages were actually sent to cellular telephone numbers and who each number belongs to is overly fact-intensive, making the class too difficult to ascertain. This argument fails, however, because the Ninth Circuit has explicitly rejected the requirement that plaintiffs provide an administratively feasible way to identify all class members at the class certification phase. Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1123 (9th Cir. 2017). The Ninth Circuit noted that defendants can still challenge individual class members when they file claims for damages, but that such a requirement is not necessary at this early stage in the proceedings. Id. at 1132. The class discovery indicates that hundreds of thousands of promotional text messages were sent by the Defendants. Even if only a fraction of these were sent to cellular telephone numbers, each subclass is likely to be so numerous that joinder of all members would be impractical. The Court therefore finds that Plaintiffs have satisfied the numerosity requirement.

### 2. *Commonality*

The Ninth Circuit has explained that the commonality requirement is to be construed permissively. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with

disparate legal remedies within the class." Id. Once the class is narrowed to those members who actually received text messages from the Defendants, there are common questions of law and fact for all members of each subclass. These include whether the Plaintiffs consented to receive the text messages, whether the Defendants used an automated telephone dialing system to send their text messages, and whether the text messages constitute telemarking. Therefore, the requirement of commonality is satisfied.

### 3. *Typicality*

Defendants' arguments regarding typicality center on the written consent issues discussed above. Once the class is divided into appropriate subclasses, these issues are resolved. The Court is not persuaded by the Saxe Defendants' argument that Plaintiff Razilou is not typical of the class because he erased text messages and no longer owns the phone the Defendants sent text messages to. Defendants' evidence of foul play is highly circumstantial. Furthermore, it is likely that many class members no longer have access to the text messages or cellular telephones by which the Defendants contacted them. This does not bar these class members from recovering, as long as they can prove their TCPA violation by other means. The Court finds that the Plaintiffs have satisfied the typicality requirement for the third and fourth subclasses.

### 4. *Adequacy*

The adequacy analysis mirrors the typicality analysis in many ways. The Court finds that dividing the class into subclasses resolves the adequacy issues, and the Plaintiffs have leave to amend to add adequate class representatives for the first two subclasses. The Court is unconvinced by Defendants' arguments that Plaintiff Raziluou is an inadequate class representative. Therefore, the Court finds that Plaintiffs have met the adequacy requirement, pending the addition of class representatives for the first two subclasses.

**D. Rule 23(b)(2) Requirements**

An equitable relief class under Rule 23(b)(2) is properly certified "when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory relief against the defendant." Dukes, 564 U.S. at 360. The injunctive relief sought in this case, that Defendants stop sending illegal telemarketing text messages, would be the same for all class members.

Defendants make two arguments why the class should not be certified under Rule 23(b)(2). First, they argue that Plaintiffs primarily seek monetary damages and not injunctive relief. They cite to Dukes, in which the Court stated, "To be certified under Rule 23(b)(2) … a class must seek only monetary damages that are not 'superior [in] strength, influence, or authority' to injunctive and declaratory relief." Id. at 347-48. (internal citations and quotations omitted). However, in Dukes the Court was referring to the plaintiffs' request to certify claims for back pay (an equitable remedy) under Rule 23(b)(2), rather than Rule 23(b)(3). Id. The Court's analysis focused on the fact that Rule 23(b)(2) does not provide the same procedural protections as Rule 23(b)(3). Id. at 361-62. That analysis is not relevant here, as Plaintiffs argue that they meet the requirements for class certification under both Rule 23(b)(2) and (3). Second, Defendants argue that the text messaging marketing program ended in 2014, making the risk of future harm negligible. However, "it is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (internal quotations and citations omitted). The Court finds that if the Plaintiffs prevail in proving that the Defendants' text messaging program violated the TCPA, it may be appropriate to enter an injunction prohibiting

future similar practices, regardless of the fact that Defendants are not actively continuing the text messaging campaign at this time. Therefore, the Court will certify the class under Rule 23(b)(2).

### E. Rule 23(b)(3) Requirements

#### 1. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. v. Windsor, 521 U.S. 591, 623 (1997). Defendants essentially rehash their ascertainability argument in asserting that individual factual inquiries predominate over common questions of law or fact in this case. As discussed above, the Court does not find this argument to be compelling. The Court finds that common questions of law and fact will substantially predominate in this case, particularly once the class has been divided into subclasses. Furthermore, the fact that the TCPA provides for statutory damages resolves any differing questions of causation or damages between the class members, providing further support for the predominance of common questions. The Court finds that the subclasses are sufficiently cohesive to satisfy the predominance requirement of Rule 23(b)(3).

