1
DENNIS L. KENNEDY
Nevada Bar No. 1462
2
PAUL C. WILLIAMS
Nevada Bar No. 12524
3
**BAILEY❖KENNEDY**
8984 Spanish Ridge Avenue
4
Las Vegas, Nevada 89148-1302
Telephone: 702.562.8820
5
Facsimile: 702.562.8821
DKennedy@BaileyKennedy.com
6
PWilliams@BaileyKennedy.com

7
[Additional Attorneys on Signature Page]

8
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
9
DISTRICT OF NEVADA

10
JEREMY BAUMAN, individually and on
behalf of all persons similarly situated,
11

Plaintiffs,
12

13
v.

14
DAVID SAXE; SAXE MANAGEMENT,
LLC; DAVID SAXE PRODUCTIONS,
15
LLC; DAVID SAXE PRODUCTION,
INC.; V THEATER GROUP, LLC; SAXE
16
THEATER, LLC; and TWILIO, INC.,

17
Defendants

18

BIJAN RAZILOU, individually and on
19
behalf of all persons similarly situated,

20
Plaintiffs,

21
v.

22
V THEATER GROUP, LLC; DAVID
SAXE PRODUCTIONS, INC.; DAVID
23
SAXE PRODUCTIONS, LLC; SAXE
MANAGEMENT, LLC; DAVID SAXE;
24
SAXE THEATER, LLC; and TWILIO,
INC.,
25

26
Defendants.

27

28

Case No.: 2:14-cv-01125-RFB-BNW

**PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT**

In consolidation with

Case No.: 2:14-cv-01160-RFB-BNW

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................................1

II.  SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT ...................................2

    A.  Relevant Procedural History ........................................................................................2

    B.  Terms of the Proposed Settlement ...............................................................................4

        1.  The Proposed Settlement Class...........................................................................4

        2.  The Settlement Relief .........................................................................................5

    C.  Notice to the Class of the Settlement ...........................................................................7

        1.  Email Notice .......................................................................................................7

        2.  Postcard Notice ..................................................................................................7

        3.  Web Posting........................................................................................................7

    D.  Submission of Exclusion Requests or Objections .........................................................8

        1.  Not a Single Person Objected to the Settlement ................................................8

        2.  Only Two People Sought Exclusion From the Settlement .................................9

    E.  Scope of Release ........................................................................................................10

    F.  Named Plaintiffs' Application for Incentive Award....................................................10

    G.  Class Counsels' Application for Attorneys' Fees and Expenses ................................10

III.  LEGAL ANALYSIS............................................................................................................10

    A.  The Court Should Approve the Settlement as Fair, Reasonable, and Adequate....................10

        1.  The Strength of Plaintiff's Case .......................................................................12

        2.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation ..............12

        3.  The Risk of Maintaining Class Action Status Throughout the Trial ..........................14

        4.  The Amount Offered in Settlement ..................................................................14

        5.  The Extent of Discovery Completed and the Stage of the Proceedings ......................15

        6.  The Experience and Views of Counsel.............................................................16

        7.  The Presence of a Governmental Participant ...................................................16

i

8.   The Reaction of Class Members to the Proposed Settlement ........................................ 16

B.   The Court-Ordered Notice Program Meets Due Process Standards and Has Been Fully

Implemented ...................................................................................................... 17

C.   Class Certification is Appropriate for Settlement Purposes ...................................... 18

IV.   CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**CASES**

*Aarons v. BMW of North America, LLC*, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) ......................... 16

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................................ 18

*Browne v. American Honda Motor Co., Inc.*, 2010 WL 9499072 (C.D. Cal. July 29, 2010)................... 14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)........................................... 10, 11

*Gribble v. Cool Transports Inc.*, No. CV 06-04863, 2008 WL 5281665 (C.D. Cal. 2008)...................... 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................ 10, 16, 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................. 10, 11, 15

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,

  688 F.2d 615 (9th Cir. 1982) ............................................................................... 10, 14

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).................................................................. 17

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................................................ 10

**OTHER AUTHORITIES**

4 Newberg § 11.41 .......................................................................................................... 11

## I.      INTRODUCTION

On February 6, 2020, this Court entered an order preliminarily approving the parties' class action settlement, conditionally certifying a settlement class, approving the notice plan, and scheduling a final approval hearing. (ECF No. 238.) Plaintiffs now seek an order finally approving the class action settlement and certifying the settlement class, which consists of "[a]ll persons and entities to whom Defendants attempted transmission of one or more text messages, between and including April 1, 2013, to May 31, 2014, to a telephone number assigned to a cell phone at the time of transmission." (*Id.*)   Excluded from the Class are Defendants, any entity that has a controlling interest in Defendants, and Defendants' current or former directors, officers, counsel, and their immediate families, and all persons who validly exclude themselves or opt out of the Settlement Class. (*Id.*)

The Court should finally approve the Settlement because it provides substantial benefits to the Class and is fair, reasonable, and adequate—as evidenced by the fact that, out of a total 108,798 Class Members, two opted out and **none** objected. Specifically, the Settlement includes the following benefits, among others:

- **Up to $21,757,424 in Ticket Compensation.** Without having to make a claim, class members will be given two tickets to their choice of shows that are produced or otherwise put on by a Saxe Defendant or its successor at the V Theater or Saxe Theater. Tickets to shows at these theaters currently range from $35.00 to $99.99; thus, the total Ticket Compensation to be sent to the 108,798 class members has a retail value of $7,615,860 to $21,757,424.

