# EXHIBIT 1

Declaration of Matthew R. Mendelsohn

Matthew R. Mendelsohn (Admitted *Pro Hac Vice*)
New Jersey Bar No. 015582005
mmendelsohn@mskf.net
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone:   (973) 228-9898
Facsimile:    (973) 228-0303

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JEREMY BAUMAN, individually and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAVID SAXE, et al.;<br><br>Defendants | Case No.: 2:14-cv-01125-RFB-PAL<br><br>**DECLARATION OF MATTHEW R. MENDELSOHN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL** |
| BIJAN RAZILOU, et al.,<br><br>Plaintiff,<br><br>v.<br><br>V THEATER GROUP, LLC, et al.;<br><br>Defendants. | In consolidation with<br><br>Case No.: 2:14-cv-01160-RFB-PAL |

**DECLARATION OF MATTHEW R. MENDELSOHN**

I, Matthew R. Mendelsohn, declare:

1. I am an attorney admitted to the Bar of the State of New Jersey. I am a partner at Mazie Slater Katz & Freeman, LLC, counsel of record for Plaintiffs in the above entitled matter. My knowledge of the information and events described herein derives from a combination of my personal knowledge and a careful review of the file, relevant court records and communications with other Plaintiffs' counsel, and if called as a witness, I could and would competently testify thereto.

2. I respectfully submit this declaration in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement ("Motion").

**Case Background**

3. Plaintiffs allege that Defendants sent uninvited text messages to cellular phone numbers using an automatic telephone dialing system without the recipient's prior express consent.

4. Mr. Bauman filed his complaint in Nevada state court in May 2014, which Defendants removed to the United States District Court for Nevada.

5. Mr. Razilou filed his complaint in the District Court in June 2014.

6. Because of the stark commonalities of the claims put at issue, Defendants asked Mr. Bauman and Mr. Razilou to stipulate to the consolidation of their complaints into one proceeding. Mr. Bauman and Mr. Razilou agreed. Thus, the District Court consolidated the two complaints. Though Mr. Bauman and Mr. Razilou are represented by different counsel, they are cooperating to advance the interests of the Class of which both Mr. Bauman and Mr. Razilou are members.

7. The Saxe Defendants filed an Answer on August 5, 2014.

8. On August 6, 2014, the Saxe Defendants filed a Motion for Demand for Security Costs, which Plaintiffs opposed.

9. On August 29, 2014, Plaintiffs filed Motions to Strike Defendants' Affirmative Defenses.

10. On November 18, 2014, Judge Leen issued a discovery order bifurcating discovery into class discovery and merits discovery, with class discovery to end upon the filing of a Motion to Certify Class.

11. Discovery then proceeded in earnest, with all parties propounding and responding to written discovery, the production and review of thousands of pages of documents and databases, depositions of the Plaintiffs and depositions of several defense witnesses.

12. On June 25, 2015, the parties participated in a full day mediation with Hon. William C. Pate (Ret.) in San Diego, California. Unfortunately, the parties were not able to reach a settlement at that time.

13. On July 27 and 28, 2015, Plaintiffs filed Motions for Leave to File Amended Complaint to include Defendant Twilio.

14. Plaintiffs filed an Amended Complaint with Jury Demand that included Defendant Twilio on September 1, 2015.

15. On September 4, 2015, the Court issued on order denying without prejudice Defendants' Motion for Demand for Security of Costs and Plaintiffs Motions to Strike Defendants' Affirmative Defenses.

16. On October 15, 2015, Defendant Twilio filed a Motion to Dismiss, which Plaintiffs opposed.

17. On October 30, 2015, the Saxe Defendants filed (i) an emergency Motion to Compel re: Discovery and Motion for Fees and Costs and (ii) a Motion for Protective Order, both of which Plaintiffs opposed.

18. On November 20, 2015, the Saxe Defendants filed (i) a Motion for Partial Summary Judgment on Plaintiffs' Nevada Deceptive Trade Practices Act Claims and (ii) a Motion to Stay Proceedings, both of which Plaintiffs opposed.

19. On November 30, 2015, Plaintiffs filed a Motion to Certify Class.

20. On March 21, 2016, Defendant Twilio filed a Motion to Dismiss, which Plaintiffs opposed.

21. On September 6, 2016, the Court held a hearing and, among other things, granted Defendant Twilio's Motion to Dismiss without prejudice and took Plaintiffs' Motion to Certify Class under submission.

22. On September 19, 2016, the Court denied Plaintiff's Motion to Certify Class without prejudice, with leave to refile within 7 days after the deadline for filing an Amended Complaint, to allow for possible amendment of the motion based on the Amended Complaint.

23. On September 27, 2016, Plaintiffs refiled their Motion to Certify Class, with no change from the original.

24. Defendant Saxe refiled their original Response on October 4, 2016.

25. Plaintiffs replied on October 11, 2016.

26. Defendant Twilio filed their Motion for Sanctions on November 16, 2016.

27. On January 10, 2019, the Court granted in part and denied in part Plaintiffs' Motion to Certify Class and denied Defendant Twilio's Motion for Sanctions.