#### 2. *Superiority*

The Court also finds that the Plaintiffs have met the superiority requirement of Rule 23(b)(3). This case involves thousands of potential class members, each of whom was subjected to a similar text messaging program by the Defendants, who would only have a $500 incentive to file a claim against the Defendants individually. The Court has divided the class into subclasses that each entail potentially differing legal theories. It is much more efficient to answer these legal questions in broad strokes than to require class members to argue these claims individually. Plaintiffs have

received through discovery what they allege to be Defendant Twilio's transmission and accounting records that aggregate all of the text messages sent on behalf of Defendant Saxe. This evidence will likely be necessary to adjudicate each potential class member's claim, making it more efficient to analyze the evidentiary issues *en masse*. Furthermore, there are no manageability issues that make it overly difficult for this case to proceed as a class action. The Court finds that the Plaintiffs have met the requirements of Rule 23(b)(3) as it relates to each subclass and will certify the subclasses under both Rule 23(b)(2) and Rule 23(b)(3).

### F. NDTPA Claims

Defendants argue that certification is improper as to the NDTPA claims because they present predominating individual issues of causation. The Court agrees with the Defendants on this issue. The NDTPA provides, "An action may be brought by any person who is a victim of consumer fraud." NRS 41.600. It allows prevailing claimants to recover "[a]ny damages that the claimant has sustained." Id. Unlike the TCPA, which provides statutory damages that can easily be adjudicated on a class-wide basis, the NDTPA requires Plaintiffs to prove their damages. The Court finds it likely that these individual causation questions would predominate over any common questions under the NDTPA and denies class certification as to the NDTPA claims.

### G. Rule 11 Sanctions

Defendant Twilio filed a Motion for Sanctions against the Plaintiffs (ECF No. 183), arguing that they should be sanctioned under Rule 11 because the allegations against Defendant Twilio are "entirely unjustified and devoid of any factual basis." Rule 11 allows a court to impose sanctions against a party or attorney that presents a pleading or written motion that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11. Defendant Twilio argues that the

claims against it are frivolous because "[t]he FCC has made abundantly clear that only the initiators of calls or text messages are liable under the TCPA, 'not [the party] that transmits the call or messages and that is not the originator or controller of the content of the call of the message.' 47 U.S.C. § 227 (b)(1)(A)." Defendant Twilio refers to an FCC Declaratory Ruling and Order, <u>Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (Jul. 10, 2015), that it argues proves there is no way it could be held liable under the TCPA.

The order Defendant Twilio refers to is not as clear on this issue as Defendant makes it out to be, however. In it, the FCC reiterates that the term "initiate" is not defined in the TCPA and applies a totality of the circumstances approach to determining who initiated a call for purposes of the TCPA. Importantly, the FCC notes that various factors, including "the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients, can be relevant in determining liability for TCPA violations." <u>Id.</u> at 7980. Plaintiffs allege that Defendant Twilio offered a similar functionality to the Saxe Defendants in this case by preventing cellular telephone providers from blocking the text messages as spam. Based on the fact that this legal question is still a developing area of law, the Court finds that the Plaintiffs had a non-frivolous basis for bringing these claims against Defendant Twilio and denies the Motion for Sanctions.

**V.     CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Certify Class (ECF No. 175) is GRANTED in part and DENIED in part. The class is certified under Rules 23(b)(2) and (3) under the following limited definition only: "All past, present, and future customers of a Saxe

Defendant who reside in the United States or its territories and whose cellular telephone numbers were sent a text message by Defendant which promoted a product, good, or service of a Saxe Defendant."

**IT IS FURTHER ORDERED** that the class will be divided into four subclasses: (1) class members who received telemarketing text messages from the Defendants before October 16, 2013 and did not sign any form of written or electronic release, (2) class members who received telemarketing text messages from the Defendants before October 16, 2013 and signed some form of written or electronic release, (3) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did not sign any form of written or electronic release, and (4) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did sign some form of written or electronic release.

**IT IS FURTHER ORDERED** that Plaintiff's request to certify the class under the NDTPA is DENIED.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend within 45 days to add class representatives for the subclasses of members who received text messages from the Defendants before October 16, 2013.

**IT IS FURTHER ORDERED** that Defendant Twilio's Motion for Sanctions (ECF No. 183) is DENIED.

**IT IS FURTHER ORDERED** that a status conference is set in this case is set for **January 16, 2019 at 2:00 p.m.** in LV Courtroom 7C.

**DATED**: January 10, 2019.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**