- **At least $4,000,000 of insurance with Injunctive Relief.** An injunction will bar Saxe Defendants from sending automated text messages without obtaining a written opinion from an attorney that the texting complies with the TCPA. The injunction also will require that the attorney have $4 million in legal malpractice insurance. A malpractice claim related to such an opinion would be a potential $4 million asset which from which consumers might recover damages if a Saxe Defendant violates the TCPA in the future.

- **An $800,000 Cash Fund.** The proposed Settlement provides $800,000 to pay for Settlement Administration and service awards for the two class representatives, with the remainder reserved to reimburse Class Counsel for the attorneys' fees and costs advanced by them over the past six years of litigating this action.

(*See* ECF No. 224.)

The Settlement is particularly favorable given the substantial risk that, if this case were to proceed to trial, Plaintiffs might not prevail on their liability claims, and given the likelihood that an appeal would follow regardless of the outcome at trial. Accordingly, the Court should grant final approval of the Settlement and certify the Settlement Class for settlement purposes.

## II.   SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT

### A.   Relevant Procedural History

Plaintiffs allege that Defendants sent uninvited text messages to cellular phone numbers using an automatic telephone dialing system without the recipient's prior express consent. (*See generally*, ECF No. 174 ("Compl.")). Plaintiff Bauman initiated this action by filing a complaint against the Saxe Defendants in state court on June 12, 2014. (ECF No. 1). The Saxe Defendants removed the case to federal court on July 9, 2014. *Id.* The Saxe Defendants filed an Answer on August 5, 2014. (ECF No. 11). On August 25, 2014, the Court consolidated the complaint of Plaintiff Bauman with the subsequently filed complaint of Plaintiff Razilou. (ECF No. 17.) Plaintiffs then filed motions to strike affirmative defenses alleged in an answer filed by the Saxe Defendants. (ECF Nos. 18, 19.) These motions were mooted when the Saxe Defendants filed amended answers. (ECF Nos. 37, 38.) Magistrate Judge Leen issued a discovery order bifurcating discovery into class discovery and merits discovery, with class discovery to end upon the filing of a Motion to Certify Class. (ECF Nos. 34, 35.) Plaintiffs subsequently served two sets of interrogatories and requests for production on each of the Saxe Defendants and responded to interrogatories and requests for production served by Defendants. Plaintiffs also served Twilio, Inc., then a third-party, with a subpoena for production of documents. (*See* ECF No. 100, ¶ 6, Ex. 5.) Plaintiffs applied to the Northern District of California to compel Twilio to comply with the subpoena, obtaining productions after hearings before the Honorable Jacqueline Scott Corley, Magistrate Judge. (*See Bauman v. V Theater Group, LLC*, Case No. 3:2:15-mc-80102-JSC (N.D. Cal.);

*and* ECF No. 100, ¶ 14 & Ex. 13.) Plaintiffs then took depositions of two key witnesses of the Saxe Defendants on June 4-5, 2015. (*See* ECF Nos. 109-3, 109-4.) The Saxe Defendants and Plaintiffs followed these first depositions with a full day of mediation before Judge Pate (ret.) of JAMS on June 25, 2015. (ECF No. 225.)

The mediation with Judge Pate (ret.) was unsuccessful. Plaintiffs then filed motions for leave to file amended complaints naming additional defendants, including Twilio, based upon information obtained through written discovery and depositions. (*See* ECF Nos. 59, 60.) After the Court granted these motions, Plaintiffs filed amended complaints on August 28, 2015 and September. 1, 2015. (ECF Nos. 63, 64). Meanwhile, Defendants also took the depositions of the named Plaintiffs in Seattle, Washington. (*See* ECF Nos. 106-3, 106-4.)

On October 15, 2015, Twilio filed a motion to dismiss. (ECF No. 81.) On October 30, 2015, the Saxe Defendants filed a motion to compel discovery and a motion for a protective order. (ECF Nos. 89, 90.) On November 20, 2015, the Saxe Defendants then filed a motion to stay proceedings and a motion for partial summary judgment on Plaintiffs' claims under state law. (ECF Nos. 104, 105.) On November 30, 2015, Plaintiffs filed a Motion to Certify Class. (ECF No. 108.)

In a minute order issued in a hearing on December 8, 2015 and with a subsequent order on January 27, 2016, Magistrate Judge Leen granted in part and denied in part the Saxe Defendants' discovery motions and denied the motion to stay. (ECF Nos. 127, 147.) On September 6, 2016, the Court held a hearing and, among other things, granted Defendant Twilio's Motion to Dismiss without prejudice and took Plaintiffs' Motion for Class Certification under submission. (ECF No. 171.) On September 19, 2016, the Court denied Plaintiff's Motion for Class Certification without prejudice, and granted leave to refile the motion within seven days after the deadline for filing an amended complaint, to allow for possible amendment of the motion based on any new allegations in the amended complaint. (ECF No. 173.)