28. Specifically, the Court certified the following class under Rules 23(b)(2) and (3): "All past, present, and future customers of a Saxe Defendant who reside in the United States or its territories and whose cellular telephone numbers were sent a text message by Defendant which promoted a product, good or service of a Saxe Defendant."

29. Further, the Court divided the class into four subclasses: (1) class members who received telemarketing text messages from the Defendants before October 16, 2013 and did not sign any form of written or electronic release, (2) class members who received telemarketing text messages from the Defendants before October 16, 2013 and signed some form of written or electronic release, (3) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did not sign any form of written or electronic release, and (4) class members who received telemarketing text messages from the Defendants after October 16, 2013 and did sign some form of written or electronic release.

30. On January 25, 2019, the Saxe Defendants filed a Motion for Reconsideration of the Court's Certification Order (which the Court later dismissed in light of the pendency of a formal settlement agreement).

31. On February 21, 2019, the Saxe Defendants filed an unopposed Motion Staying Case and Continuing Case Status Hearing Pending Mediation, which the Court granted.

32. On May 14, 2019, Defendant Twilio filed an answer to the Amended Complaint.

33. On May 15, 2019, the Parties participated in a full-day mediation session in Philadelphia, Pennsylvania before the Hon. Diane M. Welsh (ret.), at which the case resolved.

34. Only after the Class claims were resolved did the Parties begin negotiation of attorneys' fees and the Named Plaintiffs' Service Awards. The Parties were able to resolve these issues as well.

35. On May 22, 2019, Plaintiffs filed an unopposed Motion to Stay the Case.

36. On October 28, 2019, Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.

37. On February 25, 2020 the Court held a hearing on Plaintiffs' motion and on February 26, 2020 the Court entered an Order Conditionally Certifying a Settlement Class, Preliminarily Approving Class Action Settlement, Approving Notice Plan, and Scheduling Final Approval Hearing.

38. Plaintiffs and Defendants have conducted an investigation of the facts and have analyzed the relevant legal issues in regard to the claims and defenses asserted in the Action. The Parties have conducted formal and informal discovery, including but not limited to propounding and responding to Requests for Production and Interrogatories.

39. The parties have also engaged in substantial motion practice, including a motion to dismiss, a motion to strike, motions for summary judgment, a motion for class certification and numerous significant discovery motions.

**Fairness, Reasonableness, And Adequacy Of The Settlement**

40. I believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Class Members. Although I strongly believe in the merits of Plaintiffs' case, I also believe that continuing this Action poses significant risks. In addition to the general risks of litigating a complex class action through trial, Defendants have raised a number of substantive defenses to liability: for example, that

they did not use an ATDS to send text messages; that they obtained prior written express consent before sending text messages; that Twilio played no part in the conduct at issue; and that one of the Plaintiffs allegedly spoliated evidence.

41. The resulting Settlement provides substantial benefits to the approximately 108,798 Settlement Class Members. Under the Settlement, each and every Settlement Class Member will automatically receive—without the need to submit a claim form—two tickets to any show at the V Theater or Saxe Theater that is produced or otherwise put on by a Saxe Defendant or its successor in interest. The estimated market value of each ticket ranging from $35.00 to $99.99, depending on the show selected by the Class Member. Accordingly, the settlement value provided to <u>each</u> class member is between $70.00 and $199.98 and an aggregate value to the class of $7,615,860 to $21,757,424.

42. Additionally, all Settlement Class Members will receive injunctive relief. The Settlement obligates Defendants not to send automated text messages without first obtaining a written opinion from an attorney that the planned texting activity complies with the TCPA. As part of retaining an attorney to provide this opinion, Defendants will have to obtain proof that the attorney is insured under a legal malpractice insurance policy with coverage limits of no less than $4 million per occurrence.

43. Separate and apart from any benefits to the Class, the Settlement also establishes a "Cash Fund" of $800,000 for the payment of the costs of Settlement Administration, attorneys' fees and expenses to Class Counsel, and Service Awards to Plaintiffs.

44. Based on my own personal experience and my review of other settlements, settlement value offered by the Settlement is similar to that made available by other class action settlements involving alleged TCPA violations.

## SETTLEMENT NOTICE AND ADMINISTRATION

48. Plaintiffs retained Angeion Group ("Angeion") as the Notice and Settlement Administrator.

49. To date, Angeion has provided the required CAFA notices, sent the email and postcard notices, maintained the settlement website, and collected any class member

exclusions and objections. (ECF No. 240.)

50. Plaintiffs' counsel has monitored Angeion in all of these efforts.

**REACTION OF THE CLASS AS OF JUNE 4, 2020**

51. Class Notice has been disseminated to the 108,798 Class Members and the deadline to send an objection or request for exclusion expired May 26, 2020. As of June 4, 2020, no objections have been filed and only two class members have requested to be excluded. (ECF No. 240.)

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2020

_____
Matthew R. Mendelsohn