On September 20, 2016, Plaintiffs filed their Consolidated Second Amended Class Action Complaints, which contain the claims currently at issue. (ECF No. 174.) On September 27, 2016, Plaintiffs refiled their Motion for Class Certification. (ECF No. 175.) Defendant Twilio filed another motion to dismiss on October 5, 2016. (ECF No. 177.) Defendant Twilio filed a Motion

for Sanctions on November 16, 2016. (ECF No. 183.) After a hearing, the Court issued a minute order granting Plaintiffs' class certification motion, denied Twilio's motion for sanctions, and stated that a written order would follow. (ECF No. 190.) On January 10, 2019, the Court issued the written order. (ECF No. 193.) In its order, the Court certified a class with four subclasses. (ECF No. 193, at 13:25-14:13.)

On February 19, 2019, the Court issued an order denying Twilio's motion to dismiss Plaintiffs' TCPA claims but granting dismissal of their state law claims. (ECF No. 199.) On February 22, 2019, the Court issued an order staying the case to permit another mediation. (ECF No. 202.) On May 15, 2019, the Parties participated in an approximately 12-hour mediation in Philadelphia, Pennsylvania before the Hon. Diane M. Welsh (ret.), at which they achieved agreements concerning the material terms of the proposed Settlement that are now formally set forth in the Agreement. (ECF No. 205.)

On October 28, 2019, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 224.) On February 25, 2020 the Court held a hearing on Plaintiffs' motion and on February 26, 2020 the Court entered an Order Conditionally Certifying a Settlement Class, Preliminarily Approving Class Action Settlement, Approving Notice Plan, and Scheduling Final Approval Hearing. (ECF No. 238.)

**B.    Terms of the Proposed Settlement**

1.    The Proposed Settlement Class

The Class is defined as "[a]ll persons and entities to whom Defendants attempted transmission of one or more text messages, between and including April 1, 2013, to May 31, 2014, to a telephone number assigned to a cell phone at the time of transmission." (ECF No. 238.) Excluded from the Class are Defendants, any entity that has a controlling interest in Defendants, and Defendants' current or former directors, officers, counsel, and their immediate families, and all persons who validly exclude themselves or opt out of the Settlement Class. (*Id.*) The Class includes approximately 108,798 individuals. (ECF No. 240, Giannotti Decl. ¶ 5.)

1

2.     The Settlement Relief

2

Under the Settlement, each class member will receive two tickets provided by Saxe

3

Defendants to any show at the V Theater or Saxe Theater that they or their successor in interest

4

produce or otherwise put on ("Ticket Compensation"). (Agr. §§ 1.21 & 2.01.) Each class member

5

benefits from an injunction which includes a $4 million insurance coverage requirement if Saxe

6

Defendants engage in further automated text messaging. (*See id.* § 2.02.) Additionally, class

7

members also benefit from $800,000 (the "Cash Fund") for reimbursements related to the services

8

and expenditures on their behalf. (*See id.* §§ 1.02 & 2.04.)

9

a.     *Up to $21,757,424 in Ticket Compensation*

10

Class members were not required to submit or otherwise make a claim form to obtain

11

Ticket Compensation. (*Id.* § 2.01.) Rather, Ticket Compensation was furnished to each class

12

member through a Ticket Code, which was included in each Email Notice and Postcard Notice

13

sent by the Settlement Administrator together with instructions on how to contact Defendants to

14

use the Ticket Code to confirm ticketed attendance at a Saxe show. (*Id.*; see also ECF No. 240

15

("Giannotti Decl.") at ¶¶6-12.) Defendants have made reasonable efforts to refer class members

16

to the Settlement Website for information about the Ticket Compensation Date if class members

17

attempted to use the Ticket Codes prior to the Ticket Compensation Date. (Agr. §201.) Ticket

18

Codes will be valid for a period of four years that begins on the Ticket Compensation Date

19

("Ticket Period"). (*Id.*) Ticket Codes will be freely transferrable, but they may not be sold. (*Id.*)

20

In the event a Ticket Code is sold in violation of this provision, Defendants are entitled (but are

21

under no obligation) to invalidate that Ticket Code, without providing further relief. (*Id.*)

22

There are 108,798 Class Cellphone Numbers which have been identified as belonging to

23

class members. *See supra.* With each class member provided two tickets, a total of 217,456 Ticket

24

Codes will be distributed. The current retail prices for Saxe shows a range from about $35 to

25

$99.99 apiece. (*See* ECF No. 225, ¶ 5.) Accordingly, the total Ticket Compensation to be sent to

26

class members represents a current value of $7,615,860 to $21,757,424.

27

28

1

           b.       *Injunctive Relief with $4,000,000 Insurance Coverage Requirement*

2

All class members together with the general public will benefit from the injunctive relief.

3

(*See* Agr. at § 2.02.) In substance, this injunction will obligate Defendants not to send automated

4

text messages without first obtaining a written opinion from an attorney that the planned texting

5

activity complies with the TCPA. (*Id*.) As part of retaining an attorney to provide this opinion,

6

Defendants will have to obtain proof that the attorney is insured under a legal malpractice

7

insurance policy with coverage limits of no less than $4 million per occurrence. (*Id*.) This

8

insurance coverage requirement provides a potential pecuniary asset from which class members

9

and other consumers might recover monetary damages if a Saxe Defendant sends future

10

automated text messages that violate the TCPA.

11

           c.     *Cash Fund of $800,000*

12

Separate and apart from any benefits to the Class, the Settlement also establishes a "Cash

13

Fund" of $800,000 for the payment of the costs of Settlement Administration, attorneys' fees and

14

expenses to Class Counsel, and Service Awards to Plaintiffs. (*Id.* § 1.02.) To the extent the total

15

amount of payments required to pay attorneys' fees and expenses to Class Counsel, Service

16

Awards, expenses of Settlement Administration, and Class Notice and CAFA Notice exceed the

17

Cash Fund, Defendants will be contributing only the amount described above regardless of the

18

final total amount of such payments. (*Id*.) Payment of attorneys' fees, costs, and expenses is

19

limited to the amount remaining in the Cash Fund after payment of Settlement Administration

20

expenses and Service Awards. (*Id.* § 2.04.)

21

           d.     *Additional Benefits to Class Members Not Expressly Enumerated*

22

                *in the Settlement*

23

Class Members (and non-Class Members alike) also benefit from the Settlement because

24

the Settlement will serve as a deterrent to future violations of the TCPA. *See Lo v. Oxnard*

25

*European Motors, LLC,* 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012); *Malta*, *supra*, 2013

26

WL 444619.

27

28

1

2
3
4

**C.     Notice to the Class of the Settlement**

The Settlement Administrator provided notice of the provisional class certification and proposed settlement to Settlement Class Members by email, postcard, and posting on the Settlement Website. (Giannotti Decl. ¶¶ 6-14; Agr. at § 3.03.)

5

**1.     Email Notice**

6
7
8
9
10
11

On March 24, 2020, the Settlement Administrator provided Class Notice by email to Settlement Class Members' email addresses as they appear in Defendants' records.  (Giannotti Decl. ¶ 6; Agr. at § 3.03.01.)  The Email Notice was successfully delivered to 82,038 Settlement Class Members out of the total 85,728 Settlement Class Members for whom the Settlement Administrator validated an email address.  (*Id*. at ¶ 7.)  The Email Notice directed Settlement Class Members to a Settlement Website (as described below), and included Ticket Codes and instructions on how to use them.  (*Id*.)

12

**2.     Postcard Notice**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

On March 24, 2020, the Settlement Administrator caused the Class Notice to be mailed to 19,673 the Settlement Class Members who did not have a valid email address on the Settlement Class List and who had a mailing addresses (the "Postcard Notice"). (Giannotti Decl. ¶ 8.) On April 2, 2020, the Settlement Administrator also cause the Postcard Notice to be mailed to the 3,502 Settlement Class Members whose Email Notice was returned as undeliverable and who had a mailing address on the Settlement Class List. (*Id*. at ¶ 9.)  Prior to mailing the Postcard Notice on March 24, 2020 and on April 2, 2020, the Settlement Administrator ran each address through the United States Postal Service ("USPS") National Change of Address database ("NCOA"), which provided updated addresses for all individuals who have moved during the previous four years and filed a change of address form with the USPS.  (*Id*. at ¶ 10.)  Through June 3, 2020, 165 Postcard Notices were returned by the USPS with a forwarding address, the Settlement Administrator updated its database with the new addresses and Postcard Notices were forwarded to the new addresses.  (*Id*. at ¶ 11.)  Through June 3, 2020, 5,845 Postcard Notices were returned as undeliverable by the USPS without a forwarding address and the Settlement Administrator conducted address verification searches ("skip traces") in an attempt to locate updated addresses. (*Id*. at ¶ 12.)   The Settlement Administrator identified 4,020 updated addresses via skip tracing, updated its

28

database with the new addresses, and Postcard Notices were re-mailed to the new addresses. (*Id.*)  In total, 4,185 Postcard Notices were re-mailed and/or forwarded.  (*Id.*)

### 3. Web Posting

On March 4, 2020, the Settlement Administrator established the following website devoted to this Settlement: www.TheaterTextSettlement.com.  (Giannotti Decl. ¶ 13.) The Settlement Website allowed Settlement Class Members to obtain basic information about the Settlement and to access the Settlement Agreement, Long Form Class Notice and other documents related to the Settlement. (*Id.*)  The Settlement Website also contains a "Contact Us" page whereby Class Members can contact the Settlement Administrator by sending an email to a dedicated email address established for this Settlement: info@TheaterTextSettlement.com.  (*Id.*)  As of June 3, 2020, the Settlement Website has had 13,354 unique visitors, resulting in approximately 26,201-page views. (*Id.*)

### 4. Reminder Email Notice

Pending Final Approval of the Settlement, on the Ticket Compensation Date, the Settlement Administrator will send a reminder notice via email to all Settlement Class Members with a valid email address, advising of the activation of the Ticket Code, which will be valid for a period of four (4) years from the Ticket Compensation Date (the "Reminder Notice).  (Giannotti Decl. ¶ 13.) The Settlement Administrator will also update the Settlement Website to include notice that the Ticket Codes have been activated and period of time during which they can be used. (*Id.*)

### D.   Submission of Exclusion Requests or Objections

Settlement Class Members were allowed 90 calendar days from the date of entry of the Preliminary Approval Order ("Objection/Exclusion Deadline") to request exclusion from the Settlement Class or to submit objections to the proposed settlement.  (Agr. at § 3.04.)  The Class Notice directed that exclusion requests, if any, be sent to the Settlement Administrator, which provided periodic updates on exclusion requests to Plaintiffs and Defendants. (*Id.*)

### 1.   Not a Single Person Objected to the Settlement

Any Settlement Class Member who intended to object to the Agreement was required to present the objection in writing on or before the Objection/Exclusion Deadline, which had to be personally signed by the objector, and had to include: (1) the objector's name and address; (2) an explanation of the basis

upon which the objector claimed to be a Settlement Class Member, including the cell phone number to which Defendants sent him or her a text message; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intended to appear at the Fairness Hearing (either personally or through counsel who filed an appearance with the Court in accordance with the Local Rules.  (Agr. at § 3.04.01.)  If a Settlement Class Member or any of the Objecting Attorneys objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection had to include a statement identifying each such case by full case caption. *Id.*

Out of the total 108,798 Settlement Class Members, not a single one objected to the Settlement. (Giannotti Decl. ¶ 15.)

### 2. Only Two People Sought Exclusion From the Settlement

Settlement Class Members could request to be excluded from the Settlement Class by sending a written request postmarked on or before the Objection/Exclusion Deadline to the Settlement Administrator providing his/her name and address, the cell phone number to which Defendants sent him or her a text message, a signature, the name and number of the case, and a statement that he or she wished to be excluded from the Settlement Class for purposes of the Settlement.  (Agr. at § 3.04.02.)  Any member of the Settlement Class who validly elected to be excluded from the Agreement: (i) is not bound by any orders granting preliminary or final approval to this settlement; (ii) is not entitled to relief under the Settlement Agreement; (iii) has not gained any rights by virtue of the Agreement; or (iv) is not entitled to object to any aspect of the Agreement.  (*Id.*)

Out of the total 108,798 Settlement Class Members, only two requested to be excluded from the Settlement. (Giannotti Decl. ¶ 15.)

### E. Scope of Release

The scope of the release by all Settlement Class Members (other than those who elect not to participate in the Settlement), tracks the scope of the Plaintiffs' allegations in the Complaint. (Agr. at § 1.11.) Plaintiffs and each Settlement Class Member who did not timely request exclusion from the Class relinquish and discharge the Released Parties from the Released Claims. (*See id.* at §§ 1.11, 1.12.)

### F. Named Plaintiffs' Application for Incentive Award

Consistent with the Settlement, on May 5, 2020, Plaintiffs requested, and Defendants did not oppose, service awards for the time and effort they personally invested in this Action, not to exceed $15,000 for each Plaintiff, as proposed by Class Counsel. (*See* ECF No. 239; Agr. at §§ 1.13, 2.04.) Plaintiffs' incentive award is to be paid separate and apart from the award to the Class. (Agr. at § 1.02.)

### G. Class Counsels' Application for Attorneys' Fees and Expenses

Consistent with the Settlement, on May 5, 2020, Plaintiffs applied to the Court for an award of attorneys' fees, costs, and expenses, which Defendants did not oppose. (*See* ECF No. 239; Agr. at § 2.04.) The amount available to pay for attorneys' fees and costs is limited to—and Class Counsel is not entitled to and did not seek any amount greater than—the amount remaining in the Cash Fund after payment of Settlement Administration expenses and Service Awards. (*Id.*) *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010). Any attorneys' fees and costs will be paid separate and apart from the award to the Class. (Agr. at § 2.04.)

## III. LEGAL ANALYSIS

### A. The Court Should Approve the Settlement as Fair, Reasonable, and Adequate.

To approve a class action settlement under Fed. R. Civ. P. 23(e), the Court must find that the settlement is "fair, reasonable, and adequate," recognizing that "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the fairness of the settlement, the Court should balance "the strength of plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a government participant, and the reaction of the class members to the proposed settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice*, 688 F.2d at 625). The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances of each case. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citing *Officers for Justice*, 688 F.2d at 625).

In affirming the settlement approved by the trial court in *Class Plaintiffs*, the Ninth Circuit noted that it "need not reach any ultimate conclusions on the connected issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs*, 955 F.2d at 1291 (internal quotation and citation omitted). Where, as here, the settlement is the product of arm's length negotiations conducted by capable counsel with extensive experience in complex class action litigation, the court begins its analysis with a presumption that the settlement is fair and should be approved. *See* 4 NEWBERG ON CLASS ACTIONS (4th ed.) § 11.41.

As discussed in greater detail below, the Settlement here represents an outstanding result for the Class and is entitled to a presumption of fairness. First, the settlement was reached only after extensive arm's-length negotiations and with the supervision and assistance of Hon. Diane M. Welsh, an experienced and respected mediator. Thus, there is no indication of collusion. Second, Class Counsel and counsel for Defendants are highly experienced in class action

litigation, acted in good faith, and represented their clients' best interests in reaching the settlement. (*See* Mendelsohn Decl. ¶¶ 3-44.) Finally, the Settlement is a favorable result for Settlement Class Members—and all without the risk and delay that would accompany further prosecution of this case. All of the *Class Plaintiffs* factors thus favor approval, as shown below.

### 1.     The Strength of Plaintiff's Case

Although Plaintiffs believe strongly in their claims, Defendants vigorously denied liability and asserted numerous substantive defenses and procedural defenses to liability: for example, that they did not use an ATDS to send text messages; that they obtained prior written express consent before sending text messages; that Twilio played no part in the conduct at issue; and that one of the Plaintiffs allegedly spoliated evidence. (*See, e.g.*, ECF Nos. 130, 131, Defs.' Opps. to Motion to Certify.) The relief offered by the Settlement is even more attractive when viewed against the risk that Defendants might prevail on these positions. *See DIRECTV, Inc.*, 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'"). This factor therefore weighs in favor of approval of the Settlement.

### 2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The risk of further protracted litigation—and ultimately of no recovery at all—was particularly acute in this case, given the various affirmative defenses potentially available to Defendants, as noted above. Those risks were amplified here because TCPA cases, which implicate federal case law, statutory interpretation, and FCC regulations, involve the intersection of several—and sometimes conflicting—legal regimes. Making matters worse, in each of these domains, the law is ever evolving. *Arthur v. Sallie Mae, Inc.*, 2012 WL 4076119, at *1 (W.D. Wash. Sept. 17, 2012) ("The risks involved in this litigation were notable given the evolving state of the law impacting Plaintiffs' TCPA claims and Sallie Mae's numerous potential affirmative defenses.").

A brief survey of the outcomes of recent TCPA class certification motions underscores the enormous risks attendant to prosecuting TCPA class actions. *See, e.g.*, *Silver v. Pennsylvania Higher Education Assistance Agency*, 2020 WL 607054 (N.D. Cal. Feb. 7, 2020) (denying class certification); *Berman v. Freedom Financial Network, LLC*, 400 F.Supp.3d 964, 984-88 (N.D. Cal. 2019) (same); *True Health Chiropractic Inc. v. McKesson Corporation*, 332 F.R.D. 589 (N.D. Cal. 2019) (same); *San Pedro-Salcedo v. Haagen Dazs Shoppe Company, Inc.*, 2019 WL 6493978 (N.D. Cal. Dec. 13, 2019) (same); *Physicians Healthsource, Inc. v. Masimo Corporation*, 2019 WL 8138043 (C.D. Cal. Nov. 21, 2019) (same); *Dorfman v. Albertson's, LLC*, 2020 WL 86192 (D. Idaho Jan. 7, 2020) (granting defendant's motion to deny certification); *Bridge v. Credit One Financial*, 294 F.Supp.3d 1019, 1030-42 (D. Nev. 2018) (same); *Dell Valle v. Global Exchange Vacation Club*, 320 F.R.D. 50 (C.D. Cal. 2017) (same); *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV146256JGBJPRX, 2016 WL 3456939, at *17 (C.D. Cal. Apr. 14, 2016) (same); *Simon v. Healthways, Inc.*, No. CV1408022BROJCX, 2015 WL 10015953, at *8 (C.D. Cal. Dec. 17, 2015) (same); *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *6 (E.D. Cal. Mar. 3, 2014) (same). And in other instances, TCPA class allegations fail even to survive the pleading phase. *See Whittum v. Acceptance Now*, 2019 WL 4781846 (granting defendant's motion to strike class allegations). Plaintiffs submit that these cases differ in material and significant ways from the instant action, but Defendants could be expected to take a contrary position.[1]

---

[1] Class Counsel has served as class counsel on three cases where a class prosecuting text message TCPA claims was certified over objection of defendants. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012); *Gragg v. Orange Cab Co.*, No. C12-0576RSL, 2014 WL 794266 (W.D. Wash. Feb. 27, 2014); *Meyer v. Bebe Stores, Inc.*, No. 14-00267, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016). Class Counsel is aware of only a handful of other published TCPA text message cases in the Ninth Circuit in which classes were certified. *See*, *e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) (affirming granting of class certification); *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142 (2019); *Caldera v. American Medical Collection Agency*, 320 F.R.D. 513 (C.D. Cal. 2017); *Cortes v. National Credit Adjusters, LLC*, 2017 WL 3284797 (E.D. Cal. Aug. 2, 2017); *Stern v. DoCircle, Inc.*, WL 486262, at *8 (C.D. Cal. Jan. 29, 2014); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013); *Patten v. Vertical Fitness Grp., LLC*, 2013 WL 12069031, at *12 (S.D. Cal. Nov. 8, 2013); *Mendez v. C-Two Grp., Inc.*, 2015 WL 8477487, at *8 (N.D. Cal. Dec. 10, 2015).

Further, there was the ever-present risk of losing a jury trial. And even if Plaintiffs did prevail, any recovery could be delayed for years by an appeal. Any potential statutory recovery in this case would likely be impossible to recover as a practical matter due in part to the fact that Defendants would have every incentive to litigate appeals of any such judgment.

Class Counsel believe they could have prevailed on these issues, but success was by no means assured. Litigating these issues would risk recovering nothing for the Class, and would require significant additional expenditure of time, money, and resources for which Class Counsel would not be compensated should they lose on summary judgment or fail to preserve class certification.

Given all these risks, this factor militates in favor of final approval of the Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout the Trial

While Plaintiffs believe, as explained below (*see infra* § III.C), that the Court's certification of the classes here was appropriate, there is a risk that class action status might not be maintained through trial, as demonstrated by the multiple decisions set forth above denying class certification in TCPA cases. *See, e.g.*, *Saulsberry*, *supra*, 2016 WL 3456939, at *17; *Simon*, *supra*, 2015 WL 10015953, at *8; *Labou*, *supra*, 2014 WL 824225, at *6.

### 4. The Amount Offered in Settlement

"Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. Because of this need for compromise and the policy favoring settlement, "[t]he proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Instead, "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Browne v. American Honda Motor Co., Inc.*, 2010 WL 9499072, at *12 (C.D. Cal. July 29, 2010).

As explained above, this Settlement entitles each Settlement Class Member to automatically receive—without the need to submit a claim form—two tickets to any show at the V Theater or Saxe Theater that is produced or otherwise put on by a Saxe Defendant or its

successor in interest. This Settlement compares favorably with other recent, analogous TCPA settlements. *See, e.g.*, *Friedman v. LAC Basketball Club*, No. 13-818 (C.D. Cal. July 8, 2014) (final approval of TCPA settlement providing class members with either (i) two tickets to one Los Angeles Clippers' home game or (ii) one free ticket and a $20 voucher for use at the Team LA Store in the Staples center); *Kazemi v. Payless Shoesource, Inc.*, No. 09-5142 (N.D. Cal. 2012) ($25 merchandise certificate per claimant). *And see Couser v. Comenity Bank*, No. 12-2484, ECF/CM Doc. No. 91 (S.D. Cal. May 27, 2015) (approximately $13.75 per claimant); *In re Capital One TCPA Litigation*, No. 12-10064, ECF/CM Doc. No. 329 (N.D. Ill. February 12, 2015) (at least $34.60 per claimant); *Rose*, 2014 WL 4273358, at *10 (average of $20 to $40 per claimant); *id.* (referencing *Arthur v. Sallie Mae* TCPA settlement, in which each claimant received approximately $20 to $40); *Malta*, 2013 WL 444619, at *7 (approximately $2 per claimant if all eligible claimants filed claims).

In addition to this monetary relief, Class Counsel's efforts have resulted in significant nonmonetary benefits as well for Class Members and non-Class Members alike. Specifically, the Settlement obligates Defendants not to send automated text messages without first obtaining a written opinion from an attorney that the planned texting activity complies with the TCPA. Nor is this injunctive relief limited to existing Settlement Class Members. It also applies to all potential future recipients of Defendants' automated text messages. *See Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283, *2 (S.D. Cal. May 29, 2012); *Malta*, 2013 WL 444619, at *7.

Accordingly, this factor also supports approval.

**5.     The Extent of Discovery Completed and the Stage of the Proceedings**

The parties engaged in both formal and informal discovery concerning the merits of Plaintiffs' claims and Defendants' defenses, including but not limited to propounding and responding to Requests for Production and Interrogatories, Plaintiffs' depositions of two key witnesses of the Saxe Defendants, and Defendants' depositions of the named Plaintiffs. (*See* ECF Nos. 100, 106-3, 106-4, 109-3, 109-4.)

These investigations provided the parties with a well-developed record on which to evaluate the relative strength of Plaintiffs' claims and Defendants' defenses for settlement

purposes, favoring settlement approval. *See DIRECTV, Inc.*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

### 6.      The Experience and Views of Counsel

The Settlement was negotiated at arm's length by counsel well-versed in class litigation. In addition, Hon. Diane M. Welsh (ret.), an experienced mediator, presided over the mediation that resulted in settlement. (*See* Mendelsohn Decl. ¶¶ 33-34.) Class Counsel believe that the Settlement is an excellent result for the class. (*See id.* ¶ 44.) The Settlement is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).

### 7.      The Presence of a Governmental Participant

The parties have notified the Attorneys General of all 50 states of this Settlement as required by the Class Action Fairness Act, 28 U.S.C. § 1715(b). (Giannotti Decl. ¶ 4.) No Attorney General has sought to intervene or objected to the Settlement. (*Id.*) *See Aarons v. BMW of North America, LLC*, 2014 WL 4090564, at *13 (C.D. Cal. Apr. 29, 2014) (observing that notice of settlement was provided to federal and state governmental officials, and none objected).

### 8.      The Reaction of Class Members to the Proposed Settlement

The reaction of Class Members to the proposed Settlement has been overwhelmingly positive. The deadline to submit an objection or request for exclusion from this Settlement expired on May 26, 2020. Not a single objection to the Settlement was filed, and only two out of a total of 108,798 Class Members requested to be excluded from this Settlement. (*See* Giannotti Decl. ¶ 15.) This response demonstrates that, on balance, the Class strongly supports the Settlement. *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Aarons*, 2014 WL 4090564 at *14 (holding that where number of claims far exceeded number of opt-outs and objections, "[t]his highly positive response to the settlement strongly suggests that the Class finds the settlement to be fair, reasonable, and adequate.").

Given the favorable terms of the Settlement and the rigorous manner in which these terms were negotiated, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute. This Court should therefore approve the Settlement.

**B.      The Court-Ordered Notice Program Meets Due Process Standards and Has Been Fully Implemented**

Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.*; *see Hanlon*, 150 F.3d at 1026 ("Adequate notice is critical to court approval of a class settlement under Rule23(e)."). In order to protect the rights of absent class members, the Court must provide the best notice practicable under the circumstances. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985).

Here, the Email Notice, Postcard Notice, and Web Posting meet all these requirements. Among other features, for Settlement Class Members whose email notices were undeliverable, and for Class Members for whom Defendants had no email address, the Settlement Administrator provided notice by a postcard sent via United States mail. (Giannotti Decl. ¶ 9.) Both the Email Notice and Postcard Notice included ticket codes and directed Settlement Class Members to the Settlement Website, which included instructions on how to use the Ticket Codes. (*Id.* at Exs. B and C.) Further, the Website allowed Class Members to access (and print) the Complaint, Settlement Agreement, Order Granting Preliminary Approval of Class Settlement, Full Notice, Claim Form, and Class Counsel's fee application. The website also assisted individuals in determining whether they are Class Members and informed them of their rights to object to the Settlement or opt out.

This Notice program was designed to meaningfully reach the largest possible number of Class Members. Accordingly, the various forms of Notice here satisfy due process, serve as the best notice practicable under the circumstances, and constitute due and sufficient notice. The form

of the notice contained all of the content required by Rule 23(c)(2)(B), including a definition of the Settlement Class, a description of the action and the claims; notice of the Settlement Class members' right to opt out of the proposed settlement; and notice of their right to object to or comment on the settlement and any application for attorneys' fees, costs, and service awards. Adequate notice has therefore been provided. *Hanlon*, 150 F.3d at 1011 (holding notice requirements met where the notice provided class members "with the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery").

### C.   Class Certification is Appropriate for Settlement Purposes

In its Order Granting Preliminary Approval of Class Settlement the Court provisionally certified the Settlement Class. (ECF No. 238.) All required criteria for class certification remain satisfied. Thus, for the same reasons that the Court conditionally certified the Settlement Class before, the Court should now find that the Class meets the requirements of Rule 23 for purposes of final approval. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 622 (1997); MANUAL FOR COMPLEX LITIGATION, § 21.632.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.    CONCLUSION

For the reasons stated above, the Court should grant final approval of the Settlement and certify the Class for settlement purposes.

Dated this 11th day of June 2020.

BAILEY❖KENNEDY

By: /s/ Paul C. Williams
    DENNIS L. KENNEDY
    PAUL C. WILLIAMS

MATTHEW R. MENDELSOHN
(Admitted *Pro Hac Vice*)
MAZIE SLATER KATZ & FREEMAN, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Fax: (973) 228-0303
mmendelsohn@mskf.net

PAYAM SHAHIAN
(Admitted *Pro Hac Vice*)
STRATEGIC LEGAL PRACTICES, APC
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 277-1040
Fax: (310) 943-3838
pshahian@slpattorney.com

*Attorneys for Plaintiff Bijan Razilou*

ALBERT H. KIRBY
(Admitted *Pro Hac Vice*)
SOUND JUSTICE LAW GROUP, PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103

PHILIP S. AURBACH
Nevada Bar No. 1501
MICHAEL DAVID MAUPIN
Nevada Bar No. 13721
MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145

*Attorneys for Plaintiff Jeremy Bauman*

19

1

## CERTIFICATE OF SERVICE

2    I certify that I am an employee of BAILEY❖KENNEDY and that on the 11ᵗʰ day of

3    June, 2020, service of the foregoing was made by mandatory electronic service through the

4    United States District Court's electronic filing system and/or by depositing a true and correct

5    copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last

6    known address:

7
PHILLIP S. AURBACH, ESQ.
MICHAEL D. MAUPIN, ESQ.
8    **MARQUIS AURBACH COFFING**
10001 Park Run Drive
9    Las Vegas, NV 89145
paurbach@maclaw.com
10   crenka@maclaw.com
mmaupin@maclaw.com
11   *Attorneys for Plaintiff*
JEREMY BAUMAN
12

ALBERT H. KIRBY, ESQ.
**SOUND JUSTICE LAW GROUP, PLLC**
936 N. 34ᵗʰ Street, Suite 300
Seattle, WA 98103
ahkirby@soundjustice.com
*Attorney for Plaintiff Jeremy Bauman*

13
JEFF SILVESTRI, ESQ.
**McDONALD CARANO WILSON LLP**
14   2300 W. Sahara Ave., Suite 1200
Las Vegas, NV 89102
15   jsilvestri@mcdonaldcarano.com
*Attorney for Saxe Defendants*
16

JOEL D. HENRIOD, ESQ.
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
3993 HOWARD HUGHES PARKWAY, STE. 600
LAS VEGAS, NV 89169
*Attorney for Defendant Twilio, Inc.*

17
KENNETH E. PAYSON, ESQ.
**DAVIS WRIGHT TREMAINE LLP**
18   920 Fifth Ave., Suite 3300
Seattle, WA 98104-1610
19   (206) 622-3150 Telephone
(206) 757-7700 Facsimile
20   KennethPayson@dwt.com
KenPayson@dwt.com
21   *Attorney for Saxe Defendants*

MICHAEL HAZZARD
**DLA PIPER**
500 Eighth Street, NW
Washington, DC 20004
Mike.Hazzard@US.DLAPiper.com
*Attorney for Defendant Twilio, Inc.*

22

23                                   _____/s/ Sharon L. Murnane_____
An Employee of BAILEY❖KENNEDY

24

25

26

27

28